# EXHIBIT "A"

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
TESLA, INC. and DOES 1 through 100, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
DONNA LEACH, individually and on behalf of the Estate of Clyde Leach

E-FILED
4/11/2023 3:55 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
23CV414572
Reviewed By: P. Newton
Envelope: 11681338

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*  SANTA CLARA COUNTY SUPERIOR COURT<br>191 N. 1st Street, San Jose, CA 95113 | CASE NUMBER: *(Número del Caso):*<br>**23CV414572** |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Todd A. Walburg, Bailey & Glasser, LLP, 1999 Harrison Street, Suite 660, Oakland, CA 94612, (510) 272-8000

| DATE:<br>*(Fecha)* 4/11/2023 3:55 PM | Clerk of Court | Clerk, by<br>*(Secretario)* P. Newton | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario  Proof of Service of Summons, (POS-010)).*



**NOTICE TO THE PERSON SERVED: You are served**
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):*  TESLA, INC.
    under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
           ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courts.ca.gov* |
|---|---|---|

E-FILED
4/11/2023 3:55 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
23CV414572
Reviewed By: P. Newton

1  Todd A. Walburg (SBN 213063)
   twalburg@baileyglasser.com
2  Scott B. Baez (SBN 330485)
   sbaez@baileyglasser.com
3  **BAILEY & GLASSER, LLP**
   1999 Harrison Street, Suite 660
4  Oakland, CA 94612
   Telephone: (510) 272-8000
5  Facsimile: (510) 463-0291

6  Attorneys for Plaintiff DONNA LEACH,
7  individually and on behalf of the
   Estate of Clyde Leach

8

9               **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10                        **COUNTY OF SANTA CLARA**

11

12  DONNA LEACH, individually and on          Case No. 23CV414572
    behalf of the Estate of Clyde Leach,
13
                      Plaintiff,              **COMPLAINT FOR DAMAGES AND
14                                            DEMAND FOR JURY TRIAL**
         v.
15
    TESLA, INC. and DOES 1 through 100,
16  inclusive,

17                    Defendants.

18

19

20        Comes Now Plaintiff DONNA LEACH, individually and on behalf of the Estate

21  of Clyde Leach ("Plaintiff"), and alleges as follows:

22                               **PARTIES**

23        1.     Defendant TESLA, INC. dba TESLA MOTORS, INC. ("Tesla") is a

24  Delaware corporation operating in and under the laws of the State of California, and

25  conducting business throughout California.  Plaintiff alleges that Tesla's principal

26  place of business is in the State of California, as its nerve center has always been and

27  remains in the State of California.

28        2.     Tesla's hardware and software engineering headquarters is located in

                                        1

1   Palo Alto, California, in Santa Clara County.[1]

2       3.      Plaintiff DONNA LEACH is a citizen of Enola in Cumberland County,

3   Pennsylvania.  Plaintiff DONNA LEACH was the lawful and loving wife of decedent

4   Clyde Leach until his death in the motor vehicle collision and fire described herein.

5       4.      The Estate of Clyde Leach was administered in Pennsylvania and

6   Letters of Administration were granted to Plaintiff DONNA LEACH by the Court of

7   Common Pleas of the Ninth Judicial District, Cumberland County, Pennsylvania.

8   (See *Exhibit A* to this Complaint.)  No proceeding is now pending in California for

9   administration of the decedent's estate.  Plaintiff DONNA LEACH is the decedent's

10  successor-in-interest (as defined in Section 377.11 of the California Code of Civil

11  Procedure) and succeeds to the decedent's interest in the action that is the subject of

12  this Complaint.  No other person has a superior right to commence this action or to

13  be substituted for the decedent in the pending action.

14      5.      The acts complained of below in the survival cause of action in this

15  Complaint accrued before or at the time of the decedent's death, and the decedent

16  would have been the plaintiff with respect to that cause of action had he survived.

17      6.      Plaintiff is informed and believes and thereon alleges that at all

18  relevant times referenced in this complaint, Tesla's principal place of business was

19  and is located in the State of California because its nerve center was and is located in

20  the State of California.

21      7.      Tesla's January 3, 2023 statement on its own website explains that

22  "Tesla's footprint in California is made up of Megapack production and vehicle

23  castings in Lathrop [CA], hardware and software engineering in Palo Alto [CA],

24  vehicle and battery manufacturing in Fremont [CA], battery development and testing

25

26

27  _____
    [1] Tesla (@Tesla), Twitter (February 23, 2023, 3:51 PM),
28  https://twitter.com/Tesla/status/1628905429152550913.

