UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA LEACH, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>TESLA, INC., et al.,<br><br>    Defendants. | Case No. 23-cv-03378-SI<br><br>**ORDER DENYING DEFENDANT'S MOTION TO TRANSFER VENUE**<br><br>Re: Dkt. No. 23 |

Before the Court is defendant Tesla, Inc.'s motion to transfer venue. Dkt. No. 23. Plaintiff opposes. Dkt. No. 24. The Court heard oral argument on this motion on February 2, 2024. After carefully considering the parties' briefing and oral arguments, and for the reasons set forth below, the Court DENIES Tesla's motion.

**BACKGROUND**

Plaintiff Donna Leach resides in Enola, Pennsylvania and is the widow of decedent Clyde Leach. Dkt. No. 1-2 ("Compl.") ¶ 3. The Estate of Clyde Leach is administered in Pennsylvania and plaintiff is decedent's successor-in-interest. *Id.* ¶ 4. On April 11, 2023, plaintiff filed a civil suit against defendants Tesla, Inc. dba Tesla Motors, Inc. ("Tesla") and Does 1 through 100 in the Santa Clara County Superior Court, individually and on behalf of the Estate of Clyde Leach, seeking damages for (1) wrongful death—strict product liability, (2) wrongful death—negligence, and (3) survival action. *Id.* On July 21, 2023, the case was removed to this Court. Dkt. No. 1. Some four months later, on December 11, 2023, defendant Tesla filed the instant motion to transfer venue under 28 U.S.C. § 1404(a) to the United States District Court for the Southern District of Ohio, Eastern Division. Dkt. No. 23.

Tesla is a Delaware corporation with its principal place of business in Texas. Dkt. No. 1 at 2. According to plaintiff, Tesla relocated its headquarters to Texas for tax purposes despite a "greater amount of corporate decision-making and control" occurring in California. Compl. ¶ 11. In March 2022, Tesla's Chief Executive Officer, Elon Musk, stated that the "California factory . . . built 2/3 of all electric vehicles in North America, twice as much as all other carmakers combined," making it "the largest auto plant in North America." *Id.* ¶ 9. A January 2023 statement on Tesla's website further noted that "Tesla's footprint in California is made up of Megapack production and vehicle castings in Lathrop [CA], hardware and software engineering in Palo Alto [CA], vehicle and battery manufacturing in Fremont [CA], battery development and testing in San Diego [CA] and vehicle design in Hawthorne [CA]." *Id.* ¶ 7.

Plaintiff further alleges the following with respect to Tesla's operations: Tesla's Executive Leadership and Board of Directors are based all over the country and in different continents; its Chief Financial Officer and Senior Vice President of Powertrain and Energy Engineering are both located in California; Tesla maintains its hardware and software headquarters in Palo Alto, California; Tesla operates its "primary factory" in Fremont, California, where its Operations & Business Support and Human Resources departments are also based; and Tesla manufactured, sold, and warranted the Tesla Model Y in California, including the 2021 Tesla Model Y at issue in this case ("subject vehicle") "and/or Tesla's agents, divisions, or subsidiaries designed, manufactured, and installed all the systems in the Tesla Model Y." *Id.* ¶¶ 2, 8, 10-15. Plaintiff's counsel clarified at the February 2, 2024 hearing that decedent bought the subject vehicle in Pennsylvania.

