Todd A. Walburg (SBN 213063)
taw@mccunewright.com
Scott B. Baez (SBN 330485)
sbb@mccunewright.com
**MCCUNE LAW GROUP, APC**
3281 E. Guasti Road, Suite 100
Ontario, CA 91761
Telephone: (909) 757-1250
Facsimile: (909) 757-1275

Attorneys for Plaintiff
DONNA LEACH, individually and
on behalf of the Estate of Clyde Leach

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA LEACH, individually and on behalf of the Estate of Clyde Leach, <br><br> Plaintiff, <br><br> v. <br><br> TESLA, INC. and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No. 23-cv-03378-SI <br><br> Honorable Susan Illston <br><br> Action Filed: April 11, 2023 (Santa Clara Superior Court) <br> Transfer Date: July 7, 2023 <br><br> **PLAINTIFF'S BRIEF RE: DECEMBER 18, 2024 DISCOVERY DISPUTE** <br><br> Discovery Cut-Off: February 14, 2025 <br> Trial Date: July 21, 2025 |

## I.   INTRODUCTION

The parties previously submitted a Joint Statement regarding: (1) whether Tesla must produce responsive documents by a date certain; (2) whether Tesla must produce a privilege log; (3) whether objections stated in supplemental responses are untimely and waived; and (4) whether to compel further responses or permit further briefing. Dkt. No. 55. Tesla was ordered to produce a privilege log by January 3, 2025. Dkt. No. 56. In addition, the Court ordered Plaintiff to provide further briefing that

---

**PLAINTIFF'S BRIEF RE: DECEMBER 18, 2024 DISCOVERY DISPUTE**

describes the specific material she still seeks, taking into account the production that Tesla has already made. Dkt. No. 56.

**II.  DISCUSSION**

**A. Summary of Items Produced and Further Responses Requested**

Tesla's supplemental responses to Plaintiff's Requests for Production, Set Two, and Interrogatories, Set One, contained little substantive information, and the related document productions contained few responsive documents. Dkt. Nos. 55-3 and 55-6. Though Tesla describes its productions in response to Plaintiff's Requests for Production, Set Two, as "voluminous," it in fact contained only the following items:

- Eight crash test reports and associated video clips.
- Five PowerPoint presentations concerning collision performance.
- Notification to NHTSA regarding the subject incident and related non-substantive correspondence.
- Plaintiff's own Complaint in this matter.
- Four documents describing the function of the battery.
- One document describing the function of restraint system components.
- Nine pages of seat belt component drawings.
- Three pages of seat drawings.
- Fifteen pages of structural drawings.
- Thirty-two pages of battery drawings.
- Two regulatory compliance reports regarding seats and seat belts.

Plaintiff requests the Court compel Tesla to provide further amended responses to Requests for Production Nos. 2, 3, 7, 13-16, 20-30, 32-34, 39, 42-46, and 48-59, and Special Interrogatories Nos. 1-3, 6, and 10, as outlined herein and within the table of requests and responses attached hereto as **Exhibit 1.**

**B. Legal Authority**

Under the Federal Rules of Civil Procedure, parties are entitled to obtain

1

**PLAINTIFF'S BRIEF RE: DECEMBER 18, 2024 DISCOVERY DISPUTE**

discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(1); *see also Hickman v. Taylor*, 329 U.S. 495, 507 (1947) (discovery rules provide for "broad and liberal" discovery).

Objections to interrogatories must state with specificity the grounds for the objection, and any objection that fails to do so is deemed waived. Fed.R.Civ.P. 33(b)(4). With respect to requests for production, objections must state with specificity the grounds for objecting to the request, including the reasons. Fed.R.Civ.P. 34(b)(2)(B). An objection to a document request must also state whether any responsive materials are being withheld on the basis of the objection. Fed.R.Civ.P. 34(b)(2)(C).

