EXHIBIT 1

| RFP No. | Plaintiff's Request | Tesla's Response | Tesla's Supp. Response | Reasons Further Response Should be Compelled |
|---|---|---|---|---|
| 2 | Produce all ESI data contained in any TESLA DATA STORAGE SYSTEM which is associated with the SUBJECT VEHICLE. | Tesla objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence in that it is not reasonably limited in scope given that this Request could encompass any vehicle data collected from Plaintiff's vehicle regardless of whether such data (or the vehicle component(s) and/or vehicle systems to which such data is related) is at issue in this litigation. Tesla further objects to this Request as vague, confusing, and subject to varying interpretations with respect to the phrase "regarding the operation." Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | Subject to and without waiving the foregoing objections, Tesla responds: all non-privileged documents related to the 2021 Tesla Model Y (5YJYGDEE2MF089331) have been produced in response to Tesla's Response to Plaintiff's Request for Production, Set One. In addition, Tesla will produce additional historical diagnostic log data files with these Responses subject to the Protective Order entered in this case. | Tesla never produced the "additional historical diagnostic log data files" described in its Supplemental Response. |
| 3 | Produce in native format all ESI data contained in any TESLA DATA STORAGE SYSTEM regarding the operation of the SUBJECT VEHICLE between December 31, 2020 and April 18, 2021 that was transmitted by any means from the SUBJECT VEHICLE to TESLA, including but not limited to, telemetry data transmitted from the vehicle to TESLA servers either in real-time or on a periodic basis, or due to an event, such a crash or airbag deployment, as well as video and still-frame camera images, continuously recorded signals and alerts, Log files or CarLog files, text logs, images from any in-cabin driver-facing camera, data and images recorded in the Restraint Control Module, Toolbox 3 (or any other Toolbox iterations) Diagnostic data, and all other data the SUBJECT VEHICLE transmitted. | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla further objects to this Request as dictating the format of production contrary to the Federal Rules of Civil Procedure. Tesla further objects to this Request as vague, confusing, and subject to varying interpretations with respect to the phrase "Tesla Data Storage System." Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | Subject to and without waiving the foregoing objections, Tesla responds: See Tesla's Supplemental Response to Request No. 2. | Tesla never produced the "additional historical diagnostic log data files" described in its Supplemental Response. |
| 7 | Produce all DOCUMENTS and ESI which describe the circumstances or conditions under which the SUBJECT VEHICLE and SIMILAR VEHICLES transmit or attempt to transmit ESI data to any TESLA DATA STORAGE SYSTEM. | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla objects to this request on the grounds that it calls for the production of information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. This is discovery on discovery and not relevant to the Subject Incident. | Subject to and without waiving the foregoing objections, Tesla will search for and produce responsive documents relating to conditions under which diagnostic log data, event data recorder (EDR) and camera clips are transmitted from the Model Y over-the-air to Tesla, subject to the Protective Order entered in this case. | Tesla never produced the "responsive documents relating to conditions under which diagnostic log data, event data recorder (EDR) and camera clips are transmitted from the Model Y over-the-air to Tesla" described in its Supplemental Response. |

| RFP No. | Plaintiff's Request | Tesla's Response | Tesla's Supp. Response | Reasons Further Response Should be Compelled |
|---|---|---|---|---|
| 13 | Produce all DOCUMENTS and ESI related to any investigations or evaluations by third parties, including but not limited to the National Highway Transportation Safety Administration ("NHTSA") and the National Transportation Safety Board ("NTSB"), regarding sudden unintended accelerations in the SUBJECT VEHICLE and/or SIMILAR VEHICLES. | The SUBJECT VEHICLE responded as designed to driver accelerator pedal input during this incident, as is clearly documented in the vehicle data provided to Plaintiffs as part of Tesla's Rule 26 disclosures. Tesla objects to this request on the grounds that searching for *all* documents related to *any* investigation by third parties regarding sudden unintended investigations in the Subject Vehicle or Similar Vehicles is overbroad, unduly burdensome, and requests materials that are neither relevant nor likely to lead to the discovery of admissible evidence. | Subject to and without waiving the foregoing objections, Tesla responds: Tesla will produce documents submitted to NHTSA as part of Tesla's TREAD reporting related to the 2021 Tesla Model Y (5YJYGDEE2MF089331) subject to the Protective Order entered in this case. | Tesla has not met its burden to show why compliance with the requests would cause any undue burden. Tesla has been subject to repeated government investigations concerning sudden unintended acceleration in its entire vehicle line regardless of model or model year, including open NHTSA Defect Petitions DP23001 and DP23002. Foreign regulators, including China's Ministry of Industry and Information Technology ("MIIT"), have also investigated sudden unintended acceleration in Tesla vehicles. MIIT has even issued new regulations banning Tesla's one pedal driving system, which Mr. Leach was known to use, in order to prevent sudden unintended acceleration. Plaintiff has a right to discovery how Tesla responded to such investigations given the central role of sudden unintended acceleration in this case.<br><br>Should the Court feel the temporal scope should be limited, Plaintiff proposes Tesla produce all documents responsive to RPD Nos. 13 and 14 since January 1, 2015. |
| 14 | Produce all DOCUMENTS and ESI that comprise, discuss, refer, relate, or pertain to YOUR internal communications, including but not limited to letters, emails, meeting minutes, notes, chat threads, text messages, notes, and memoranda, regarding NHTSA and/or NTSB's investigations or inquiries of any type associated with potential sudden unintended accelerations in the SUBJECT VEHICLE and/or SIMILAR VEHICLES. | The SUBJECT VEHICLE responded as designed to driver accelerator pedal input during this incident, as is clearly documented in the vehicle data provided to Plaintiffs as part of Tesla's Rule 26 disclosures. Tesla also objects to this request on the grounds that it calls for the production of information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla objects to this request on the grounds that searching for *all* communications regarding NHTSA's and/or NTSB's investigations of "potential" sudden unintended accelerations in the Subject Vehicle or Similar Vehicles is vague, overbroad, unduly burdensome, and requests materials that are neither relevant nor likely to lead to the discovery of amissible evidence. | Subject to and without waiving the foregoing objections, Tesla refers to its Supplemental Response to Request No. 13. Otherwise, Tesla has not had communications with NHTSA or NTSB relative to the 2021 Model Y at issue. Tesla objects to producing internal or external communications relating to other vehicles and unrelated investigations. | Tesla has not met its burden to show why compliance with the requests would cause any undue burden. Tesla has been subject to repeated government investigations concerning sudden unintended acceleration in its entire vehicle line regardless of model or model year, including open NHTSA Defect Petitions DP23001 and DP23002. Foreign regulators, including China's Ministry of Industry and Information Technology ("MIIT"), have also investigated sudden unintended acceleration in Tesla vehicles. MIIT has even issued new regulations banning Tesla's one pedal driving system, which Mr. Leach was known to use, in order to prevent sudden unintended acceleration. Plaintiff has a right to discovery how Tesla responded to such investigations given the central role of sudden unintended acceleration in this case.<br><br>Should the Court feel the temporal scope should be limited, Plaintiff proposes Tesla produce all documents responsive to RPD Nos. 13 and 14 since January 1, 2015. |