1   in San Diego [CA] and vehicle design in Hawthorne [CA]."[2]

2        8.    In October of 2021, Chief Executive Officer of Tesla, Elon Musk,

3   indicated that the company intends to continue operation of their primary factory in

4   Fremont, California and will be continuing to expand their activities in California.[3]

5        9.    In a March 2, 2022 Twitter Post, Elon Musk noted that "[w]e still

6   operate our California factory, which is the largest auto plant in North America, at

7   full capacity and are considering expanding it significantly.  It has built 2/3 of all

8   electric vehicles in North America, twice as much as all other carmakers combined."[4]

9        10.    Tesla's Executive Leadership and Board of Directors are based all over

10  the country and in different continents, including locations in Japan, Australia,

11  California, Colorado, New York, and Illinois.[5]

12       11.    Plaintiff is informed and believes, and thereon alleges, that Tesla

13  relocated its headquarters to Texas for tax purposes, but a far greater amount of

14  corporate decision-making and control occurs in California than in Texas.

15  Specifically, it appears that very little corporate decision-making happens in Texas,

16  other than annual shareholder meetings.

17       12.    For example, the company's Chief Financial Officer and Senior Vice

18  President of Powertrain and Energy Engineering are located in Palo Alto and Santa

19  Cruz, California.[6]  Additionally, Tesla's website confirms that Tesla Operations &

20

21

22  [2] https://www.tesla.com/blog/teslas-california-footprint

23  [3] https://apnews.com/article/technology-business-palo-alto-elon-musk-austin-
    7a9b375a5b69c25564c9ae4dc4fba64e. *Newsweek*, Tesla Headquarters Moving to Austin, But Will Not
24  Leave California, Musk Says, (Oct. 7, 2021) https://www.newsweek.com/tesla-headquarters-moving-
    austin-will-not-leave-california-musk-says-1636837
25
    [4] Elon Musk (@elonmusk), Twitter (Mar. 22, 2022, 5:44 PM),
26  https://twitter.com/elonmusk/status/1499198925210857472.

27  [5] https://ir.tesla.com/corporate

28  [6] https://www.linkedin.com/in/zachkirkhorn ; https://www.linkedin.com/in/baglino

1 │ Business Support and Human Resources are based in Fremont, CA.[7]  Further,

2 │ Tesla's Fremont factory, which churns out all four Tesla vehicle models, built more

3 │ cars than any other North American auto plant in 2021.[8]  In 2021, the factory spat

4 │ out an average of 8,550 vehicles each week, or nearly 450,000 units over the course of

5 │ the year.[9]

6 │       13.    Plaintiff is informed and believes, and thereon alleges, that Defendant

7 │ Tesla does business in all 50 states and the State of California.

8 │       14.    Plaintiff is informed and believes, and thereon alleges, that Defendant

9 │ Tesla manufactured, sold, and warranted the Tesla Model Y, in California, including

10 │ the subject 2021 Tesla Model Y owned by Clyde Leach (bearing VIN No.

11 │ 5YJYGDEE2MF089331) involved in this case, and/or Tesla's agents, divisions, or

12 │ subsidiaries designed, manufactured, and installed all the systems in the Tesla

13 │ Model Y, including all systems responsible for acceleration, braking, steering,

14 │ collision avoidance, occupant crash protection, and vehicle fire prevention.

15 │       15.    Plaintiff is informed and believes, and thereon alleges, that Defendant

16 │ Tesla manufactured the subject 2021 Tesla Model Y with VIN No.

17 │ 5YJYGDEE2MF089331 at its plant in Fremont, California, and that significant

18 │ portions of the design and engineering of that vehicle, including but not limited to its

19 │ software programing and physical components, were also performed in California.

20 │       16.    Defendant Tesla has regularly conducted and continues to conduct

21 │ business throughout the United States by and through its duly-authorized divisions,

22 │ subdivisions, agents, servants and employees, and is specifically engaged in the

23 │ business of designing, engineering, developing, manufacturing, formulating,

24 │

25 │ ────────────────────────

    [7] https://www.tesla.com/careers/search/?department=11&region=5

26 │

    [8] https://www.businessinsider.com/tesla-fremont-california-factory-most-productive-in-country-gm-

27 │ ford-2022-1

28 │ [9] *Id.*

1 fabricating, assembling, equipping, testing, inspecting, approving, repairing,

2 labeling, advertising, promoting, marketing, packaging, supplying, warrantying,

3 distributing, wholesaling and/or selling Tesla vehicles and the component parts of

4 Tesla vehicles, including the subject 2021 Tesla Model Y (bearing VIN No.

5 5YJYGDEE2MF089331) which crashed and fatally injured decedent Clyde Leach.

6      17.    At all times herein relevant, Defendant Tesla marketed its products

7 throughout the United States with an understanding that its products would be used

8 throughout the United States.

9      18.    Plaintiff is ignorant of the true names and capacities of DOES 1 through

10 100, and therefore sues such Defendants by fictitious names.  Plaintiff will amend

11 this complaint to allege the true names and capacities of said Defendants when they

12 have been identified.  On information and belief, Plaintiff alleges that each of said

13 Defendants is responsible in some manner for the occurrences herein alleged, and

14 Plaintiff's damages as herein alleged were proximately caused by said Defendants,

15 said Defendants' agents, servants, or employees, and each of them, or through said

16 Defendants' ownership, operation, control, possession, distribution, and supervision,

17 servicing, maintenance, inspection, repair, entrustment, use, furnishing, design,

18 manufacturing, or sale of the premises, products or instrumentalities which

19 proximately caused the injuries and damages herein.