On April 17, 2021, at approximately 10:49 p.m., decedent Clyde Leach, the owner and sole occupant of the subject vehicle, moved through the intersection at Allen Road and State Route 435 in Jeffersonville, Ohio. *Id.* ¶ 20. At said time and place, the subject vehicle was "operated in significant part by its internal computer system." *Id.* ¶ 21. "[W]ithout any intentional driver direction or command," the subject vehicle "suddenly accelerated forward" and "failed to negotiate a slight curve in the road," instead departing the road and accelerating towards a gas station. *Id.* ¶ 22. The vehicle "did not engage its automatic emergency braking, apply braking, reduce acceleration," or otherwise employ its automation and safety mechanisms "that should or would

2

have detected that the vehicle was hurtling off the road and toward fixed obstacles." *Id.* ¶ 23. After departing the roadway, the vehicle "crashed over a curb, through roadside signage, and ran into a support column next to gas pumps and a parked vehicle." *Id.* ¶ 24. Although the crash occurred at "moderate speed," the support column tore through the area between the subject vehicle's crash rails, damaging the battery modules and causing a chain reaction known as thermal runaway. *Id.* ¶¶ 25-26. The resulting fire consumed the passenger compartment within seconds of the collision. *Id.* ¶ 26. Decedent Clyde Leach, who was wearing a seatbelt, "suffered multiple fatal injuries, including blunt force injuries, fractures, spinal cord injuries, internal injuries, and burn injuries." *Id.* ¶ 27.

All systems within Tesla vehicles are "powered entirely by electricity" and designed, manufactured, and/or programmed by Tesla's engineers. *Id.* ¶ 28. Tesla vehicles rely on a computerized system of cameras, sensors, hardware, and software known as the Autopilot suite, which detects the vehicle's surroundings and applies braking, acceleration, and deceleration accordingly. *Id.* ¶ 29. Should the Autopilot suite determine that a front collision is unavoidable, the Automatic Emergency Braking ("AEB") feature is designed to automatically apply braking. *Id.* ¶ 35. If the vehicle is driving at low speeds and the Autopilot suite detects an object in the vehicle's immediate path, the Obstacle-Aware Acceleration ("OAA") feature will decelerate and/or brake. *Id.* ¶ 36. Should the Autopilot suite determine a potential pedal misapplication, the Pedal Misapplication Mitigation ("PMM") system will reduce motor torque. *Id.* ¶ 37. The Autopilot suite, AEB, OAA, and PMM were all introduced prior to January 2020. *Id.* ¶¶ 35-37.

Plaintiff alleges that pedal confusion, pedal misapplication, or sudden unintentional acceleration are among the leading causes of Tesla crashes. *Id.* ¶ 30. Plaintiff further alleges that, prior to April 2021, Tesla knew about "numerous complaints of sudden acceleration" in Tesla vehicles, which have "manifested in every Tesla model line to date at rates that far exceed historical rates for any other vehicles." *Id.* ¶¶ 30-31. According to plaintiff, had the subject vehicle been properly designed, manufactured, and implemented, it would have: recognized that it was heading toward the gas station and the stationary support columns; refrained from accelerating at full power without any braking; refrained from departing the roadway; refrained from accelerating over a curb,

through signs, and into a stationary support column; reduced acceleration and/or motor torque and/or applied braking to prevent or mitigate the crash and resulting fatal injuries; its structural components would have prevented the gas station's structural column from intruding into the passenger compartment and battery; and the vehicle's occupant protection systems would have been capable of protecting the occupant. *Id.* ¶¶ 39, 45. Plaintiff further alleges that Tesla failed to provide adequate warnings or instructions regarding the dangers caused by sudden unintentional acceleration and/or pedal misapplication problems in its vehicles and instead misrepresented the vehicles as safe. *Id.* ¶¶ 40, 46.

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of section 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotation marks omitted).

To support a motion for transfer, the moving party must establish: "(1) that venue is proper in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the convenience of the parties and witnesses, and will promote the interests of justice." *Foster v. Nationwide Mut. Ins. Co.*, No. C 07-04928 SI, 2007 WL 4410408, at *2 (N.D. Cal. Dec. 14, 2007). Section 1404(a) "does not condition transfer on the initial forum being 'wrong.'" *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Ct.*, 571 U.S. 49, 59 (2013). Rather, district courts have "discretion to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). The moving party bears the burden of showing that the transferee district is the "more appropriate" forum. *See id.* at 499.