General or boilerplate objections, such as those claiming requests are "overly broad, burdensome, oppressive, and irrelevant," are inadequate and tantamount to not making any objection at all. *U.S. ex rel. O'Connell v. Chapman University*, 245 F.R.D. 646 (C.D. Cal. 2007). The objecting party must clearly articulate the reasons for the objection. *Walker v. Lakewood Condominium Owners Ass'n.*, 186 F.R.D. 584 (C.D. Cal. 1999). Moreover, the party resisting discovery has the burden to show that discovery should not be allowed and must clarify, explain, and support its objections. *Gorrell v. Sneath*, 292 F.R.D. 629 (E.D. Cal. 2013).

"A party has an obligation to conduct a reasonable inquiry into the factual basis of its discovery responses." *Nat'l Academy of Recording Arts & Sciences, Inc. v. On Point Events, LP*, 256 F.R.D. 678, 680 (C.D. Cal. 2009). "When a dispute arises out of the completeness of a search undertaken, particularly where there is an absence of

information that would have been expected to be included, the responding party must come forward with an explanation of the search conducted with sufficient specificity to allow the Court to determine whether a reasonable search was performed." *Shaw v. Davis*, No. 3:18-cv-0551-MMD-CLB, 2021 WL 3890094, at *4 (D. Nev. Aug. 31, 2021) (internal punctuation omitted).

As detailed below, Tesla's boilerplate objections and evasive responses to Plaintiff's Requests for Production of Documents, Set Two, and Special Interrogatories, Set One, fall far short of these obligations under the Federal Rules of Civil Procedure. Tesla's minimal document production is also deficient. Plaintiff therefore requests that the Court compel Tesla to provide further responses and production of documents, as discussed below.

**C. Specific Documents and Further Responses Requested**

**1. Documents and Information Concerning Other Similar Incidents**

In this product liability case, Plaintiff Donna Leach alleges that her husband Clyde Leach was killed on April 17, 2021 due to defects present in his 2021 Tesla Model Y, VIN 5YJYGDEE2MF089331 (the "Subject Vehicle"). As part of her Complaint, Plaintiff alleges that the Subject Vehicle was defective in that it suddenly accelerated without driver input (Dkt. No. 1-2 at ¶22-23, 30-40), that it was not crashworthy in a frontal collision with a pole (*Id.* at ¶24-25, 41-46), and that it was susceptible to post-collision battery fire (*Id.* at ¶25-27, 41, 44-46.)

In order to prove her case, Plaintiff sought discovery of discrete categories of documents and information relating to other similar incidents—that is, other incidents in which Tesla Model Y vehicles or similar Tesla models suddenly accelerated, failed to protect occupants from reasonable collision forces, and/or experienced post-collision battery fires. Evidence of such other similar incidents is probative of critical issues including the existence of the alleged defects, Tesla's notice

of the defects, duty to warn, causation, and to refute Tesla's claim that Mr. Leach's death was caused only by driver error.

Tesla raised objections and refused to submit to discovery concerning any collision or allegations beyond the present case.

*Customer Comments/Complaints/Lawsuits/Depositions (Requests for Production Nos. 48-56 and Special Interrogatories Nos. 1-3)*: Plaintiff requested that Tesla produce "customer comments, feedback, correspondence, complaints, and inquiries" regarding sudden unintended acceleration (RPD No. 49), frontal collision crashworthiness (RPD No. 52), and post-collision battery fires (RPD No. 55). Plaintiff further requested that for each such customer complaint, Tesla produce certain communications, internet posts, summaries, and photographs and videos. (RPD Nos. 50, 53, and 56.)

Plaintiff also requested that Tesla identify "complaints, lawsuits, and not-in-suit matters" regarding sudden unintended acceleration, frontal collision crashworthiness, and post-collision battery fires (SPROG Nos. 1-3), and produce deposition testimony by its corporate designees and experts given in such lawsuits (RPD Nos. 48, 51, and 54).

In response to all of these requests, Tesla initially asserted mere boilerplate objections, including to the scope of the requests and the burden of compliance. In its supplemental responses, Tesla refused to produce any documents or substantive information and raised new untimely objections. For example, Tesla presented untimely objections on the basis of consumer privacy to SPROG Nos. 1-3 and RPD Nos. 48, 49, 50, 52, 53, 55, and 56.