| RFP No. | Plaintiff's Request | Tesla's Response | Tesla's Supp. Response | Reasons Further Response Should be Compelled |
|---|---|---|---|---|
| 15 | Produce all DOCUMENTS and ESI that comprise, discuss, refer, relate, or pertain to engineering analyses of sudden unintended acceleration in TESLA MODEL Y vehicles, including but not limited to Failure Mode and Effects Analyses (FMEA) and/or Design Failure Mode and Effects Analyses (DFMEA). | Tesla objects to this Request because it is overly broad, unduly burdensome, vague, ambiguous and asks for information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Further, Tesla objects to this Request to the extent it seeks the production of information that is protected by attorney-client privilege, consulting expert privilege, and/or work product doctrine. | Subject to and without waiving the foregoing objections, Tesla responds: According to the Event Data Recorder (EDR) data retrieved from the 2021 Tesla Model Y (5YJYGDEE2MF089331) on November 6, 2024, the driver caused this collision by pushing the accelerator pedal to 100% for more than 2 seconds before the crash and was travelling at about 70 mph at the time of impact. There is no evidence supporting a claim or allegation that the vehicle experienced a sudden uncommanded acceleration or acceleration contrary to driver input. The NHTSA concluded its investigation into "Sudden Unintended Acceleration" (DP 20-001) by stating it "has not identified evidence that would support opening a defect investigation into SUA" and that "[i]n every instance in which event data was available for review by ODI, the evidence shows that SUA crashes...have been caused by pedal misapplication." Further, NHTSA found [t]here is no evidence of any fault in the accelerator pedal assemblies, motor control systems, or brake systems that has contributed to any of the cited incidents" and, likewise, "no evidence of a design factor contributing to increased likelihood of pedal misapplication." | Tesla's narrative concerning data from the Subject Vehicle and the denial of NHTSA defect petition DP20-001 is non-responsive. It is also evasive because it does not state whether Tesla possesses (and is thus withholding) responsive FMEA and/or DFMEA concerning the requested category. The response as phrased also provides ample wiggle room for Tesla to withhold the analyses sought without clearly stating so.<br><br>Tesla also has not made any showing that compliance with the request would cause undue burden. Furthermore, sudden unintended acceleration is central to this case and therefore the request is calculated to lead to the discovery of admissible evidence. |
| 16 | Produce all DOCUMENTS and ESI that comprise, discuss, refer, relate, or pertain to engineering analyses of sudden unintended acceleration in any TESLA vehicle, including but not limited to Failure Mode and Effects Analyses (FMEA) and/or Design Failure Mode and Effects Analyses (DFMEA). | Tesla objects to this Request because it is overly broad, unduly burdensome, vague, ambiguous and asks for information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Further, Tesla objects to this Request to the extent it seeks the production of information that is protected by attorney-client privilege, consulting expert privilege, and/or work product doctrine. Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | Subject to and without waiving the foregoing objections, see Tesla's Supplemental Response to Request No. 15. | Tesla's narrative concerning data from the Subject Vehicle and the denial of NHTSA defect petition DP20-001 is non-responsive. It is also evasive because it does not state whether Tesla possesses (and is thus withholding) responsive FMEA and/or DFMEA concerning the requested category. The response as phrased also provides ample wiggle room for Tesla to withhold the analyses sought without clearly stating so.<br><br>Tesla also has not made any showing that compliance with the request would cause undue burden. Furthermore, sudden unintended acceleration is central to this case and therefore the request is calculated to lead to the discovery of admissible evidence. |
| 20 | Produce all DOCUMENTS and ESI that comprise, discuss, refer, relate, or pertain to engineering analyses of the TESLA MODEL Y RESTRAINT SYSTEM in frontal collisions, including but not limited to Failure Mode and Effects Analyses (FMEA) and/or Design Failure Mode and Effects Analyses (DFMEA). | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla objects to this request on the grounds that it calls for the production of information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | Subject to and without waiving the foregoing objections, Tesla will search for and produce responsive documents relating to the developmental and compliance testing of the driver's seat belt system as equipped in the 2021 Tesla Model Y, subject to the Protective Order entered in this case. | Tesla's supplemental response is evasive because it does not state whether Tesla provided (and is thus withholding) responsive FMEA and/or DFMEA concerning the requested category. Plaintiff appreciates that Tesla provided some documents concerning seat belt compliance testing, but these documents do not appear to comprise FMEA or DFMEA, which is a structured and systematic technique for failure analysis. Moreover, the response as phrased provides ample wiggle room for Tesla to withhold the analyses sought without clearly stating so.<br><br>Tesla also has not made any showing that compliance with the request would cause undue burden. Furthermore, restraint system performance is central to this case and therefore the request is calculated to lead to the discovery of admissible evidence. |
| 21 | Produce all reports, studies, analyses, or other DOCUMENTS and ESI concerning the performance of TESLA MODEL Y vehicles in frontal collisions with narrow rigid objects. | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla objects to this request on the grounds that it calls for the production of information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla further objects to this Request to the | Subject to and without waiving the foregoing objections, Tesla will produce frontal crash test reports related to the 2021 Tesla Model Y, subject to the Protective Order entered in this case. | This response is evasive because it is too narrow in scope and because it cannot be determined whether Tesla is producing all responsive documents. Plaintiff's requests concerned all Model Y vehicles regardless of model year, whereas Tesla's supplemental responses and document productions only appear to concern one model year. |

| RFP No. | Plaintiff's Request | Tesla's Response | Tesla's Supp. Response | Reasons Further Response Should be Compelled |
|---|---|---|---|---|
| | | extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | | In addition, the wording of Tesla's supplemental responses leaves the possibility open that it performed other frontal crash tests of Model Y vehicles that have not been produced. Indeed, Plaintiff is certain that Tesla did not produce documents relating to all Model Y frontal crash tests because Tesla's YouTube channel includes Model Y crash test video footage from at least four crash tests that were not produced as part of this case.  Plaintiff believes that Tesla limited its document production to industry-standard and regulatory crash tests, which Tesla's own engineers suggest provide only an incomplete picture of collision performance.

In addition, although some photographs and videos are included as part of the reports and PowerPoint presentations, it cannot be determined whether all have been provided, or whether they were reproduced at their full resolution.

Plaintiff therefore requests that Tesla be compelled to provide further responses clarifying whether all the responsive documents have been produced with respect to all crash tests performed on all model years of Model Y vehicles. |
| 22 | Produce all DOCUMENTS and ESI relating to tests of frontal collisions with narrow rigid objects in TESLA MODEL Y vehicles, including but not limited to test procedures, vehicles tested, instrumentation, data collected, photographs and videos, and results obtained. | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla objects to this request on the grounds that it calls for the production of information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | Subject to and without waiving the foregoing objections, see Tesla's Supplemental Response to Request No. 21. | This response is evasive because it is too narrow in scope and because it cannot be determined whether Tesla is producing all responsive documents. Plaintiff's requests concerned all Model Y vehicles regardless of model year, whereas Tesla's supplemental responses and document productions only appear to concern one model year.

In addition, the wording of Tesla's supplemental responses leaves the possibility open that it performed other frontal crash tests of Model Y vehicles that have not been produced. Indeed, Plaintiff is certain that Tesla did not produce documents relating to all Model Y frontal crash tests because Tesla's YouTube channel includes Model Y crash test video footage from at least four crash tests that were not produced as part of this case.  Plaintiff believes that Tesla limited its document production to industry-standard and regulatory crash tests, which Tesla's own engineers suggest provide only an incomplete picture of collision performance.

In addition, although some photographs and videos are included as part of the reports and PowerPoint presentations, it cannot be determined whether all have been provided, or whether they were reproduced at their full resolution.

Plaintiff therefore requests that Tesla be compelled to provide further responses clarifying whether all the responsive documents have been produced with respect to all crash tests performed on all model years of Model Y vehicles. |
| 23 | Produce all DOCUMENTS and ESI relating to all computer simulations, including but not limited to finite element analyses and computer-aided engineering studies, of | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla objects to this request on the grounds that it calls for the production of | Subject to and without waiving the foregoing objections, see Tesla's Supplemental Response to Request No. 21. | Tesla's response is evasive because it does not state with clarity whether Tesla is complying the with the request. The five PowerPoint presentations were the only documents Tesla produced relating to collision simulations. |

| RFP No. | Plaintiff's Request | Tesla's Response | Tesla's Supp. Response | Reasons Further Response Should be Compelled |
|---|---|---|---|---|
| | frontal collisions with narrow rigid objects in TESLA MODEL Y vehicles. | information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | | Plaintiff regards Tesla's computerized collision simulations to be of fundamental importance to this case, and further believes that Tesla's responses are incomplete and evasive. Tesla's has stated publicly that it performs many simulations of impacts that are different from those required by law and regulation. For example, Tesla claimed to perform "hundreds of simulations" prior to completing just one non-regulatory frontal crash test. Of course, Tesla did not produce this crash test or the simulations files that preceded it. Neither did Tesla produce native software or files for any of the simulations referenced in the five PowerPoint presentations.<br><br>Plaintiff requests Tesla be compelled to provide all requested crash simulation files responsive to RPD No. 23, including simulation software and files in native format. |
| 24 | Produce all DOCUMENTS and ESI that comprise, discuss, refer, relate, or pertain to engineering analyses of frontal collisions with narrow rigid object in TESLA MODEL Y vehicles, including but not limited to Failure Mode and Effects Analyses (FMEA) and/or Design Failure Mode and Effects Analyses (DFMEA). | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla objects to this request on the grounds that it calls for the production of information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | Subject to and without waiving the foregoing objections, see Tesla's Supplemental Response to Request No. 21. | Tesla's supplemental response is evasive because it does not state whether Tesla possesses (and is thus withholding) responsive FMEA and/or DFMEA concerning the requested category. Plaintiff appreciates that Tesla provided some documents concerning frontal collision testing, but these documents do not appear to comprise FMEA or DFMEA, which is a structured and systematic technique for failure analysis. Moreover, the response as phrased provides ample wiggle room for Tesla to withhold the analyses sought without clearly stating so.<br><br>Tesla also has not made any showing that compliance with the request would cause undue burden. Furthermore, frontal collision performance is central to this case and therefore the request is calculated to lead to the discovery of admissible evidence. |
| 25 | Produce all DOCUMENTS and ESI relating to the design of FRONT CRASH STRUCTURES in TESLA MODEL Y vehicles. | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla objects to this request on the grounds that it calls for the production of information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | Subject to and without waiving the foregoing objections, Tesla will search for and produce documents reflecting the design of the front structures in the 2021 Model Y, subject to the Protective Order entered in this case. | Plaintiff made this request in order to understand how the design and construction of the Model Y has changed over the years.<br><br>Plaintiff possesses information that the Tesla Model Y has undergone design changes in its front crash structures. For example, the Subject Vehicle featured front structures constructed of stamped sheet steel, while newer Model Y vehicles feature single-piece cast aluminum structures Tesla calls "Gigacastings."<br><br>Tesla produced a set of eleven engineering drawings of the stamped sheet steel version of the 2021 Model Y only, but Plaintiff seeks a broader set of documents related to all versions of the Model Y. Plaintiff needs the documents requested to understand how the Model Y design changed and how it differs from its Model 3 predecessor. Tesla has not identified any reason why production of these materials would subject it to undue burden. |