20      19.    Plaintiff is informed and believe, and thereon alleges, that at all times

21 herein mentioned, each Defendant acted as the agent, servant, partner, franchisee,

22 joint-venturer, and/or employee of each of the other Defendants within the course

23 and scope of such agency and authority.

24      **THE SUBJECT COLLISION**

25      20.    On April 17, 2021, at approximately 10:49 p.m., decedent Clyde Leach

26 was the sole occupant of the subject Tesla Model Y, VIN No. 5YJYGDEE2MF089331,

27 which was moving southbound on Allen Road through its intersection with State

28 Route 435 in Jeffersonville, Ohio.

1    21.    At said time and place, the subject Tesla Model Y was operated in

2 significant part by its internal computer system.

3    22.    After the Tesla moved slowly through the intersection, it suddenly

4 accelerated forward without any intentional driver direction or command by decedent

5 Clyde Leach.  The Tesla then failed to negotiate a slight curve in the road, and

6 instead departed the roadway and accelerated straight toward an adjacent Speedway

7 gas station.

8    23.    The subject Tesla's computerized suite of automation and safety

9 features should or would have detected that the vehicle was hurtling off the road and

10 toward fixed obstacles, including curbs, signage, support columns, gas pumps, and

11 parked vehicles.  Nevertheless, the vehicle did not engage its automatic emergency

12 braking, apply braking, reduce acceleration, or otherwise mitigate or prevent a

13 collision with the fixed obstacles ahead.

14    24.    As a result, the Tesla crashed over a curb, through roadside signage,

15 and ran into a support column adjacent to gas pumps and a parked vehicle.  The

16 Tesla impacted the support column at or near its front centerline, between the

17 longitudinal crash rails.

18    25.    Although the crash occurred at moderate speed, and under ordinary and

19 foreseeable conditions, on impact the support column tore through beams and cross

20 members that spanned the area between the Tesla's crash rails, causing significant

21 intrusion into the passenger compartment and battery modules.

22    26.    Damage to the battery modules resulted in a chain reaction known as

23 thermal runaway, causing an uncontrollable fire which consumed the Tesla's

24 passenger compartment within seconds of the collision.

25    27.    Decedent Clyde Leach, who was properly restrained by a seatbelt in the

26 driver's seat, suffered multiple fatal injuries in the collision, including blunt force

27 injuries, fractures, spinal cord injuries, internal injuries, and burn injuries.

28 ///

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## TESLA MODEL Y FEATURES AND SYSTEMS

28.     In contrast to most other automobiles sold in the United States, all the systems within Tesla vehicles are powered entirely by electricity.  Computers and software control all aspects of the vehicles' operation, including the drivetrain, brakes, steering, and active safety features.  These systems were designed, manufactured, and/or programmed by Defendant Tesla's engineers.

29.     Tesla vehicles – including the subject Tesla Model Y – rely upon a computerized vision system of cameras and sensors, hardware and software known as the Autopilot suite, which Tesla designed to effectively automate as many of the vehicle's features as possible.  The vision system consists of multiple cameras and, if equipped, radar and ultrasonic sensors, to see and detect the vehicles' surroundings and path of travel.  The Autopilot suite provides braking and/or acceleration and/or deceleration in response to the vision systems' inputs.  As Andrej Karpathy, Tesla's Senior Director of Artificial Intelligence, explained in a speech on June 20, 2021, "Autopilot software is always running and providing active safety features and of course the Autopilot functionality."

30.     Prior to April 2021, Tesla knew about numerous complaints of sudden acceleration in Tesla vehicle models and that pedal confusion, pedal misapplication, or sudden unintended acceleration are among the leading causes of Tesla crashes.

31.     As Tesla has moved further toward the goal of computer-guided driving through the Autopilot suite, Tesla was aware that its vehicles – including the Model Y – have reportedly on hundreds of occasions accelerated suddenly and without explanation, absent any intentional driver direction or command.  This sudden unintentional acceleration ("SUA"), in which a Tesla vehicle accelerates to full power even though the driver reports that he or she did not command the acceleration by pressing the accelerator pedal, has manifested in every Tesla model line to date at rates that far exceed historical rates for any other vehicles.

32.     Tesla designed its vehicles, including the subject Tesla Model Y, with an

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  instantaneous acceleration system with no delay and no noise, and with
2  instantaneous torque.

3      33.    Tesla designed its vehicles, including the subject Model Y, to accelerate
4  at an extremely fast rate unaccompanied by engine noise associated with a typical
5  internal combustion engine, such that consumers unaccustomed to such a vehicle
6  would not receive warning of immediate high velocity movements, rendering them
7  unsafe and more susceptible to sudden unintended acceleration.

8      34.    In October 2016, Tesla announced that all its models would have the
9  necessary hardware to become fully autonomous, even if such capability was not yet
10  available when a given automobile is purchased.  The goal would be for Tesla's
11  systems to eventually catch up to the hardware it installed in the vehicle.