In making the determination, relevant factors include: "(1) plaintiff's choice of forum, (2)

4

convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims,[1] (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum." *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 776 (N.D. Cal. 2014); *see also Jones*, 211 F.3d at 498-99 (stating that courts may consider "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof"). A defendant seeking transfer must "make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

**DISCUSSION**

The threshold question for transfer is whether the case could have been brought in the transferee district. *See Foster*, 2007 WL 4410408, at \*2. At the February 2, 2024 hearing on Tesla's motion to transfer, Tesla's attorney stipulated that the Southern District of Ohio would have personal jurisdiction over Tesla. The Court thus turns to an analysis of whether transfer would serve the convenience of the parties and witnesses and promote the interests of justice.

**I.    Plaintiff's Choice of Forum**

"[S]ubstantial consideration is generally given to a plaintiff's choice of forum," but "the degree of deference is substantially diminished in several circumstances, including where: (1) the plaintiff's venue choice is not its residence; [or] (2) the conduct giving rise to the claims occurred in a different forum." *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1094 (N.D. Cal. 2013) (internal citations and quotation marks omitted); *see also Lou v. Belzberg*, 834 F.2d 730, 739

---

[1] This factor is not relevant to this case and therefore not discussed by the Court below.

1  (9th Cir.1987) ("Although great weight is generally accorded plaintiff's choice of forum. . . if the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [plaintiff's] choice is entitled to only minimal consideration").

Plaintiff contends that her choice of forum is entitled to deference because the subject vehicle was "designed, developed, manufactured, tested, and marketed . . . in the Northern District of California" and "[t]his conduct occurring in California comprises the gravamen of [p]laintiff's allegations against Tesla." Dkt. No. 24 at 5. Tesla argues that the Court should afford little deference to plaintiff's choice because plaintiff is not a resident of California, and when considered in the context of other factors, particularly the number of non-party witnesses located in Ohio, plaintiff's forum choice is entitled to little weight. Dkt. No. 23 at 7; Dkt. No. 25 at 3-4.

The Court's believes that plaintiff's choice of forum is entitled to some deference here. Although plaintiff is not a California resident, the conduct giving rise to her claims allegedly occurred in California and this forum has an interest in the subject matter, and plaintiff is not a resident of Ohio. Accordingly, the Court finds this factor weighs against transfer.

## II.     Convenience of the Parties

Tesla contends that convenience of the parties is a neutral factor because no party is a California citizen. Dkt. No. 23 at 7. Plaintiff argues that this claim is refuted by the fact that plaintiff chose to bring her case in California, "where her counsel and the evidence are located." Dkt. No. 24 at 6. Plaintiff further argues that Tesla has not shown any substantial inconvenience would result from litigating this case in California and Tesla's position "smacks of forum shopping." *Id.* at 5.

The Court agrees with Tesla that convenience to the parties is a neutral factor because in weighing this factor, "courts do not consider the convenience to parties that have chosen to bring a case in a forum where they do not reside." *Brown v. Abercrombie & Fitch Co.*, No. 4:13-CV-05205 YGR, 2014 WL 715082, at *4 (N.D. Cal. Feb. 14, 2014). However, the Court notes that litigating this case in this forum will not be inconvenient for Tesla.

### III. Convenience of Witnesses

"Convenience of witnesses is often the most important factor in deciding whether to transfer an action." *Getz v. Boeing Co.*, 547 F. Supp. 2d 1080, 1083 (N.D. Cal. 2008). Plaintiff argues that Tesla has made an insufficient showing of inconvenience to non-party witnesses because Tesla "is required to demonstrate through affidavits or declarations containing only admissible evidence, the identity of its key witnesses and a clear statement of what their testimony would include." Dkt. No. 24 at 7 (citing *Cochran v. NYP Holdings, Inc.*, 58 F.Supp.2d 1113, 1119–20 (C.D. Cal. 1998)). Tesla responds that this standard has been rejected by other courts in the Ninth Circuit. Dkt. No. 25 at 5.