Where Tesla purported to provide substantive information within its supplemental responses, it did so only to evade the gravamen of Plaintiff's requests. In response to SPROGs 1-3 and RPD Nos. 49-56, Tesla asserted that it "searched for but did not locate any lawsuit complaints" involving the allegation at issue involving

4

a "2021 Tesla Model Y prior to April 17, 2021," the date of the subject incident. This severe curtailment in scope renders these responses meaningless. The Model Y was only available for purchase by the public for a matter of months prior to the date of the subject incident and it is unlikely that any lawsuit concerning defects within it would have already been filed by the time Mr. Leach was killed. Moreover, Tesla has admitted that the Model Y at issue is structurally similar to other Tesla vehicles, including the Tesla Model 3. Supp. Resp. to SPROG No. 8. Tesla has also claimed that the Model Y has not undergone design revisions since its introduction. Supp. Resp. to SPROG Nos. 11 and 12. Given the high degree of similarity across vehicle models and model years that Tesla has admitted, a restriction of discovery to matters involving the 2021 Model Y is inappropriate and prejudicial to Plaintiff's rights to discover relevant information.

Plaintiff contends that the burden of complying with these requests will be minimal. Tesla maintains electronic databases of consumer complaints and can easily perform searches for the symptoms that Plaintiff alleges. For example, it has been publicly reported that Tesla assigns the internal code "27973" to customer reports of sudden unintended acceleration. Plaintiff believes that it assigns similar codes to reports concerning frontal crashworthiness and post-collision battery fires. Performing searches of its databases for customer complaints, related documentation, lawsuits, and deposition testimonies would be a trivial matter for Tesla.

Plaintiff recognizes the need for restrictions on the scope of these requests and therefore limited them to vehicles with the same or similar automated driving suite. To the extent that the Court believes this is too broad, Plaintiff proposes to narrow SPROG Nos. 1-3 and RPD Nos. 48-56 to reports and complaints arising since January 1, 2015.

///

*Incident Reports (Requests for Production Nos. 34 and 46)*: Plaintiff further requested documents related to incidents and/or reports involving frontal collisions with a narrow rigid object (RPD No. 34) and post-collision battery fires (RPD No. 46). Tesla offered only boilerplate objections to RPD No. 34, which it did not supplement. It offered the same boilerplate objections to RPD No. 46, and in a supplemental response, stated that it was unaware of any lawsuits prior to the date of the subject incident involving a post-collision battery fire in a 2021 Tesla Model Y.

Further responses should be compelled for the same reasons as stated with respect to RPD Nos. 48-56 and SPROG Nos. 1-3.

*Government Inquiries Regarding Sudden Unintended Acceleration (RPD Nos. 13-14)*: Plaintiff requested documents relating to third-party investigations, including by the National Highway Transportation Safety Administration ("NHTSA"), and the National Transportation Safety Board ("NTSB") into instances of sudden unintended acceleration (RPD No. 13). Plaintiff further requested Tesla's internal communications relating so such investigations (RPD No. 14). Tesla's initial responses asserted that the Subject Vehicle performed as designed and otherwise stated boilerplate objections. Its supplemental responses offered to provide only documents produced to NHTSA relating to the Subject Vehicle.

Plaintiff contends that Tesla has not met its burden to show why compliance with the requests would cause any undue burden. As alleged in Plaintiff's Complaint, all of Tesla's vehicles are equipped with features designed to prevent or mitigate unintended acceleration. Dkt. No. 1-2 at ¶36-38. Tesla has been subject to repeated government investigations concerning sudden unintended acceleration in its entire vehicle line regardless of model or model year, including open NHTSA Defect Petitions DP23001 and DP23002. Foreign regulators, including China's Ministry of Industry and Information Technology ("MIIT"), have also investigated sudden

unintended acceleration in Tesla vehicles. MIIT has even issued new regulations banning Tesla's one pedal driving system, which Mr. Leach was known to use, in order to prevent sudden unintended acceleration.