| RFP No. | Plaintiff's Request | Tesla's Response | Tesla's Supp. Response | Reasons Further Response Should be Compelled |
|---|---|---|---|---|
| 26 | Produce all engineering drawings, specifications, blueprints, plans, or designs relating to the FRONT CRASH STRUCTURES of TESLA MODEL Y vehicles. | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | Subject to and without waiving the foregoing objections, Tesla will search for and produce documents reflecting the design of the front structures in the 2021 Model Y, subject to the Protective Order entered in this case. | Plaintiff made this request in order to understand how the design and construction of the Model Y has changed over the years.<br><br>Plaintiff possesses information that the Tesla Model Y has undergone design changes in its front crash structures. For example, the Subject Vehicle featured front structures constructed of stamped sheet steel, while newer Model Y vehicles feature single-piece cast aluminum structures Tesla calls "Gigacastings."<br><br>Tesla produced a set of eleven engineering drawings of the stamped sheet steel version of the 2021 Model Y only, but Plaintiff seeks a broader set of documents related to all versions of the Model Y. Plaintiff needs the documents requested to understand how the Model Y design changed and how it differs from its Model 3 predecessor. Tesla has not identified any reason why production of these materials would subject it to undue burden. |
| 27 | Produce all DOCUMENTS and ESI that comprise, discuss, refer, relate, or pertain to YOUR internal communications regarding FRONT CRASH STRUCTURES of TESLA MODEL Y vehicles, including but not limited to letters, emails, meeting minutes, notes, chat threads, text messages, notes, and memoranda. | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla objects to this request on the grounds that it calls for the production of information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | None provided. | Plaintiff made this request in order to understand how the design and construction of the Model Y has changed over the years.<br><br>Plaintiff possesses information that the Tesla Model Y has undergone design changes in its front crash structures. For example, the Subject Vehicle featured front structures constructed of stamped sheet steel, while newer Model Y vehicles feature single-piece cast aluminum structures Tesla calls "Gigacastings."<br><br>Tesla refused to produce any internal communications regarding the changed front crash structures. Plaintiff needs the documents requested to understand how the Model Y design changed and how it differs from its Model 3 predecessor. Tesla has not identified any reason why production of these materials would subject it to undue burden. Furthermore, the documents sought relate to a central issue of the case. |
| 28 | Produce all studies, reports, analyses, and/or testing results regarding FRONT CRASH STRUCTURES of TESLA MODEL Y vehicles. | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla objects to this request on the grounds that it calls for the production of information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | Subject to and without waiving the foregoing objections, see Tesla's Supplemental Response to Request No. 21. | This response is evasive because it is too narrow in scope and because it cannot be determined whether Tesla is producing all responsive documents. Plaintiff's requests concerned all Model Y vehicles regardless of model year, whereas Tesla's supplemental responses and document productions only appear to concern one model year.<br><br>In addition, the wording of Tesla's supplemental responses leaves the possibility open that it performed other frontal crash tests of Model Y vehicles that have not been produced. Indeed, Plaintiff is certain that Tesla did not produce documents relating to all Model Y frontal crash tests because Tesla's YouTube channel includes Model Y crash test video footage from at least four crash tests that were not produced |

| RFP No. | Plaintiff's Request | Tesla's Response | Tesla's Supp. Response | Reasons Further Response Should be Compelled |
|---|---|---|---|---|
| | | | | as part of this case. Plaintiff believes that Tesla limited its document production to industry-standard and regulatory crash tests, which Tesla's own engineers suggest provide only an incomplete picture of collision performance.<br><br>In addition, although some photographs and videos are included as part of the reports and PowerPoint presentations, it cannot be determined whether all have been provided, or whether they were reproduced at their full resolution.<br><br>Plaintiff therefore requests that Tesla be compelled to provide further responses clarifying whether all the responsive documents have been produced with respect to all crash tests performed on all model years of Model Y vehicles |
| 29 | Produce all DOCUMENTS and ESI describing or depicting the manufacture, assembly, or construction of FRONT CRASH STRUCTURES of TESLA MODEL Y vehicles. | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla objects to this request on the grounds that it calls for the production of information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | Subject to and without waiving the foregoing objections, see Tesla's Supplemental Response to Request No. 25. | Plaintiff made this request in order to understand how the design and construction of the Model Y has changed over the years.<br><br>Plaintiff possesses information that the Tesla Model Y has undergone design changes in its front crash structures. For example, the Subject Vehicle featured front structures constructed of stamped sheet steel, while newer Model Y vehicles feature single-piece cast aluminum structures Tesla calls "Gigacastings."<br><br>Tesla produced a set of eleven engineering drawings of the stamped sheet steel version of the 2021 Model Y only, but Plaintiff seeks a broader set of documents related to all versions of the Model Y. Plaintiff needs the documents requested to understand how the Model Y design changed and how it differs from its Model 3 predecessor. Tesla has not identified any reason why production of these materials would subject it to undue burden. |
| 30 | Produce all DOCUMENTS and ESI that discuss, refer, relate, or pertain to any differences between the FRONT CRASH STRUCTURES of TESLA MODEL Y and TESLA Model 3 vehicles. | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla objects to this request on the grounds that it calls for the production of information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | None provided. | Plaintiff made this request in order to understand how the design and construction of the Model Y has changed over the years.<br><br>Plaintiff possesses information that the Tesla Model Y has undergone design changes in its front crash structures. For example, the Subject Vehicle featured front structures constructed of stamped sheet steel, while newer Model Y vehicles feature single-piece cast aluminum structures Tesla calls "Gigacastings."<br><br>Tesla refused to produce any responsive documents. Plaintiff believes that older steel Model Y vehicles like the Subject Vehicle were insufficient because the design was based on the smaller, lighter Model 3. Plaintiff needs the documents requested to understand how the Model Y design changed and how it differs from its Model 3 predecessor. Tesla has not identified any reason why production of these materials would subject it to undue burden. Furthermore, the documents sought relate to a central issue of the case. |

| RFP No. | Plaintiff's Request | Tesla's Response | Tesla's Supp. Response | Reasons Further Response Should be Compelled |
|---|---|---|---|---|
| 32 | Produce all DOCUMENTS and ESI that comprise, discuss, refer, relate, or pertain to engineering analyses of frontal collisions with narrow rigid object between the main crash rails on TESLA MODEL Y vehicles, including but not limited to Failure Mode and Effects Analyses (FMEA) and/or Design Failure Mode and Effects Analyses (DFMEA). | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla objects to this request on the grounds that it calls for the production of information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | Subject to and without waiving the foregoing objections, see Tesla's Supplemental Response to Request No. 21. | Tesla's supplemental response is evasive because it does not state whether Tesla possesses (and is thus withholding) responsive FMEA and/or DFMEA concerning the requested category.  Plaintiff appreciates that Tesla provided some documents concerning frontal collision testing, but these documents do not appear to comprise FMEA or DFMEA, which is a structured and systematic technique for failure analysis. Moreover, the response as phrased provides ample wiggle room for Tesla to withhold the analyses sought without clearly stating so.<br><br>Tesla also has not made any showing that compliance with the request would cause undue burden. Furthermore, frontal collision performance is central to this case and therefore the request is calculated to lead to the discovery of admissible evidence. |
| 33 | Produce all DOCUMENTS and ESI concerning the effects of frontal collision with a narrow rigid object between the main crash rails on the battery pack in TESLA MODEL Y vehicles. | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla objects to this request on the grounds that it calls for the production of information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | Subject to and without waiving the foregoing objections, see Tesla's Supplemental Response to Request No. 21. | This response is evasive because it is too narrow in scope and because it cannot be determined whether Tesla is producing all responsive documents. Plaintiff's requests concerned all Model Y vehicles regardless of model year, whereas Tesla's supplemental responses and document productions only appear to concern one model year.<br><br>In addition, the wording of Tesla's supplemental responses leaves the possibility open that it performed other frontal crash tests of Model Y vehicles that have not been produced. Indeed, Plaintiff is certain that Tesla did not produce documents relating to all Model Y frontal crash tests because Tesla's YouTube channel includes Model Y crash test video footage from at least four crash tests that were not produced as part of this case.  Plaintiff believes that Tesla limited its document production to industry-standard and regulatory crash tests, which Tesla's own engineers suggest provide only an incomplete picture of collision performance.<br><br>In addition, although some photographs and videos are included as part of the reports and PowerPoint presentations, it cannot be determined whether all have been provided, or whether they were reproduced at their full resolution.<br><br>Plaintiff therefore requests that Tesla be compelled to provide further responses clarifying whether all the responsive documents have been produced with respect to all crash tests performed on all model years of Model Y vehicles. |
| 34 | Produce all DOCUMENTS and ESI that comprise, discuss, refer, relate, or pertain to incident and/or accident reports involving a frontal collision with a narrow rigid object between the main crash rails of any TESLA vehicle. | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla objects to this request on the grounds that it calls for the production of information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the | None provided. | Tesla refused to produce any documents and stands on its boilerplate objections.<br><br>Plaintiff contends that the burden of complying with these requests will be minimal. Tesla maintains sophisticated electronic databases and can easily perform searches for the type of incident report that Plaintiff requests, should such reports exist. |

| RFP No. | Plaintiff's Request | Tesla's Response | Tesla's Supp. Response | Reasons Further Response Should be Compelled |
|---|---|---|---|---|
| | | extent such materials are not related to the claims asserted against Tesla in this litigation. | | Plaintiff recognizes the need for restrictions on the scope of this request and therefore limited it to vehicles with the same or similar automated driving suite. To the extent that the Court believes this is too broad, Plaintiff proposes to narrow the request to reports arising since January 1, 2015. |
| 39 | Produce all DOCUMENTS and ESI that comprise, discuss, refer, relate, or pertain to engineering analyses concerning the battery pack in TESLA MODEL Y vehicles, including but not limited to Failure Mode and Effects Analyses (FMEA) and/or Design Failure Mode and Effects Analyses (DFMEA). | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla objects to this request on the grounds that it calls for the production of information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | Subject to and without waiving the foregoing objections, see Tesla's Supplemental Response to Request No. 21. | Tesla's supplemental response is evasive because it does not state whether Tesla possesses (and is thus withholding) responsive FMEA and/or DFMEA concerning the requested category.  Plaintiff appreciates that Tesla provided some documents concerning frontal collision testing, but these documents do not appear to comprise FMEA or DFMEA, which is a structured and systematic technique for failure analysis. Moreover, the response as phrased provides ample wiggle room for Tesla to withhold the analyses sought without clearly stating so.