12      35.    Tesla also added to its vehicles a feature called Automatic Emergency
13  Braking ("AEB"), wherein the vehicle's Autopilot suite uses its forward-looking
14  cameras and sensors to determine its distance from objects in front of the vehicle.
15  When a frontal collision is considered unavoidable, the AEB system is designed to
16  automatically apply the brakes to reduce the severity of the impact.

17      36.    In October 2018, Tesla introduced into all circulating vehicles—
18  eventually including the Model Y—a new software program called "Obstacle-Aware
19  Acceleration" ("OAA") which was designed to "reduce the impact of a collision by
20  reducing motor torque and in some cases applying the brakes" if the Autopilot suite
21  detects an object in its driving path.  OAA should be triggered when a driving gear is
22  engaged, the vehicle is stopped or traveling less than 10 mph, and the vehicle detects
23  an object in its immediate driving path—in other words, in the circumstances when
24  SUA often manifests in Tesla vehicles.  Tesla further advertises Obstacle Aware
25  Acceleration, which automatically reduces acceleration and can also apply the brakes
26  when an obstacle is detected in front of the car while driving at low speeds.

27      37.    Prior to January 2020, Tesla also introduced a Pedal Misapplication
28  Mitigation ("PMM") system, which was designed to "use the Autopilot sensor suite to

1  help distinguish potential pedal misapplications and cut torque to mitigate or
2  prevent accidents when we're confident the drivers' input was unintentional."[10]
3  Tesla advertises that the PMM system "has prevented or mitigated hundreds of
4  collisions every month."

5      38.    Plaintiff alleges, based on information belief, that the need for the
6  Obstacle Aware Acceleration and Pedal Misapplication Mitigation systems was
7  precisely because of the numerous instances reported to Tesla of the propensity of its
8  vehicles to suddenly experience high power acceleration without the intent of the
9  operator.. Whether these high-power acceleration events were not commanded or
10 resulted from possible pedal misapplication, either way Tesla has been put on notice
11 well before the sale of the subject Tesla Model Y and the subject incident, of many
12 complaints of sudden high-power acceleration when the Tesla is stopped or moving at
13 low speeds.  In response to receiving notice of these incidents, Tesla misrepresented
14 that it had designed systems which would prevent these foreseeably dangerous
15 situations and that "[t]here is no 'unintended acceleration' in Tesla vehicles."[11]

16      39.    If properly designed and implemented, the Tesla Model Y, and its
17 Autopilot suite, Obstacle Awareness Acceleration ("OAA"), Pedal Misapplication
18 Mitigation ("PMM") and/or the Automatic Emergency Braking ("AEB"), would have:
19 a) recognized that the subject Model Y was heading toward the Speedway gas station
20 (and its stationary support columns); b) prevented the subject Model Y from
21 accelerating full power without braking; c) prevented the subject Model Y from
22 departing the roadway; d) prevented the subject Tesla Model Y from accelerating
23 over a curb, through signs, and into a stationary support column; e) reduced the
24 acceleration and/or motor torque, and/or applied braking, to prevent or mitigate the
25 crash and decedent Clyde Leach's resulting fatal injuries.

26
27 [10] https://www.tesla.com/blog/no-unintended-acceleration-tesla-vehicles
28 [11] *Id.*

40.     Tesla's failure to resolve the SUA and/or pedal misapplication problem in the subject Model Y and its other vehicle models when the Tesla is stopped or moving at low speeds, or to at least mitigate the problem by building in a fail-safe braking and depowering system to prevent situations such as occurred here, is inexplicable, negligent, reckless, and rendered the vehicle unreasonably dangerous and defective.  Moreover, Tesla failed to provide adequate warnings or instructions of the danger, but instead misrepresented the vehicles as safe in these regards.

41.     Tesla also advertises on its website that the structural configuration of its vehicles make them among the safest in the world in a collision:

> Model S, Model 3, Model X and Model Y have achieved among the lowest overall probability of injury of any vehicles ever tested by the U.S. government's New Car Assessment Program. Much of this has to do with the rigid, fortified structure of the battery pack that is mounted to the car's floor, which provides a vehicle with exceptional strength, large crumple zones, and a uniquely low center of gravity.  Because of their strength, Tesla's battery packs rarely incur serious damage in accidents.[12]

42.     Tesla also warrants that its vehicles are crashworthy in frontal pole



---
[12] https://www.tesla.com/VehicleSafetyReport

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  impact crashes, in which a narrow obstruction impacts the car between the main

2  crash rails.  In the context of the Model 3, which shares a substantially similar front-

3  end design with the subject Model Y, Tesla asserts that high-strength beams and

4  cross-members absorb energy and distribute it to the crash rails to prevent intrusion

5  into the passenger compartment and battery in a frontal pole impact crash, as shown

6  in the above simulation images:[13]

7      43.    Tesla further warrants that the Model Y is equipped with a rigid body to