"The operative standard in this circuit is that . . . '[t]he defendant must name the witnesses it wishes to call, the anticipated area of their testimony and its relevance, and the reasons why the present forum would present hardship to them.'" *Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746, 764 (C.D. Cal. 2016) (quoting *Bohara v. Backus Hosp. Medical Benefit Plan*, 390 F. Supp. 2d 957, 963 (C.D. Cal. 2005)); *see also Zut v. Harrah's Entertainment, Inc.*, No. C13-2372 TEH, 2013 WL 5442282, at *3 (N.D. Cal. Sept. 30, 2013) (reasoning that this District need not follow *Cochran* because the Ninth Circuit opinion affirming *Cochran* did not affirm the court's reasoning on venue and the Ninth Circuit case cited by *Cochran* does not explicitly require affidavits or declarations); *CES Grp., LLC v. DMG Corp.*, No. 14-CV-02919-BLF, 2015 WL 457405, at *2 (N.D. Cal. Feb. 3, 2015) (finding "no explanation why parties and the Court cannot rely on one another's initial disclosures," which set forth "the identity and location of individuals 'likely to have discoverable information' that each may use in supporting its claims or defenses"). "In determining the convenience of the witnesses, the Court must examine the materiality and importance of the anticipated witnesses' testimony and then determine their accessibility and convenience to the forum." *Gherebi v. Bush*, 352 F.3d 1278, 1304 n.33 (9th Cir. 2003), *vacated on other grounds*, 542 U.S. 952 (2004) (citation omitted).

As an initial matter, the Court finds that Tesla has met its burden by identifying specific potential witnesses and describing their anticipated testimony. Tesla identifies sixteen potential witnesses employed by Ohio governmental agencies at the time of the accident and named in

7

plaintiff's initial disclosures. Dkt. No. 23 at 8; Dkt. No. 23-1, Zeiler Decl., Ex. A.[2] According to Tesla, the testimony of the sixteen named non-party witnesses who reside and/or work in Ohio "will be critical in investigating the cause of the crash and Mr. Leach's cause of death." *Id.* at 8. Tesla adds that there are more Ohio witnesses not identified in plaintiff's initial disclosures who communicated with Mr. Leach or observed his behavior the day of the accident and whose testimony would be relevant to his "state of mind, overall health, and cognitive function." *Id.* at 8-9; Dkt. No. 25 at 6. Tesla argues that none of these Ohio witnesses can be compelled to testify at a trial in California, and if they are willing, a trial in California would be inconvenient. Dkt. No. 23 at 8.

Plaintiff's initial disclosures also list "Tesla engineers and other Tesla executives, managers, and employees involved in the design, development, manufacturing, testing, marketing and sales of Tesla vehicles" and involved in the vehicles' "hardware, electronics, batteries, and software" as individuals likely to have discoverable information. *Id.* Plaintiff contends that the "fundamental facts of the collision and the ensuing fire, and [decedent Clyde] Leach's death at the scene, are unlikely to be in dispute at trial" because there are "[m]ultiple security camera videos of the collision." Dkt. No. 24 at 8. Plaintiff further notes that "there is no evidence that any of the witnesses that Tesla lists actually perceived any fact of consequence to the action." *Id.*

The Court agrees with plaintiff that the key facts in dispute will involve the subject vehicle's design, manufacturing, and computerized systems, about which the testimony of Tesla engineers and other Tesla personnel will be crucial. Plaintiff alleges that Tesla manufactured the subject vehicle in Fremont, California, and that "significant portions of the design and engineering of [the subject vehicle] were also performed in California." Compl. ¶ 15. Further, plaintiff's initial disclosures indicate that Tesla engineers, executives, managers, and employees are likely to have discoverable information. Although causation will be at issue, and the testimony of witnesses who reside or work in Ohio may be relevant to that, the Court finds it significant that there are no known eyewitnesses to the accident itself. Although this is a close case, the Court finds that the location of

---

[2] These potential witnesses include the crash investigator, coroner, lead paramedic, ambulance driver, and twelve fire service personnel. *See* Dkt. No. 23-1, Zeiler Decl., Ex. A. According to Tesla, "[u]pon information and belief, the 16 witnesses still live in Ohio." Zeiler Decl. ¶ 6.