Plaintiff has a right to discover how Tesla responded to such investigations, given the central role of sudden unintended acceleration in this case. As Tesla has not stated any reason why production of documents on these topics would be in any way burdensome, Plaintiff requests the Court compel full responses. Again, should the Court feel the temporal scope should be limited, Plaintiff proposes that Tesla produce all documents responsive to RPD Nos. 13 and 14 since January 1, 2015.

### 2. Clarification as to Whether All Collision Testing Documents Have Been Produced

*Crash Test Documents (RPD Nos. 21, 22, 28, and 33)*: Plaintiff requested categories of documents related to collision performance of Tesla Model Y vehicles, including studies of collision performance (RPD No. 21), testing documents (RPD No. 22), studies of front crash structures (RPD No. 28), and effects on the battery (RPD No. 33).

In response to each of these requests, Tesla initially provided boilerplate objections. In its supplemental responses, Tesla stated only that it would "produce frontal crash test reports related to the 2021 Tesla Model Y." Tesla then produced one NHTSA filing concerning regulatory compliance of the 2021 Model Y, written reports and videos relating to seven crash tests, videos relating to one additional crash test (apparently lacking a written report), and five PowerPoint presentations concerning collision testing and simulations.

Plaintiff contends that these responses are evasive because they are too narrow in scope, and because it cannot be determined whether Tesla is producing all responsive documents. Plaintiff's requests concerned all Model Y vehicles regardless of model year, whereas Tesla's supplemental responses and document productions

only appear to concern one model year. In addition, the wording of Tesla's supplemental responses leaves the possibility open that it performed other frontal crash tests of Model Y vehicles that have not been produced. Indeed, Plaintiff is certain that Tesla did not produce documents relating to all Model Y frontal crash tests because Tesla's YouTube channel includes Model Y crash test video footage from at least four crash tests that were not produced as part of this case.[1] Plaintiff believes that Tesla limited its document production to industry-standard and regulatory crash tests, which Tesla's own engineers suggest provide only an incomplete picture of collision performance.[2]

In addition, although some photographs and videos are included as part of the reports and PowerPoint presentations, it cannot be determined whether all have been provided, or whether they were reproduced at their full resolution.

Plaintiff therefore requests that Tesla be compelled to provide further responses clarifying whether all the responsive documents have been produced with respect to all crash tests performed on all model years of Model Y vehicles.

### 3. Collision Simulation Documents, Including Native Software and Simulation Files

*Model Y Collision Simulations (RPD Nos. 23 and 59; SPROG No. 10)*:
Plaintiff requested that Tesla produce documents related to computer simulations of collisions with narrow rigid objects in Model Y vehicles (RPD No. 23) and the simulation software and files Tesla used in their native format (RPD No. 59). Plaintiff further asked Tesla to identify certain details about its Model Y crash simulations (SPROG No. 10).

Tesla's initial responses to these requests consisted entirely of boilerplate

---

[1] Tesla YouTube video titled "Tesla Crash Lab | Data Driven Safety." (https://www.youtube.com/watch?v=9KR2N_Q8ep8)
[2] *Id.*

8
**PLAINTIFF'S BRIEF RE: DECEMBER 18, 2024 DISCOVERY DISPUTE**

objections. In its supplemental responses to RPD No. 23 and 59, Tesla referred Plaintiff to its supplemental response to RPD No. 21, which concerned crash testing. Tesla's supplemental response to SPROG 10 promised to produce "front crash simulations related to the 2021 Tesla Model Y". The only documents relating to simulations that Tesla produced, however, were the five PowerPoint presentations described above.

Plaintiff regards Tesla's computerized collision simulations to be of fundamental importance to this case, and further believes that Tesla's responses are incomplete and evasive. Modern automotive manufacturers like Tesla are believed to rely heavily on computer simulations rather than the traditional mode of actually crashing vehicles into objects. Tesla's has stated publicly that it performs many simulations of impacts that are different from those required by law and regulation. For example, Tesla claimed to perform "hundreds of simulations" prior to completing just one non-regulatory frontal crash test.[3] Of course, Tesla did not produce this crash test or the simulation files that preceded it. Furthermore, although Tesla stated in response to SPROG No. 10 that it would produce simulation files, the PowerPoint presentations it produced do not include the information sought by SPROG 10.