Tesla also has not made any showing that compliance with the request would cause undue burden. Furthermore, frontal collision performance is central to this case and therefore the request is calculated to lead to the discovery of admissible evidence. |
| 42 | Produce all DOCUMENTS and ESI that discuss, refer, relate, or pertain to the risk or occurrence of post-collision battery fires in TESLA MODEL Y vehicles. | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla objects to this request on the grounds that it calls for the production of information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | Subject to and without waiving the foregoing objections, see Tesla's Supplemental Response to Request No. 37.

[Supp. Resp. to RPD No. 37: Subject to and without waiving the foregoing objections, Tesla will produce design documents for the battery pack in the 2021 Model Y (5YJYGDEE2MF089331), subject to the Protective Order entered this case.] | In the parties' Joint Brief filed December 18, 2024, Tesla represented to the Court that it was still collecting documents responsive to RFP Nos. 42-45 concerning battery fires. Yet Tesla never actually produced them and has not made any further production of any documents since December 16, 2024. |
| 43 | Produce all DOCUMENTS and ESI that comprise, discuss, refer, relate, or pertain to engineering analyses of post-collision battery fires on TESLA MODEL Y vehicles, including but not limited to Failure Mode and Effects Analyses (FMEA) and/or Design Failure Mode and Effects Analyses (DFMEA). | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla objects to this request on the grounds that it calls for the production of information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | Subject to and without waiving the foregoing objections, Tesla will search for and produce documents reflecting analysis of resistance to thermal runaway and propagation in related to the battery pack in the 2021 Model Y (5YJYGDEE2MF089331). | Tesla's supplemental response is evasive because it does not state whether Tesla possesses (and is thus withholding) responsive FMEA and/or DFMEA concerning the requested category.  Plaintiff appreciates that Tesla provided some documents concerning frontal collision testing, but these documents do not appear to comprise FMEA or DFMEA, which is a structured and systematic technique for failure analysis. Moreover, the response as phrased provides ample wiggle room for Tesla to withhold the analyses sought without clearly stating so.

Tesla also has not made any showing that compliance with the request would cause undue burden. Furthermore, frontal collision performance is central to this case and therefore the request is calculated to lead to the discovery of admissible evidence.

In addition, in the parties' Joint Brief filed December 18, 2024, Tesla represented to the Court that it was still collecting documents responsive to RFP Nos. 42-45 concerning battery fires. Yet Tesla never actually produced them and has not made any further production of any documents since December 16, 2024. |

| RFP No. | Plaintiff's Request | Tesla's Response | Tesla's Supp. Response | Reasons Further Response Should be Compelled |
|---|---|---|---|---|
| 44 | Produce all DOCUMENTS and ESI that comprise, discuss, refer, relate, or pertain to YOUR internal communications regarding the risk or occurrence of post- collision battery fires in TESLA MODEL Y vehicles, including but not limited to letters, emails, meeting minutes, notes, chat threads, text messages, notes, and memoranda. | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla objects to this request on the grounds that it calls for the production of information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | Subject to and without waiving the foregoing objections, see Tesla's Supplemental Response to Request Nos. 42 and 43. | In the parties' Joint Brief filed December 18, 2024, Tesla represented to the Court that it was still collecting documents responsive to RFP Nos. 42-45 concerning battery fires. Yet Tesla never actually produced them and has not made any further production of any documents since December 16, 2024. |
| 45 | Produce all DOCUMENTS and ESI that comprise, discuss, refer, relate, or pertain to YOUR internal communications regarding the risk or occurrence of post- collision battery fires in any TESLA vehicle, including but not limited to letters, emails, meeting minutes, notes, chat threads, text messages, notes, and memoranda. | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla objects to this request on the grounds that it calls for the production of information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | Subject to and without waiving the foregoing objections, See Tesla's Supplemental Response to Request No. 45. | In the parties' Joint Brief filed December 18, 2024, Tesla represented to the Court that it was still collecting documents responsive to RFP Nos. 42-45 concerning battery fires. Yet Tesla never actually produced them and has not made any further production of any documents since December 16, 2024. |
| 46 | Produce all DOCUMENTS and ESI that comprise, discuss, refer, relate, or pertain to incident and/or accident reports involving a post-collision battery fire in any TESLA vehicle. | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla objects to this request on the grounds that it calls for the production of information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | Subject to and without waiving the foregoing objections, Tesla made a reasonable and diligent search for and did not locate any lawsuits prior to April 17, 2021 involving a post-collision fire in a Tesla Model Y. If Plaintiff or Plaintiff's counsel are aware of or suspects that there is an incident responsive to this Request and should have been identified, Tesla requests counsel identify the matter(s) in order that Tesla may investigate further and further amend or supplement this response if necessary. | Tesla purports to provide substantive information within its supplemental response only to evade the gravamen of Plaintiff's request. The curtailment in scope to "lawsuits prior to April 17, 2021 involving a post-collision fire in a Tesla Model Y" is so narrow as to be meaningless. The Model Y was only available for purchase by the public for a matter of months prior to the date of the subject incident and it is unlikely that any lawsuit concerning defects within it would have already been filed by the time Mr. Leach was killed. Moreover, Tesla has admitted that the Model Y at issue is structurally similar to other Tesla vehicles, including the Tesla Model 3. Supp. Resp. to SPROG No. 8. Tesla has also claimed that the Model Y has not undergone design revisions since its introduction. Supp. Resp. to SPROG Nos. 11 and 12. Given the high degree of similarity across vehicle models and model years that Tesla has admitted, a restriction of discovery to matters involving the 2021 Model Y is inappropriate and prejudicial to Plaintiff's rights to discover relevant information.

The burden of complying with these requests will be minimal. Tesla maintains sophisticated electronic databases and can easily perform searches for responsive incident reports. In addition, the documents sought are of central relevance to the case.

Plaintiff recognizes the need for restrictions on the scope of this request and therefore limited it to vehicles with the same or similar automated driving suite. To the extent that the Court believes this is too broad, Plaintiff proposes to narrow the request to reports arising since January 1, 2015. |
| 48 | Produce all Tesla corporate designee (Fed. R. Civ. P. 30(b)(6) and its state-law counterparts) depositions and expert depositions from other cases alleging sudden unintended | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla objects to this request on the grounds that it calls for the production of | Subject to and without waiving the foregoing objections, Tesla responds: According to the Event Data Recorder (EDR) data retrieved from the 2021 Tesla Model Y (5YJYGDEE2MF089331) on November 6, 2024, the driver caused this collision by pushing the accelerator pedal to 100% for more | Tesla's privacy objection stated in its supplemental response is untimely. |