8  prevent intrusion into the passenger compartment, and that large empty spaces at

9  the front and the rear operate as crumple zones to soften impacts, and that

10  preventing cabin intrusion allows advanced airbags to fully inflate and protect

11  occupants.[14]

12      44.    Tesla further warrants that "in the rare case of damage, Tesla battery

13  packs are designed to spread heat away from the occupant cabin and battery, helping

14  to prevent fires and protect occupants."[15]  Tesla asserts that its batteries are

15  designed to isolate a fire to select areas within the battery while venting heat away

16  from the passenger cabin.[16]

17      45.    If properly designed and manufactured, the Tesla Model Y, its

18  structural components, crash rails, beams, crossmembers, and battery modules

19  would have prevented the gas station's structural column from causing intrusion into

20  the passenger compartment and battery in the subject front pole impact crash.

21  Moreover, the subject vehicle's occupant protection systems, including the seat,

22  seatbelt, pre-tensioners, airbags, stored gas inflators, and restraint control module,

23  would have been capable of protecting the occupant from reasonable and foreseeable

24

25  [13] https://www.tesla.com/blog/model-3-lowest-probability-injury-any-vehicle-ever-tested-nhtsa

26  [14] https://www.tesla.com/safety

27  [15] Id.

28  [16] https://www.tesla.com/VehicleSafetyReport

1 | collision forces. Accordingly, the subject Tesla Model Y would not have caught fire
2 | and inflicted multiple fatal injuries on decedent Clyde Leach.

3 | 46. Tesla's failure to produce the subject Model Y with the ability to absorb
4 | reasonable collision forces and with adequate occupant protection systems is
5 | inexplicable, negligent, reckless, and rendered the vehicle unreasonably dangerous
6 | and defective. Moreover, Tesla failed to provide adequate warnings or instructions
7 | advising decedent Clyde Leach of the dangers, but instead misrepresented the
8 | vehicle as safe in these regards.

9 | **FIRST CAUSE OF ACTION**

10 | **(Wrongful Death – Strict Product Liability – Against All Defendants)**

11 | 47. Plaintiff incorporates by reference each preceding and succeeding
12 | paragraphs as though fully set forth at length herein.

13 | 48. Defendants Tesla and DOES 1 through 50, inclusive, designed,
14 | manufactured, researched, tested, assembled, installed, marketed, advertised,
15 | distributed, and sold a certain 2021 Tesla Model Y, bearing Vehicle Identification
16 | Number 5YJYGDEE2MF089331 (hereinafter referred to as the "SUBJECT
17 | VEHICLE"). Defendants are both the "manufacturer" and "seller" of the SUBJECT
18 | VEHICLE.

19 | 49. At the time the SUBJECT VEHICLE left the possession of Defendants
20 | Tesla and DOES 1 through 50, and each of them, it was in a defective condition, as
21 | that term is understood under California law, and it was unreasonably dangerous
22 | when used in a reasonably foreseeable manner. The SUBJECT VEHICLE
23 | constituted a defective product rendering Defendants, and each of them, strictly
24 | liable in tort.

25 | 50. At all times relevant hereto, Defendants Tesla and DOES 1 through 50,
26 | and each of them, were engaged in the business of designing, developing,
27 | manufacturing, testing, engineering, approving, marketing, promoting, assembling,
28 | equipping, inspecting, repairing, labeling, fabricating, advertising, distributing,

1 wholesaling, selling, and supplying automobiles and component parts of automobiles,

2 including the SUBJECT VEHICLE, for use by the consuming public throughout the

3 United States.

4       51.     At all times relevant hereto, the dangerous propensities of the

5 SUBJECT VEHICLE were known to Defendants Tesla and DOES 1 through 50, and

6 each of them, or were reasonably and scientifically knowable to them, through

7 appropriate research and testing by known methods, at the time they designed,

8 developed, manufactured, tested, engineered, approved, marketed, promoted,

9 advertised, distributed, and sold automobiles and component parts of automobiles to

10 the consuming public, but which were not known to end users or consumers.

11       52.     At all times relevant hereto, Defendants Tesla and DOES 1 through 50,

12 and each of them, knew that the SUBJECT VEHICLE would be operated and

13 inhabited by consumers without inspection for defects.

14       53.     At the time of the subject collision described above, the SUBJECT

15 VEHICLE was being used in a manner and fashion that was foreseeable by

16 Defendants Tesla and DOES 1 through 50, and each of them, and in a way it was

17 intended to be used.

18       54.     Defendants Tesla and DOES 1 through 50, and each of them, designed,

19 engineered, developed, manufactured, fabricated, assembled, equipped, tested or

20 failed to test, inspected or failed to inspect, repaired, retrofitted or failed to retrofit,

21 failed to recall, labeled, advertised, promoted, marketed, supplied, distributed,

22 wholesaled, and sold the SUBJECT VEHICLE and its component parts and

23 constituents, which was intended by TESLA to be used for the purpose of use as a

24 passenger vehicle, and other related activities.