8

potential witnesses who can testify about the design, manufacturing, and operation of Tesla's computerized systems holds the most weight here. Accordingly, this factor weighs against transfer.

### IV. Ease of Access to the Evidence

Tesla indicates that much of the non-testimonial evidence in this case will be available electronically. Dkt. No. 23 at 9. Plaintiff asserts that the "bulk of the relevant evidence bearing on Plaintiff's claims will necessarily be obtained in California" and the "majority of the depositions in the case" will also occur here. Dkt. No. 24 at 5. As stated above, the Court believes that the heart of this case revolves around vehicle design and manufacturing such that much of the relevant evidence will likely be in California. However, the subject vehicle is currently in storage in Ohio, which diminishes this factor's weight.[3]

### V. Familiarity with the Applicable Law

The parties agree that California choice-of-law rules would apply regardless of the forum. *See* Dkt. No. 24 at 10; Dkt. No. 25 at 8. Plaintiff has not done the choice-of-law analysis to ascertain that California law would apply to her claims. The present forum would be more familiar with the controlling law should plaintiff's claims be adjudicated under California law, and this District does have substantial experience with matters involving Tesla. However, other federal district courts are capable of applying California law. Accordingly, this factor is largely neutral.

### VI. Local Interest in the Controversy

Tesla contends that Ohio has a greater interest in resolving this matter because the accident at issue occurred in Ohio and the time and effort expended by an Ohio coroner and first responders bolsters Ohio's interest. Dkt. No. 25 at 8. Plaintiff contends that California has a stronger interest

---

[3] Plaintiff indicates that arrangements are being made to transport the subject vehicle to a secure storage facility in Stockton, California. Dkt. No. 24 at 9. Tesla replies that it sent a preservation letter to plaintiff on August 29, 2023 requesting that the vehicle not be moved unless agreed to by all parties. Dkt. No. 25 at 7, Dkt. No. 25-1, Zeiler Decl., Ex. B. Tesla has not agreed to the transfer, arguing it would it be expensive and burdensome and that doing so could risk compromising the evidence. Dkt. No. 23 at 9; Dkt. No. 25 at 7.

1  because of Tesla's "extensive business presence" within the state. Dkt. No. 24 at 11. Plaintiff
2  concedes, and the Court agrees, that both California and Ohio have interests in resolving this matter.
3  *See id.* Accordingly, this factor is neutral.

**VII.  Court Congestion and Time to Trial**

As of June 30, 2023, the median time to trial in the Northern District of California and the Southern District of Ohio was 36.6 months and 42.5 months, respectively. Dkt. No. 23 at 10. The Court finds that this six-month difference is not significant enough to tip the balance, but weighs slightly against transfer.

**CONCLUSION**

Viewing the totality of the factors, the Court concludes that keeping this case in the present forum will better serve the convenience of the parties and witnesses and better promote the interests of justice pursuant to 28 U.S.C. § 1404(a). The testimony of Tesla engineers and other personnel will be consequential in this action. Plaintiff's choice of forum is entitled to some deference because the tortious conduct giving rise to plaintiff's claims allegedly occurred in California, where Tesla maintains its primary factory. All other factors are neutral or weigh slightly against transfer. For the foregoing reasons and for good cause shown, the Court thus DENIES Tesla's motion to transfer this case to the Southern District of Ohio.

**IT IS SO ORDERED**.

Dated: February 5, 2024

SUSAN ILLSTON
United States District Judge

10