Plaintiff requests that Tesla be compelled to provide all requested crash simulation files responsive to RPD Nos. 23 and 59, and provide a complete response to SPROG No. 10.

*Model 3 Collision Simulations (RPD Nos. 57 and 58; SPROG No. 6)*: Plaintiff also requested certain simulation files based on a public blog post that was formerly available on Tesla's website concerning the safety of the Tesla Model 3 in frontal pole impacts like the subject collision. Beyond its boilerplate objections, Tesla, in its

---

[3] Tesla YouTube video titled "Tesla Crash Lab | Data Driven Safety."
(https://www.youtube.com/watch?v=9KR2N_Q8ep8)

9
**PLAINTIFF'S BRIEF RE: DECEMBER 18, 2024 DISCOVERY DISPUTE**

supplemental responses, refused to submit to discovery concerning the Model 3 simulations and blog article (which were attached as exhibits to the discovery requests), presenting untimely objections to discovery of any vehicles other than the 2021 Model Y.

Tesla's objections stated in its supplemental responses are untimely and waived. Furthermore, Plaintiff contends that the limited scope of information and documents she seeks concerning Model 3 collision simulations is appropriate and proportional to the needs of this case. Tesla acknowledges the structural similarity of the Model 3 and Model Y in its supplemental response to SPROG No. 8. Here, Plaintiff merely seeks documentation related to Tesla's public claims about its vehicles' crashworthiness. Furthermore, the need for this discovery was magnified when Tesla removed the blog post at issue from its website in August 2024 after Plaintiff's counsel began asking questions about it in this litigation.

### 4. FMEA and DMFEA

*(RPD Nos. 15, 16, 20, 24, 32, 39, and 43)*: Plaintiff served a number of requests for engineering analyses, including Failure Mode and Effects Analyses ("FMEA") and Design Failure Mode and Effects Analyses ("DFMEA") regarding sudden unintended acceleration (RPD Nos. 15 and 16), the Tesla Model Y restraint system (RPD No. 20), frontal collisions with narrow rigid objects in the Model Y (RPD No. 24), collisions with narrow rigid objects between the main crash rails in Model Y vehicles (RPD No. 32), the battery pack in Model Y vehicles (RPD No. 39), and post-collision battery fires in Model Y vehicles (RPD No. 43). Tesla responded to all of these requests with nothing but boilerplate objections. Its supplemental responses provided little additional responsive information. FMEAs and DFMEAs are standard engineering documents that automotive manufacturers use.

Tesla refused to produce any documents in response to RPD Nos. 15 and 16, and instead provided narrative concerning data from the Subject Vehicle and the

denial of NHTSA defect petition DP20-001. In its supplemental response to RPD No. 20, Tesla agreed to produce "documents relating to the developmental and compliance testing of the driver's seat belt system as equipped in the 2021 Model Y". Its supplemental response to RPD Nos. 24, 32, and 39 referred Plaintiff to RPD No. 21's response concerning crash testing. Its supplemental response to No. 43 stated that Tesla would produce documents "reflecting analysis of resistance to thermal runaway and propagation in relation to the battery pack of the 2021 Model Y."

Plaintiff contends that Tesla's responses to all of these requests are evasive because they do not state whether Tesla possesses (and is thus withholding) responsive FMEAs and/or DFMEAs concerning the requested categories. Plaintiff appreciates that Tesla provided some documents concerning seat belt compliance testing, crash testing, and battery fires, but these documents do not appear to comprise FMEAs or DFMEAs, which is a structured and systematic technique for failure analysis. Moreover, the responses as phrased provide ample wiggle room for Tesla to withhold the analyses sought without clearly stating so. Finally, Tesla refused to provide any analyses at all concerning sudden unintended acceleration, a central focus of this case.

Plaintiff requests that the Court compel Tesla to provide further responses which state clearly whether Tesla is withholding FMEAs and/or DFMEAs responsive to RPD Nos. 15, 16, 20, 24, 32, 39, and 43.