| RFP No. | Plaintiff's Request | Tesla's Response | Tesla's Supp. Response | Reasons Further Response Should be Compelled |
|---|---|---|---|---|
| | acceleration in TESLA MODEL Y or SIMILAR VEHICLES. | information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | than 2 seconds before the crash and was travelling at about 70 mph at the time of impact. There is no evidence supporting a claim or allegation that the vehicle experienced a sudden uncommanded acceleration or acceleration contrary to driver input. The NHTSA concluded its investigation into "Sudden Unintended Acceleration" (DP 20-001) by stating it "has not identified evidence that would support opening a defect investigation into SUA" and that "[i]n every instance in which event data was available for review by ODI, the evidence shows that SUA crashes…have been caused by pedal misapplication." Further, NHTSA found [t]here is no evidence of any fault in the accelerator pedal assemblies, motor control systems, or brake systems that has contributed to any of the cited incidents" and, likewise, "no evidence of a design factor contributing to increased likelihood of pedal misapplication." Tesla objects to producing transcripts from other lawsuits that relate to other crashes with other circumstances and other plaintiffs, as such transcripts are subject to the protective order(s) entered in those matters and may include or reflect information that is of a sensitive nature relating to the parties and incident at issue in those cases, if any. Tesla will respond appropriately to a proper deposition notice in this case. | In addition, Plaintiff's experts will testify that the data recorded by the Subject Vehicle's Event Data Recorder is consistent with sudden unintended acceleration. Tesla may not unilaterally restrict the scope of discovery. The burden of complying with these requests will be minimal. Tesla maintains sophisticated electronic databases and can easily perform searches for responsive depositions. In addition, the documents sought are of central relevance to the case. Plaintiff recognizes the need for restrictions on the scope of this request and therefore limited it to vehicles with the same or similar automated driving suite. To the extent that the Court believes this is too broad, Plaintiff proposes to narrow the request to depositions taken since January 1, 2015. |
| 49 | Produce all customer comments, feedback, correspondence, complaints, and inquiries regarding sudden unintended accelerations in the TESLA MODEL Y or SIMILAR VEHICLES. | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. | Subject to and without waiving the foregoing objections, Tesla responds: According to the Event Data Recorder (EDR) data retrieved from the 2021 Tesla Model Y (5YJYGDEE2MF089331) on November 6, 2024, the driver caused this collision by pushing the accelerator pedal to 100% for more than 2 seconds before the crash and was travelling at about 70 mph at the time of impact. There is no evidence supporting a claim or allegation that the vehicle experienced a sudden uncommanded acceleration or acceleration contrary to driver input. The NHTSA concluded its investigation into "Sudden Unintended Acceleration" (DP 20-001) by stating it "has not identified evidence that would support opening a defect investigation into SUA" and that "[i]n every instance in which event data was available for review by ODI, the evidence shows that SUA crashes…have been caused by pedal misapplication." Further, NHTSA found [t]here is no evidence of any fault in the accelerator pedal assemblies, motor control systems, or brake systems that has contributed to any of the cited incidents" and, likewise, "no evidence of a design factor contributing to increased likelihood of pedal misapplication." Notwithstanding, Tesla made a reasonable and diligent search for but did not locate any responsive lawsuit complaints involving a claim of unintended acceleration in a Tesla Model Y prior to April 17, 2021. If Plaintiff or Plaintiff's counsel are aware of or suspects that there is an incident responsive to this Request and should have been identified, Tesla requests counsel identify the matter(s) in order that Tesla may investigate further and further amend or supplement this response if necessary. Tesla otherwise objects to production of materials relating to customers who have not filed a lawsuit as such production may violate their right to privacy which they have not waived by not filing a lawsuit. | Tesla's privacy objection stated in its supplemental response is untimely. In addition, Plaintiff's experts will testify that the data recorded by the Subject Vehicle's Event Data Recorder is consistent with sudden unintended acceleration. Tesla may not unilaterally restrict the scope of discovery. Tesla purports to provide substantive information within its supplemental response only to evade the gravamen of Plaintiff's request. The curtailment in scope to "lawsuits prior to April 17, 2021 involving [. . .] a Tesla Model Y" is so narrow as to be meaningless. The Model Y was only available for purchase by the public for a matter of months prior to the date of the subject incident and it is unlikely that any lawsuit concerning defects within it would have already been filed by the time Mr. Leach was killed. Moreover, Tesla has admitted that the Model Y at issue is structurally similar to other Tesla vehicles, including the Tesla Model 3. Supp. Resp. to SPROG No. 8. Tesla has also claimed that the Model Y has not undergone design revisions since its introduction. Supp. Resp. to SPROG Nos. 11 and 12. Given the high degree of similarity across vehicle models and model years that Tesla has admitted, a restriction of discovery to matters involving the 2021 Model Y is inappropriate and prejudicial to Plaintiff's rights to discover relevant information. The burden of complying with these requests will be minimal. Tesla maintains sophisticated electronic databases and can easily perform searches for responsive customer complaints. For example, it has been publicly reported that Tesla assigns the internal code "27973" to customer reports of sudden unintended acceleration. Plaintiff believes that it assigns similar codes to reports concerning frontal crashworthiness and post-collision battery fires. Performing searches of its |

| RFP No. | Plaintiff's Request | Tesla's Response | Tesla's Supp. Response | Reasons Further Response Should be Compelled |
|---------|--------------------|-----------------|----------------------|---------------------------------------------|
| | | | | databases for customer complaints, related documentation, lawsuits, and deposition testimonies would be a trivial matter for Tesla. In addition, the documents sought are of central relevance to the case.<br><br>Plaintiff recognizes the need for restrictions on the scope of this request and therefore limited it to vehicles with the same or similar automated driving suite. To the extent that the Court believes this is too broad, Plaintiff proposes to narrow the request to reports arising since January 1, 2015. |
| 50 | For all customer comments, feedback, correspondence, complaints, and inquiries regarding sudden unintended accelerations in the TESLA MODEL Y or SIMILAR VEHICLES, produce the following: (a) all messages exchanged with the customer about the issue; (b) all messages sent within TESLA that discuss the issue; (c) all CAPTURES of internet forum posts that discuss the issue (Definition: The term "CAPTURES" refers to any way that the post was memorialized, including but not limited to screenshots, pdf printouts, saving the webpage and copy/paste of the text); (d) all tables, summaries, logs or other DOCUMENTS and ESI that reference the customer complaint specifically or the issue generally; and (e) all still photographs or videos that demonstrate the issue. | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla objects to this request on the grounds that it calls for the production of information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | Subject to and without waiving the foregoing objections, See Tesla's Supplemental Response to Request No. 49. | Tesla's privacy objection stated in its supplemental response is untimely.<br><br>In addition, Plaintiff's experts will testify that the data recorded by the Subject Vehicle's Event Data Recorder is consistent with sudden unintended acceleration. Tesla may not unilaterally restrict the scope of discovery.<br><br>Tesla purports to provide substantive information within its supplemental response only to evade the gravamen of Plaintiff's request. The curtailment in scope to "lawsuits prior to April 17, 2021 involving [. . .] a Tesla Model Y" is so narrow as to be meaningless.  The Model Y was only available for purchase by the public for a matter of months prior to the date of the subject incident and it is unlikely that any lawsuit concerning defects within it would have already been filed by the time Mr. Leach was killed. Moreover, Tesla has admitted that the Model Y at issue is structurally similar to other Tesla vehicles, including the  Tesla Model 3. Supp. Resp. to SPROG No. 8. Tesla has also claimed that the Model Y has not undergone design revisions since its introduction. Supp. Resp. to SPROG Nos. 11 and 12. Given the high degree of similarity across vehicle models and model years that Tesla has admitted, a restriction of discovery to matters involving the 2021 Model Y is inappropriate and prejudicial to Plaintiff's rights to discover relevant information.<br><br>The burden of complying with these requests will be minimal. Tesla maintains sophisticated electronic databases and can easily perform searches for responsive customer complaints. For example, it has been publicly reported that Tesla assigns the internal code "27973" to customer reports of sudden unintended acceleration. Plaintiff believes that it assigns similar codes to reports concerning frontal crashworthiness and post-collision battery fires. Performing searches of its databases for customer complaints, related documentation, lawsuits, and deposition testimonies would be a trivial matter for Tesla. In addition, the documents sought are of central relevance to the case.<br><br>Plaintiff recognizes the need for restrictions on the scope of this request and therefore limited it to vehicles with the same or similar automated driving suite. To the extent that the |

| RFP No. | Plaintiff's Request | Tesla's Response | Tesla's Supp. Response | Reasons Further Response Should be Compelled |
|---|---|---|---|---|
| | | | | Court believes this is too broad, Plaintiff proposes to narrow the request to reports arising since January 1, 2015. |
| 51 | Produce all Tesla corporate designee (Fed. R. Civ. P. 30(b)(6) and its state-law counterparts) depositions and expert depositions from other cases alleging a TESLA MODEL Y or SIMILAR VEHICLE was not crashworthy in a frontal impact collision. | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla objects to this request on the grounds that it calls for the production of information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | Subject to and without waiving the foregoing objections, Tesla responds: Tesla made a reasonable and diligent search for but did not locate any corporate or expert depositions involving allegations that a 2021 Tesla Model Y was not crashworthy in a frontal impact collision prior to April 17, 2021. If Plaintiff or Plaintiff's counsel are aware of or suspects that there is an incident responsive to this Request and should have been identified, Tesla requests counsel identify the matter(s) in order that Tesla may investigate further and further amend or supplement this response if necessary. | Tesla's privacy objection stated in its supplemental response is untimely.

Tesla purports to provide substantive information within its supplemental response only to evade the gravamen of Plaintiff's request. The curtailment in scope to "lawsuits prior to April 17, 2021 involving [. . .] a Tesla Model Y" is so narrow as to be meaningless.  The Model Y was only available for purchase by the public for a matter of months prior to the date of the subject incident and it is unlikely that any lawsuit concerning defects within it would have already been filed by the time Mr. Leach was killed. Moreover, Tesla has admitted that the Model Y at issue is structurally similar to other Tesla vehicles, including the  Tesla Model 3. Supp. Resp. to SPROG No. 8. Tesla has also claimed that the Model Y has not undergone design revisions since its introduction. Supp. Resp. to SPROG Nos. 11 and 12. Given the high degree of similarity across vehicle models and model years that Tesla has admitted, a restriction of discovery to matters involving the 2021 Model Y is inappropriate and prejudicial to Plaintiff's rights to discover relevant information.

The burden of complying with these requests will be minimal. Tesla maintains sophisticated electronic databases and can easily perform searches for responsive depositions. In addition, the documents sought are of central relevance to the case.

Plaintiff recognizes the need for restrictions on the scope of this request and therefore limited it to vehicles with the same or similar automated driving suite. To the extent that the Court believes this is too broad, Plaintiff proposes to narrow the request to depositions taken since January 1, 2015. |
| 52 | Produce all customer comments, feedback, correspondence, complaints, and inquiries regarding frontal collision crashworthiness in the TESLA MODEL Y or SIMILAR VEHICLES. | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla objects to this request on the grounds that it calls for the production of information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | Subject to and without waiving the foregoing objections, Tesla responds: Tesla made a reasonable and diligent search for but did not locate any lawsuit complaints involving allegations that a 2021 Tesla Model Y was not crashworthy in a frontal impact collision prior to April 17, 2021. If Plaintiff or Plaintiff's counsel are aware of or suspects that there is an incident responsive to this Request and should have been identified, Tesla requests counsel identify the matter(s) in order that Tesla may investigate further and further amend or supplement this response if necessary.

Tesla otherwise objects to production of materials relating to customers who have not filed a lawsuit as such production may violate their right to privacy which they have not waived by not filing a lawsuit. | Tesla's privacy objection stated in its supplemental response is untimely.