25       55.     The SUBJECT VEHICLE, its Autopilot suite, structural components,

26 occupant protection systems, and/or battery modules failed to meet the expectations

27 of the reasonable consumer.  Based on the representations of Defendants Tesla and

28 DOES 1 through 50, and each of them, an ordinary consumer would have expected

the SUBJECT VEHICLE and the systems and/or components described herein to have appropriately responded or operated to prevent or mitigate the subject collision and/or injuries arising therefrom.

56.     The SUBJECT VEHICLE was not reasonably safe because adequate warnings or instructions were not provided with the vehicle at the time of manufacture and sale.  The likelihood that the vehicle would cause the harm described herein or similar harms, and the seriousness of those harms, rendered the warnings or instructions inadequate.  Tesla could have provided the warnings or instructions which the Plaintiffs allege would have been adequate.

57.     The SUBJECT VEHICLE was not reasonably safe because adequate warnings or instructions were not provided after the SUBJECT VEHICLE was manufactured, even though Tesla learned, or where a reasonably prudent manufacturer should have learned, about dangers inherent in its vehicles after it was manufactured.  In this case, Tesla was under a duty to act with regard to issuing warnings or instructions concerning the dangers in the manner that a Tesla prudent manufacturer would act in the same or similar circumstances.  Tesla failed to exercise reasonable care to inform Tesla users of the not reasonably safe condition of its Model Y.

58.     Furthermore, the SUBJECT VEHICLE was not reasonably safe in that it was unsafe to an extent beyond that which would be contemplated by the ordinary user.

59.     Decedent Clyde Leach and Plaintiff Donna Leach were not aware of the aforementioned not reasonably safe condition of the subject Model Y.

60.     Neither decedent Clyde Leach, Plaintiff Donna Leach, nor anyone acting on their behalf, ever altered, modified, or changed any aspect or component of the SUBJECT VEHICLE's design or manufacture.

61.     Defendants TESLA and DOES 1 through 50, and each of them, by their divisions, subdivisions, agents, servants, workmen, and/or employees are strictly

1 │ liable under California law, for one or more of the following reasons:

2 │       a.    The SUBJECT VEHICLE was not safe for its intended and
3 │ foreseeable uses;

4 │       b.    The SUBJECT VEHICLE was defective because it lacked a safety
5 │ system that would prevent the vehicle from experiencing high powered
6 │ acceleration with no braking into stationary obstacles in the vehicle's
7 │ path of travel;

8 │       c.    The SUBJECT VEHICLE was defective because it lacked a
9 │ functional Pedal Misapplication Mitigation system;

10 │       d.    The SUBJECT VEHICLE was defective because, despite
11 │ detecting stationary objects in its path of travel, the Tesla accelerated
12 │ off the roadway and into such stationary obstacles;

13 │       e.    The SUBJECT VEHICLE was defective due to sudden
14 │ unintended acceleration;

15 │       f.    The SUBJECT VEHICLE was defective because it accelerated
16 │ without the intent or control input of decedent Clyde Leach;

17 │       g.    The SUBJECT VEHICLE was defective because the Obstacle
18 │ Awareness Acceleration and/or Pedal Misapplication Mitigation failed to
19 │ prevent the Tesla from accelerating into stationary obstacles;

20 │       h.    The SUBJECT VEHICLE was defective because the Automatic
21 │ Emergency Braking failed to prevent the Tesla from accelerating into
22 │ stationary obstacles;

23 │       i.    The SUBJECT VEHICLE was defective because it failed to
24 │ prevent the Tesla from accelerating into stationary obstacles;

25 │       j.    The SUBJECT VEHICLE was defective because despite the
26 │ vehicle camera system detecting stationary obstacles, the Tesla
27 │ accelerated – without braking or reduction in acceleration or engine
28 │ torque – into the stationary obstacles;

1    k.    The SUBJECT VEHICLE was insufficiently crashworthy such

2    that it was unable to absorb reasonable and foreseeable collision forces,

3    and lacked adequate occupant protection systems;

4    l.    The SUBJECT VEHICLE was insufficiently crashworthy such

5    that it was prone to uncontrollable fires resulting from reasonable and

6    foreseeable collision forces, and lacked adequate battery protection

7    systems;

8    m.    Designing, manufacturing, distributing, and selling the

9    SUBJECT VEHICLE with a defective and unsafe Obstacle Awareness

10    Acceleration System;

11    n.    Designing, manufacturing, distributing, and selling the

12    SUBJECT VEHICLE with a defective and unsafe Pedal Misapplication

13    Mitigation System;

14    o.    Designing, manufacturing, distributing, and selling the

15    SUBJECT VEHICLE with a defective and unsafe Automatic Emergency

16    Braking System;

17    p.    Designing, manufacturing, distributing, and selling the

18    SUBJECT VEHICLE with a defective and unsafe braking system;

19    q.    Designing, manufacturing, distributing, and selling the

20    SUBJECT VEHICLE with a defective and unsafe acceleration system;

21    r.    Designing, manufacturing, distributing, and selling the

22    SUBJECT VEHICLE in a non-crashworthy condition;

23    s.    The SUBJECT VEHICLE did not meet or perform to the

24    expectations of end consumers, users, or ordinary consumers;

25    t.    The SUBJECT VEHICLE did not meet or perform to the

26    expectations of reasonable consumers.