**5. Design Documents**

*(RPD Nos. 25-27 and 29-30)*: Plaintiff possesses information that the Tesla Model Y has undergone design changes in its front crash structures. For example, the Subject Vehicle featured front structures constructed of stamped sheet steel, while newer Model Y vehicles feature single-piece cast aluminum structures that Tesla calls "Gigacastings."

In order to understand how the design and construction of the Model Y has

changed over the years, Plaintiff requested documents related to the design of the front crash structures in all Model Y vehicles (RPD No. 25), engineering drawings for all Model Y Vehicles (RPD No. 26), internal communications relating to the front crash structures of all Model Y vehicles (RPD No. 27), and documents depicting the assembly and construction of front crash structures of all Model Y vehicles (RPD No. 29). Because older Model Y vehicles like the Subject Vehicle were derived from the Model 3 design, and newer Model Y vehicles differ in that they feature front Gigacastings, Plaintiff also requested documents which discuss the differences between the front crash structures of Model Y vehicles and Model 3 vehicles (RPD No. 30).

Tesla initially responded with nothing but boilerplate objections. In its supplemental responses to RPD Nos. 25, 26, and 29, Tesla agreed to produce "documents reflecting the design of the front structures in the 2021 Model Y" and indeed produced a set of eleven engineering drawings of the stamped sheet steel version of the 2021 Model Y only. Tesla did not produce any internal communications or documents concerning differences between the Model Y and Model 3, instead standing on its boilerplate objections to RPD Nos. 27 and 30.

Plaintiff contends that she is entitled to documents reflecting the design, and depicting the assembly, of both the older stamped sheet steel version of the Model Y, and the newer Gigacasting version of the Model Y. Plaintiff believes that the older front structures in Model Y vehicles like the Subject Vehicle were insufficient because the design was based on the smaller, lighter Model 3. Plaintiff therefore served RPD Nos. 25-27 and 29-30 so that she could understand how the design changed and how it differs from its Model 3 predecessor. Tesla has not identified any reason why production of these materials would subject it to undue burden. Plaintiff therefore requests that the Court compel Tesla to produce the materials sought by RPD Nos. 25-27 and 29-30.

### 6. Items Promised But Not Produced

Requests for Production Nos. 2 and 3 sought data relating to and transmitted by the Subject Vehicle. Beyond boilerplate objections to the scope and relevance of the requests, Tesla's responses stated that all non-privileged vehicle data had already been produced. Conversely, Tesla further stated that it would produce additional diagnostic log data files. Tesla never produced the diagnostic log data files it promised.

Relatedly, Request for Production No. 7 sought documents describing the circumstances when Tesla vehicles transmit or attempt to transmit data to Tesla. The supplemental response promised to produce responsive documents, but such documents were never actually produced.

In the parties' Joint Brief filed December 18, 2024, Tesla represented to the Court that it was still collecting documents responsive to RFP Nos. 42-45 concerning battery fires. Yet Tesla never actually produced them and has not made any further production of any documents since December 16, 2024.

Plaintiff therefore requests that the Court compel Tesla to produce all items responsive to Requests for Production, Set Two, by a date certain.

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court order Tesla to produce the above-referenced documents and serve further amended responses to Requests for Production Nos. 2, 3, 7, 13-16, 20-30, 32-34, 39, 42-46, and 48-59, and Special Interrogatories Nos. 1-3, 6, and 10, by January 17, 2025 (four weeks before the close of fact discovery) or another date that the Court deems appropriate.

Dated: January 3, 2025                    Respectfully Submitted,

MCCUNE LAW GROUP, APC

*/s/ Todd A. Walburg*
Todd A. Walburg (SBN 213063)
Scott B. Baez (SBN 330485)

Attorneys for Plaintiff
DONNA LEACH, individually and on behalf of the Estate of Clyde Leach

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2025, I filed the foregoing document entitled PLAINTIFF'S BRIEF RE: DECEMBER 18, 2024 DISCOVERY DISPUTE with the clerk of court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in this action.

        */s/ Todd A. Walburg*
        Todd A. Walburg