Tesla purports to provide substantive information within its supplemental response only to evade the gravamen of Plaintiff's request. The curtailment in scope to "lawsuits prior to April 17, 2021 involving [. . .] a Tesla Model Y" is so narrow as to be meaningless.  The Model Y was only available for purchase by the public for a matter of months prior to the date of the subject incident and it is unlikely that any lawsuit concerning defects within it would have already been filed by the time Mr. Leach was killed. Moreover, Tesla has admitted that the Model Y at issue is structurally similar to other Tesla vehicles, including the  Tesla Model 3. Supp. Resp. to SPROG No. 8. Tesla has also claimed that the Model Y has not undergone design revisions since its introduction. Supp. Resp. to SPROG Nos. 11 and 12. Given the high degree of |

| RFP No. | Plaintiff's Request | Tesla's Response | Tesla's Supp. Response | Reasons Further Response Should be Compelled |
|---|---|---|---|---|
| | | | | similarity across vehicle models and model years that Tesla has admitted, a restriction of discovery to matters involving the 2021 Model Y is inappropriate and prejudicial to Plaintiff's rights to discover relevant information.<br><br>The burden of complying with these requests will be minimal. Tesla maintains sophisticated electronic databases and can easily perform searches for responsive customer complaints. For example, it has been publicly reported that Tesla assigns the internal code "27973" to customer reports of sudden unintended acceleration. Plaintiff believes that it assigns similar codes to reports concerning frontal crashworthiness and post-collision battery fires. Performing searches of its databases for customer complaints, related documentation, lawsuits, and deposition testimonies would be a trivial matter for Tesla. In addition, the documents sought are of central relevance to the case.<br><br>Plaintiff recognizes the need for restrictions on the scope of this request and therefore limited it to vehicles with the same or similar automated driving suite. To the extent that the Court believes this is too broad, Plaintiff proposes to narrow the request to reports arising since January 1, 2015. |
| 53 | For all customer comments, feedback, correspondence, complaints, and inquiries frontal collision crashworthiness in the TESLA MODEL Y or SIMILAR VEHICLES, produce the following: (a) all messages exchanged with the customer about the issue; (b) all messages sent within TESLA that discuss the issue; (c) all CAPTURES of internet forum posts that discuss the issue (Definition: The term "CAPTURES" refers to any way that the post was memorialized, including but not limited to screenshots, pdf printouts, saving the webpage and copy/paste of the text); (d) all tables, summaries, logs or other DOCUMENTS and ESI that reference the customer complaint specifically or the issue generally; and (e) all still photographs or videos that demonstrate the issue. | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla objects to this request on the grounds that it calls for the production of information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | Subject to and without waiving the foregoing objections, See Tesla's Supplemental Response to Request No. 52. | Tesla's privacy objection stated in its supplemental response is untimely.<br><br>Tesla purports to provide substantive information within its supplemental response only to evade the gravamen of Plaintiff's request. The curtailment in scope to "lawsuits prior to April 17, 2021 involving [. . .] a Tesla Model Y" is so narrow as to be meaningless.  The Model Y was only available for purchase by the public for a matter of months prior to the date of the subject incident and it is unlikely that any lawsuit concerning defects within it would have already been filed by the time Mr. Leach was killed. Moreover, Tesla has admitted that the Model Y at issue is structurally similar to other Tesla vehicles, including the  Tesla Model 3. Supp. Resp. to SPROG No. 8. Tesla has also claimed that the Model Y has not undergone design revisions since its introduction. Supp. Resp. to SPROG Nos. 11 and 12. Given the high degree of similarity across vehicle models and model years that Tesla has admitted, a restriction of discovery to matters involving the 2021 Model Y is inappropriate and prejudicial to Plaintiff's rights to discover relevant information.<br><br>The burden of complying with these requests will be minimal. Tesla maintains sophisticated electronic databases and can easily perform searches for responsive customer complaints. For example, it has been publicly reported that Tesla assigns the internal code "27973" to customer reports of sudden unintended acceleration. Plaintiff believes that it assigns similar codes to reports concerning frontal crashworthiness and post-collision battery fires. Performing searches of its |

| RFP No. | Plaintiff's Request | Tesla's Response | Tesla's Supp. Response | Reasons Further Response Should be Compelled |
|---|---|---|---|---|
| | | | | databases for customer complaints, related documentation, lawsuits, and deposition testimonies would be a trivial matter for Tesla. In addition, the documents sought are of central relevance to the case.

Plaintiff recognizes the need for restrictions on the scope of this request and therefore limited it to vehicles with the same or similar automated driving suite. To the extent that the Court believes this is too broad, Plaintiff proposes to narrow the request to reports arising since January 1, 2015. |
| 54 | Produce all Tesla corporate designee (Fed. R. Civ. P. 30(b)(6) and its state-law counterparts) depositions and expert depositions from other cases alleging a TESLA MODEL Y or SIMILAR VEHICLE sustained a post-collision battery fire. | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla objects to this request on the grounds that it calls for the production of information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | Subject to and without waiving the foregoing objections, Tesla responds: Tesla searched for and did not locate any corporate or expert depositions involving allegations of a post collision battery fire in a 2021 Tesla Model Y prior to April 17, 2021. If Plaintiff or Plaintiff's counsel are aware of or suspects that there is an incident responsive to this Request and should have been identified, Tesla requests counsel identify the matter(s) in order that Tesla may investigate further and further amend or supplement this response if necessary. | Tesla purports to provide substantive information within its supplemental response only to evade the gravamen of Plaintiff's request. The curtailment in scope to "lawsuits prior to April 17, 2021 involving [. . .] a Tesla Model Y" is so narrow as to be meaningless.  The Model Y was only available for purchase by the public for a matter of months prior to the date of the subject incident and it is unlikely that any lawsuit concerning defects within it would have already been filed by the time Mr. Leach was killed. Moreover, Tesla has admitted that the Model Y at issue is structurally similar to other Tesla vehicles, including the  Tesla Model 3. Supp. Resp. to SPROG No. 8. Tesla has also claimed that the Model Y has not undergone design revisions since its introduction. Supp. Resp. to SPROG Nos. 11 and 12. Given the high degree of similarity across vehicle models and model years that Tesla has admitted, a restriction of discovery to matters involving the 2021 Model Y is inappropriate and prejudicial to Plaintiff's rights to discover relevant information.

The burden of complying with these requests will be minimal. Tesla maintains sophisticated electronic databases and can easily perform searches for responsive depositions. In addition, the documents sought are of central relevance to the case.

Plaintiff recognizes the need for restrictions on the scope of this request and therefore limited it to vehicles with the same or similar automated driving suite. To the extent that the Court believes this is too broad, Plaintiff proposes to narrow the request to depositions taken since January 1, 2015. |
| 55 | Produce all customer comments, feedback, correspondence, complaints, and inquiries regarding post-collision battery fires in the TESLA MODEL Y or SIMILAR VEHICLES. | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla objects to this request on the grounds that it calls for the production of information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | Subject to and without waiving the foregoing objections, Tesla responds: Tesla searched for and did not locate any lawsuit complaints involving allegations of a post collision battery fire in a 2170C E3 battery pack in a 2021 Tesla Model Y prior to April 17, 2021. If Plaintiff or Plaintiff's counsel are aware of or suspects that there is an incident responsive to this Request and should have been identified, Tesla requests counsel identify the matter(s) in order that Tesla may investigate further and further amend or supplement this response if necessary.
Tesla otherwise objects to production of materials relating to customers who have not filed a lawsuit as such production may violate their right to privacy which they have not waived by not filing a lawsuit. | Tesla's privacy objection stated in its supplemental response is untimely.

Tesla purports to provide substantive information within its supplemental response only to evade the gravamen of Plaintiff's request. The curtailment in scope to "lawsuits prior to April 17, 2021 involving [. . .] a Tesla Model Y" is so narrow as to be meaningless.  The Model Y was only available for purchase by the public for a matter of months prior to the date of the subject incident and it is unlikely that any lawsuit concerning defects within it would have already been filed by the time Mr. Leach was killed. Moreover, Tesla has admitted that the Model Y at issue is structurally similar to other Tesla |