27    u.    The risks inherent in the SUBJECT VEHICLE outweighed its

28    benefits, and reasonable alternative designs would, at reasonable cost,

16

1 have reduced the foreseeable risks of harm posed by the SUBJECT

2 VEHICLE.

3       v.    The SUBJECT VEHICLE lacked adequate warnings or

4 instructions of the dangers and hazardous and defective condition of the

5 vehicle.

6       w.    Defendants misrepresented the safety of the subject vehicle.

7     62.    By reason of the foregoing, and as a direct and legal result of the

8 defective condition of the SUBJECT VEHICLE described herein, decedent Clyde

9 Leach sustained multiple fatal bodily injuries.

10     63.    By reason of the foregoing, and as a direct and legal result of the

11 defective condition of the SUBJECT VEHICLE described herein, Plaintiff has

12 incurred economic damages, including property damage and losses, medical

13 expenses, funeral costs, burial costs, costs incident to the disposition of the remains

14 of the deceased, loss of financial support, loss of gifts or benefits that Plaintiff would

15 have expected to receive from the decedent, and loss of household services that the

16 decedent would have provided.

17     64.    By reason of the foregoing, and as a direct and legal result of the

18 defective condition of the SUBJECT VEHICLE described herein, Plaintiff has

19 sustained non-economic damages in a sum in excess of the minimum jurisdictional

20 limits of this court.

21     WHEREFORE, Plaintiff demands judgment against Defendants as hereinafter

22 set forth.

23 **SECOND CAUSE OF ACTION**

24 **(Wrongful Death – Negligence – Against All Defendants)**

25     65.    Plaintiff incorporates by reference each and every preceding allegation

26 as though fully set forth herein.

27     66.    At all times relevant herein, Defendants Tesla and DOES 1 through 50,

28 inclusive, owed a duty to foreseeable users of Tesla vehicles and the general public,

1  including decedent Clyde Leach and Plaintiff Donna Leach, to exercise ordinary care

2  in the design, development, manufacture, testing, engineering, approval, marketing,

3  promotion, assembly, equipping, inspection, repair, labeling, fabrication,

4  advertisement, distribution, wholesale, sale, and/or supply of vehicles, including the

5  SUBJECT VEHICLE and its component parts.

6       67.     Defendants Tesla and DOES 1 through 50, inclusive, negligently

7  breached said duties and thereby created an unreasonable risk of harm to persons,

8  including decedent Clyde Leach and Plaintiff Donna Leach.

9       68.     Defendants TESLA and DOES 1 through 50, and each of them, by their

10 divisions, subdivisions, agents, servants, workmen, and/or employees negligently

11 breached the aforementioned duties in one or more of the following ways:

12           a.     Designing, manufacturing, distributing, and selling the

13              SUBJECT VEHICLE in a condition that was not safe for its intended

14              and foreseeable use;

15           b.     Designing, manufacturing, distributing, and selling the

16              SUBJECT VEHICLE in a condition that lacked a safety system that

17              would prevent the vehicle from high powered acceleration with no

18              braking into stationary obstacles in the vehicle's path of travel;

19           c.     Designing, manufacturing, distributing, and selling the

20              SUBJECT VEHICLE in a condition that lacked a functional Pedal

21              Misapplication Mitigation, Object Aware Acceleration, and/or Automatic

22              Emergency Braking system;

23           d.     Designing, manufacturing, distributing, and selling the

24              SUBJECT VEHICLE in a condition such that, despite detecting

25              stationary objects in its path of travel, the Tesla accelerated off the

26              roadway and into such stationary obstacles;

27           e.     Designing, manufacturing, distributing, and selling the

28              SUBJECT VEHICLE in a condition that was prone to sudden

1   unintended acceleration;

2   f.      Designing, manufacturing, distributing, and selling the

3   SUBJECT VEHICLE in a condition such that it accelerated without the

4   intent or control input of decedent Clyde Leach;

5   g.      Designing, manufacturing, distributing, and selling the

6   SUBJECT VEHICLE in a condition such that Obstacle Awareness

7   Acceleration and/or Pedal Misapplication Mitigation failed to prevent

8   the Tesla from accelerating into stationary obstacles;

9   h.      Designing, manufacturing, distributing, and selling the

10  SUBJECT VEHICLE in a condition such that the Automatic Emergency

11  Braking failed to prevent the Tesla from accelerating into stationary

12  obstacles;

13  i.      Designing, manufacturing, distributing, and selling the

14  SUBJECT VEHICLE in a condition such that, despite the vehicle

15  camera system detecting stationary obstacles, the Tesla accelerated,

16  without braking or reduction in acceleration or engine torque, into the

17  stationary obstacles;