| RFP No. | Plaintiff's Request | Tesla's Response | Tesla's Supp. Response | Reasons Further Response Should be Compelled |
|---|---|---|---|---|
| | | | | vehicles, including the Tesla Model 3. Supp. Resp. to SPROG No. 8. Tesla has also claimed that the Model Y has not undergone design revisions since its introduction. Supp. Resp. to SPROG Nos. 11 and 12. Given the high degree of similarity across vehicle models and model years that Tesla has admitted, a restriction of discovery to matters involving the 2021 Model Y is inappropriate and prejudicial to Plaintiff's rights to discover relevant information.<br><br>The burden of complying with these requests will be minimal. Tesla maintains sophisticated electronic databases and can easily perform searches for responsive customer complaints. For example, it has been publicly reported that Tesla assigns the internal code "27973" to customer reports of sudden unintended acceleration. Plaintiff believes that it assigns similar codes to reports concerning frontal crashworthiness and post-collision battery fires. Performing searches of its databases for customer complaints, related documentation, lawsuits, and deposition testimonies would be a trivial matter for Tesla. In addition, the documents sought are of central relevance to the case.<br><br>Plaintiff recognizes the need for restrictions on the scope of this request and therefore limited it to vehicles with the same or similar automated driving suite. To the extent that the Court believes this is too broad, Plaintiff proposes to narrow the request to reports arising since January 1, 2015. |
| 56 | For all customer comments, feedback, correspondence, complaints, and inquiries regarding post-collision battery fires in the TESLA MODEL Y or SIMILAR VEHICLES, produce the following: (a) all messages exchanged with the customer about the issue; (b) all messages sent within TESLA that discuss the issue; (c) all CAPTURES of internet forum posts that discuss the issue (Definition: The term "CAPTURES" refers to any way that the post was memorialized, including but not limited to screenshots, pdf printouts, saving the webpage and copy/paste of the text); (d) all tables, summaries, logs or other DOCUMENTS and ESI that reference the customer complaint specifically or the issue generally; and (e) all still photographs or videos that demonstrate the issue. | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla objects to this request on the grounds that it calls for the production of information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | Subject to and without waiving the foregoing objections, See Tesla's Supplemental Response to Request No. 55. | Tesla's privacy objection stated in its supplemental response is untimely.<br><br>Tesla purports to provide substantive information within its supplemental response only to evade the gravamen of Plaintiff's request. The curtailment in scope to "lawsuits prior to April 17, 2021 involving [. . .] a Tesla Model Y" is so narrow as to be meaningless. The Model Y was only available for purchase by the public for a matter of months prior to the date of the subject incident and it is unlikely that any lawsuit concerning defects within it would have already been filed by the time Mr. Leach was killed. Moreover, Tesla has admitted that the Model Y at issue is structurally similar to other Tesla vehicles, including the Tesla Model 3. Supp. Resp. to SPROG No. 8. Tesla has also claimed that the Model Y has not undergone design revisions since its introduction. Supp. Resp. to SPROG Nos. 11 and 12. Given the high degree of similarity across vehicle models and model years that Tesla has admitted, a restriction of discovery to matters involving the 2021 Model Y is inappropriate and prejudicial to Plaintiff's rights to discover relevant information.<br><br>The burden of complying with these requests will be minimal. Tesla maintains sophisticated electronic databases and can easily perform searches for responsive customer complaints. For example, it has been publicly reported that Tesla assigns |

| RFP No. | Plaintiff's Request | Tesla's Response | Tesla's Supp. Response | Reasons Further Response Should be Compelled |
|---|---|---|---|---|
| | | | | the internal code "27973" to customer reports of sudden unintended acceleration. Plaintiff believes that it assigns similar codes to reports concerning frontal crashworthiness and post-collision battery fires. Performing searches of its databases for customer complaints, related documentation, lawsuits, and deposition testimonies would be a trivial matter for Tesla. In addition, the documents sought are of central relevance to the case.<br><br>Plaintiff recognizes the need for restrictions on the scope of this request and therefore limited it to vehicles with the same or similar automated driving suite. To the extent that the Court believes this is too broad, Plaintiff proposes to narrow the request to reports arising since January 1, 2015. |
| 57 | Produce all DOCUMENTS and ESI which relate to YOUR blog post titled "Model 3 achieves the lowest probability of injury of any vehicle ever tested by NHTSA," dated October 7, 20181, including but not limited to all crash tests and simulations. | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla objects to this request on the grounds that it calls for the production of information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | None provided. | Plaintiff contends that the limited scope of information and documents she seeks concerning Model 3 collision simulation is appropriate and proportional to the needs of this case. Plaintiff acknowledges the structural similarity of the Model 3 and Model Y in its supplemental response to SPROG No. 8. Here, Plaintiff merely seeks documentation related to Tesla's public claims about its vehicles' crashworthiness. Furthermore, the need for this discovery was magnified when Tesla removed the blog post at issue from its website in August 2024 after Plaintiff's counsel began asking questions about it in this litigation. |
| 58 | Produce all DOCUMENTS and ESI which relate to the simulation video served herewith as **Exhibit A,** including but not limited to all simulation software and files in their native format | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla objects to this request on the grounds that it calls for the production of information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | Subject to and without waiving the foregoing objections, Tesla responds: Exhibit A appears to be a computer simulation, released approximately in 2018, depicting and demonstrating the performance of a 2018 Tesla Model 3 in a frontal center pole crash. Tesla objects to discovery on a vehicle not at issue in this case. See Tesla's Supplemental Response to Request No. 21 for documents Tesla agreed to produce relating to testing of the 2021 Model Y. | Tesla's objection to relevance stated in its supplemental response is untimely.<br><br>Plaintiff contends that the limited scope of information and documents she seeks concerning Model 3 collision simulation is appropriate and proportional to the needs of this case. Tesla acknowledges the structural similarity of the Model 3 and Model Y in its supplemental response to SPROG No. 8. Here, Plaintiff merely seeks documentation related to Tesla's public claims about its vehicles' crashworthiness. Furthermore, the need for this discovery was magnified when Tesla removed the blog post at issue from its website in August 2024 after Plaintiff's counsel began asking questions about it in this litigation. |
| 59 | Produce all DOCUMENTS and ESI which relate to any simulation of a front pole impact in a TESLA MODEL Y which is similar to the simulation video served herewith as **Exhibit A,** including but not limited to all simulation software and files in their native format. | Tesla objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla objects to this request on the grounds that it calls for the production of information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla further objects to this Request to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such materials are not related to the claims asserted against Tesla in this litigation. | Subject to and without waiving the foregoing objections, see Tesla's Supplemental Response to Request No. 21. | Tesla's response is evasive because it does not state with clarity whether Tesla is complying the with the request. The five PowerPoint presentations were the only documents Tesla produced relating to collision simulations.<br><br>Plaintiff regards Tesla's computerized collision simulations to be of fundamental importance to this case, and further believes that Tesla's responses are incomplete and evasive. Tesla's has stated publicly that it performs many simulations of impacts that are different from those required by law and regulation. For example, Tesla claimed to perform "hundreds of simulations" prior to completing just one non-regulatory |

17

| RFP No. | Plaintiff's Request | Tesla's Response | Tesla's Supp. Response | Reasons Further Response Should be Compelled |
|---|---|---|---|---|
| | | | | frontal crash test. Of course, Tesla did not produce this crash test or the simulations files that preceded it. Neither did Tesla produce native software or files for any of the simulations referenced in the five PowerPoint presentations.<br><br>Plaintiff requests Tesla be compelled to provide all requested crash simulation files responsive to RPD No. 59, including simulation software and files in native format. |

| SRPOG No. | Plaintiff's Request | Tesla's Response | Tesla's Supp. Response | Reasons Further Response Should be Compelled |
|---|---|---|---|---|
| 1 | IDENTIFY all complaints, lawsuits, and not-in-suit matters regarding sudden unintended acceleration in TESLA MODEL Y vehicles and SIMILAR VEHICLES. | Tesla objects to this Interrogatory as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla additionally objects to the extent this interrogatory seeks information that intrudes upon the privacy of the vehicle's owners. Tesla further objects that lawsuits filed against Tesla are public records that Plaintiff may undertake to locate. | Subject to and without waiving the foregoing objections, Tesla responds: According to the Event Data Recorder (EDR) data retrieved from the 2021 Tesla Model Y (5YJYGDEE2MF089331) on November 6, 2024, the driver caused this collision by pushing the accelerator pedal to 100% for more than 2 seconds before the crash and was travelling at about 70 mph at the time of impact. There is no evidence supporting a claim or allegation that the vehicle experienced a sudden uncommanded acceleration or acceleration contrary to driver input. The NHTSA concluded its investigation into "Sudden Unintended Acceleration" (DP 20-001) by stating it "has not identified evidence that would support opening a defect investigation into SUA" and that "[i]n every instance in which event data was available for review by ODI, the evidence shows that SUA crashes…have been caused by pedal misapplication." Further, NHTSA found [t]here is no evidence of any fault in the accelerator pedal assemblies, motor control systems, or brake systems that has contributed to any of the cited incidents" and, likewise, "no evidence of a design factor contributing to increased likelihood of pedal misapplication."<br>Notwithstanding, in the spirit of cooperation and compliance, Tesla made a reasonable and diligent search for but did not locate any lawsuit complaints filed prior to April 17, 2021 alleging unintended acceleration in a Tesla Model Y. If Plaintiffs or Plaintiff's counsel are aware of or suspects that there is a lawsuit responsive to this Interrogatory and should have been identified, Tesla requests counsel identify the matter(s) in order that Tesla may investigate further and further amend or supplement this response if necessary.<br>Tesla otherwise objects to disclosing information relating to customers who have not filed a lawsuit as such production may violate their right to privacy which they have not waived by not filing a lawsuit. | Tesla's privacy objection stated in its supplemental response is untimely.<br><br>In addition, Plaintiff's experts will testify that the data recorded by the Subject Vehicle's Event Data Recorder is consistent with sudden unintended acceleration. Tesla may not unilaterally restrict the scope of discovery.<br><br>Tesla purports to provide substantive information within its supplemental response only to evade the gravamen of Plaintiff's request. The curtailment in scope to "lawsuits prior to April 17, 2021 involving [. . .] a Tesla Model Y" is so narrow as to be meaningless.  The Model Y was only available for purchase by the public for a matter of months prior to the date of the subject incident and it is unlikely that any lawsuit concerning defects within it would have already been filed by the time Mr. Leach was killed. Moreover, Tesla has admitted that the Model Y at issue is structurally similar to other Tesla vehicles, including the  Tesla Model 3. Supp. Resp. to SPROG No. 8. Tesla has also claimed that the Model Y has not undergone design revisions since its introduction. Supp. Resp. to SPROG Nos. 11 and 12. Given the high degree of similarity across vehicle models and model years that Tesla has admitted, a restriction of discovery to matters involving the 2021 Model Y is inappropriate and prejudicial to Plaintiff's rights to discover relevant information.<br><br>The burden of complying with these requests will be minimal. Tesla maintains sophisticated electronic databases and can easily perform searches for responsive customer complaints. For example, it has been publicly reported that Tesla assigns the internal code "27973" to customer reports of sudden unintended acceleration. Plaintiff believes that it assigns similar codes to reports concerning frontal crashworthiness and post-collision battery fires. Performing searches of its databases for customer complaints, related documentation, lawsuits, and deposition testimonies would be a trivial matter for Tesla. In addition, the documents sought are of central relevance to the case.<br><br>Plaintiff recognizes the need for restrictions on the scope of this request and therefore limited it to vehicles with the same or similar automated driving suite. To the extent that the Court believes this is too broad, Plaintiff proposes to narrow the request to lawsuits arising since January 1, 2015. |
| 2 | IDENTIFY all complaints, lawsuits, and not-in-suit matters regarding frontal collision crash worthiness in TESLA MODEL Y vehicles and SIMILAR VEHICLES. | Tesla objects to this Interrogatory as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla additionally objects to the extent this interrogatory seeks information that intrudes upon the privacy of the vehicle's owners. Tesla further objects that | Subject to and without waiving the foregoing objections, Tesla responds: Tesla made a reasonable and diligent search for but did not locate any lawsuit complaints filed prior to April 17, 2021 alleging frontal collision crash worthiness in a Tesla Model Y. If Plaintiffs or Plaintiff's counsel are aware of or suspects that there is a lawsuit responsive to this Interrogatory and should have been identified, Tesla requests counsel identify the | Tesla's privacy objection stated in its supplemental response is untimely.<br><br>Tesla purports to provide substantive information within its supplemental response only to evade the gravamen of Plaintiff's request. The curtailment in scope to "lawsuits prior |

| SRPOG No. | Plaintiff's Request | Tesla's Response | Tesla's Supp. Response | Reasons Further Response Should be Compelled |
|---|---|---|---|---|
| | | lawsuits filed against Tesla are public records that Plaintiff may undertake to locate. | matter(s) in order that Tesla may investigate further and further amend or supplement this response if necessary. Tesla otherwise objects to disclosing information relating to customers who have not filed a lawsuit as such production may violate their right to privacy which they have not waived by not filing a lawsuit. | to April 17, 2021 involving [. . .] a Tesla Model Y" is so narrow as to be meaningless. The Model Y was only available for purchase by the public for a matter of months prior to the date of the subject incident and it is unlikely that any lawsuit concerning defects within it would have already been filed by the time Mr. Leach was killed. Moreover, Tesla has admitted that the Model Y at issue is structurally similar to other Tesla vehicles, including the Tesla Model 3. Supp. Resp. to SPROG No. 8. Tesla has also claimed that the Model Y has not undergone design revisions since its introduction. Supp. Resp. to SPROG Nos. 11 and 12. Given the high degree of similarity across vehicle models and model years that Tesla has admitted, a restriction of discovery to matters involving the 2021 Model Y is inappropriate and prejudicial to Plaintiff's rights to discover relevant information.

The burden of complying with these requests will be minimal. Tesla maintains sophisticated electronic databases and can easily perform searches for responsive customer complaints. For example, it has been publicly reported that Tesla assigns the internal code "27973" to customer reports of sudden unintended acceleration. Plaintiff believes that it assigns similar codes to reports concerning frontal crashworthiness and post-collision battery fires. Performing searches of its databases for customer complaints, related documentation, lawsuits, and deposition testimonies would be a trivial matter for Tesla. In addition, the documents sought are of central relevance to the case.

Plaintiff recognizes the need for restrictions on the scope of this request and therefore limited it to vehicles with the same or similar automated driving suite. To the extent that the Court believes this is too broad, Plaintiff proposes to narrow the request to lawsuits arising since January 1, 2015. |
| 3 | IDENTIFY all complaints, lawsuits, and not-in-suit matters regarding post-collision battery fire in TESLA MODEL Y vehicles and SIMILAR VEHICLES. | Tesla objects to this Interrogatory as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and likely to return a disproportionate amount of irrelevant and duplicative material. Tesla additionally objects to the extent this interrogatory seeks information that intrudes upon the privacy of the vehicle's owners. Tesla further objects that lawsuits filed against Tesla are public records that Plaintiff may undertake to locate. | Subject to and without waiving the foregoing objections, Tesla responds: Tesla made a reasonable and diligent search for and did not locate any lawsuit complaints filed prior to April 17, 2021 alleging post-collision battery fire in a Tesla Model Y. If Plaintiffs or Plaintiff's counsel are aware of or suspects that there is a lawsuit responsive to this Interrogatory and should have been identified, Tesla requests counsel identify the matter(s) in order that Tesla may investigate further and further amend or supplement this response if necessary. Tesla otherwise objects to disclosing information relating to customers who have not filed a lawsuit as such production may violate their right to privacy which they have not waived by not filing a lawsuit. | Tesla's privacy objection stated in its supplemental response is untimely.

Tesla purports to provide substantive information within its supplemental response only to evade the gravamen of Plaintiff's request. The curtailment in scope to "lawsuits prior to April 17, 2021 involving [. . .] a Tesla Model Y" is so narrow as to be meaningless. The Model Y was only available for purchase by the public for a matter of months prior to the date of the subject incident and it is unlikely that any lawsuit concerning defects within it would have already been filed by the time Mr. Leach was killed. Moreover, Tesla has admitted that the Model Y at issue is structurally similar to other Tesla vehicles, including the Tesla Model 3. Supp. Resp. to SPROG No. 8. Tesla has also claimed that the Model Y has not undergone design revisions since its introduction. Supp. Resp. to SPROG Nos. 11 and 12. Given the high degree of similarity across vehicle models and model years that Tesla has admitted, a restriction of discovery to matters involving |

| SRPOG No. | Plaintiff's Request | Tesla's Response | Tesla's Supp. Response | Reasons Further Response Should be Compelled |
|---|---|---|---|---|
| | | | | the 2021 Model Y is inappropriate and prejudicial to Plaintiff's rights to discover relevant information.

The burden of complying with these requests will be minimal. Tesla maintains sophisticated electronic databases and can easily perform searches for responsive customer complaints. For example, it has been publicly reported that Tesla assigns the internal code "27973" to customer reports of sudden unintended acceleration. Plaintiff believes that it assigns similar codes to reports concerning frontal crashworthiness and post-collision battery fires. Performing searches of its databases for customer complaints, related documentation, lawsuits, and deposition testimonies would be a trivial matter for Tesla. In addition, the documents sought are of central relevance to the case.

Plaintiff recognizes the need for restrictions on the scope of this request and therefore limited it to vehicles with the same or similar automated driving suite. To the extent that the Court believes this is too broad, Plaintiff proposes to narrow the request to lawsuits arising since January 1, 2015. |
| 6 | DESCRIBE FULLY the creation of the simulation video served herewith as **EXHIBIT A**, including but not limited to the software used, the matter depicted, simulation parameters, and the purpose of the simulation. | Tesla objects to this Interrogatory as vague, overly broad, unduly burdensome, and seeks irrelevant information that is not proportional to the needs of the case. Tesla objects to this interrogatory on the grounds that it calls information protected from disclosure by the attorney-client privilege and/or attorney work product doctrine. Tesla further objects to this Interrogatory to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such information is not related to the claims asserted against Tesla in this litigation. | Subject to and without waiving the foregoing objections, Tesla responds: Exhibit A appears to be a computer simulation, released approximately in 2018, depicting and demonstrating the performance of a 2018 Tesla Model 3 in a center pole crash. Tesla objects to discovery relating to vehicles other than the 2021 Model Y at issue in this litigation because it is not relevant or reasonably calculated to lead to the discovery of admissible evidence. | Tesla's objection to relevance stated in its supplemental response is untimely.

Plaintiff contends that the limited scope of information and documents she seeks concerning Model 3 collision simulation is appropriate and proportional to the needs of this case. Tesla acknowledges the structural similarity of the Model 3 and Model Y in its supplemental response to SPROG No. 8. Here, Plaintiff merely seeks documentation related to Tesla's public claims about its vehicles' crashworthiness. Furthermore, the need for this discovery was magnified when Tesla removed the blog post at issue from its website in August 2024 after Plaintiff's counsel began asking questions about it in this litigation. |
| 10 | If TESLA created simulations of frontal pole collisions for TESLA MODEL Y vehicles similar to the video served herewith as **EXHIBIT A**, DESCRIBE FULLY the creation of such simulations, including but not limited to the software used, the matter depicted, simulation parameters, and the purpose of the simulation. | Tesla objects to this Interrogatory as vague, overly broad, unduly burdensome, and seeks irrelevant information that is not proportional to the needs of the case. Tesla further objects to this Interrogatory to the extent that the information sought constitutes a protected trade secret, proprietary, and/or commercially sensitive information, particularly to the extent such information is not related to the claims asserted against Tesla in this litigation. | Subject to and without waiving the foregoing objections, Tesla responds: Tesla will search for and produce front crash simulations related to the 2021 Tesla Model Y, subject to the Protective Order entered in this case. | Tesla's response is evasive because the only documents it produced that include any information about simulations – the five PowerPoint presentations – do not including the information Plaintiff seeks concerning the simulations. |

21