18  j.      Designing, manufacturing, distributing, and selling the

19  SUBJECT VEHICLE in a condition that was insufficiently crashworthy

20  and was unable to absorb reasonable and foreseeable collision forces,

21  and lacked adequate occupant protection systems;

22  k.      Designing, manufacturing, distributing, and selling the

23  SUBJECT VEHICLE in a condition that was insufficiently crashworthy

24  and was prone to uncontrollable fires resulting from reasonable and

25  foreseeable collision forces, and lacked adequate battery protection

26  systems;

27  l.      Failing to prevent the SUBJECT VEHICLE from accelerating

28  into stationary obstacles;

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

m.    Failing to equip the SUBJECT VEHICLE with adequate Obstacle Awareness Acceleration, Pedal Misapplication Mitigation, Automatic Emergency Braking, acceleration, and/or braking systems;

n.    Failing to design, manufacture, distribute, or sell the SUBJECT VEHICLE in a crashworthy condition;

o.    The SUBJECT VEHICLE did not meet or perform to the expectations of end consumers, users, or ordinary consumers;

p.    The risks inherent in the SUBJECT VEHICLE outweighed its benefits, and reasonable alternative designs would, at reasonable cost, have reduced the foreseeable risks of harm posed by the SUBJECT VEHICLE;

q.    Failing to issue adequate warnings or instructions of the dangers and hazardous and defective condition of the SUBJECT VEHICLE;

r.    Misrepresenting the safety of the subject vehicle.

s.    Failing to issue a recall or push out a software update to remedy the above-described deficiencies.

69.    By reason of the foregoing, and as a direct and legal result of the negligence of Defendants Tesla and DOES 1 through 50, and each of them, along with the defective, unsafe, and unreasonably dangerous condition of the SUBJECT VEHICLE, decedent Clyde Leach sustained multiple fatal bodily injuries.

70.    By reason of the foregoing, and as a direct and legal result of the negligence of Defendants Tesla and DOES 1 through 50, and each of them, along with the defective, unsafe, and unreasonably dangerous condition of the SUBJECT VEHICLE, Plaintiff has incurred economic damages, including property damage and losses, medical expenses, funeral costs, burial costs, costs incident to the disposition of the remains of the deceased, loss of financial support, loss of gifts or benefits that Plaintiff would have expected to receive from the decedent, and loss of household services that the decedent would have provided.

1    71.    By reason of the foregoing, and as a direct and legal result of the

2  negligence of Defendants Tesla and DOES 1 through 50, and each of them, along

3  with the defective, unsafe, and unreasonably dangerous condition of the SUBJECT

4  VEHICLE, Plaintiff has sustained non-economic damages in a sum in excess of the

5  minimum jurisdictional limits of this court.

6    WHEREFORE, Plaintiff demand judgments against Defendants as hereinafter

7  set forth.

8                    **THIRD CAUSE OF ACTION**

9              **(Survival Action – Against all Defendants)**

10    100.    Plaintiffs  incorporate by reference each and every preceding allegation as though

11  fully set forth herein.

12    101.    As a direct and legal result of the culpability and fault of Defendants

13  Tesla and DOES 1 through 50, and each of them, whether through strict liability,

14  negligence, or other wrongful conduct, decedent Clyde Leach was caused to incur

15  economic damages for damage to personal property prior to his death.

16    102.    As a direct and legal result of the culpability and fault of Defendants

17  Tesla and DOES 1 through 50, and each of them, whether through strict liability,

18  negligence, or other wrongful conduct, decedent Clyde Leach sustained non-economic

19  damages for pain, suffering, and disfigurement prior to his death.

20    WHEREFORE, Plaintiff DONNA LEACH, as successor-in-interest to the

21  Estate of Clyde Leach hereby demands judgment against the Defendants as

22  hereinafter set forth.

23                      **PRAYER FOR RELIEF**

24    WHEREFORE, Plaintiff demands judgment against the Defendants as follows:

25    1.    For general (non-economic) damages according to proof at the time of

26          trial;

27    2.    For special (economic) damages according to proof at the time of trial;

28    3.    For prejudgment interest as permitted by law;

1   4.  For costs of suit incurred herein as permitted by law; and

2   5.  For such other and further relief as this Court may deem proper.

3

4 Dated: April 11, 2023    BAILEY & GLASSER, LLP

5

6             By: _____

7                TODD A. WALBURG

                 SCOTT B. BAEZ

8                Attorneys for Plaintiff

                 DONNA LEACH, individually and

9                on behalf of the Estate of Clyde Leach

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1

## DEMAND FOR JURY TRIAL

2      Plaintiff hereby demands a jury trial.

3

4   Dated:  April 11, 2023                    BAILEY & GLASSER, LLP

5

6                                             By: _____

7                                                 TODD A. WALBURG
                                                  SCOTT B. BAEZ
8                                                 Attorneys for Plaintiff
                                                  DONNA LEACH, individually and
9                                                 on behalf of the Estate of Clyde Leach

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL