**NELSON MULLINS RILEY & SCARBOROUGH LLP**
Sandra G. Ezell (SBN: 325046)
Eden M. Darrell (SBN: 295659)
901 East Byrd Street, Suite 1650
Richmond, VA 23219
Telephone:   804.533.2900
Sandra.ezell@nelsonmullins.com
Eden.darrell@nelsonmullins.com

Trevor Zeiler (SBN: 325543)
19191 South Vermont Ave., Suite 900
Torrance, CA 90502
Telephone:   424.221.7400
trevor.zeiler@nelsonmullins.com

Dennis Hom (Pro Hac Vice)
201 17th Street NW, Suite 1700
Atlanta, GA 30363
Telephone:   404.322.6000
dennis.hom@nelsonmullins.com

Attorneys for Defendant
TESLA, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DONNA LEACH, individually and on behalf of the Estate of Clyde Leach,<br><br>            Plaintiff,<br><br>   vs.<br><br>TESLA, INC. and DOES 1 through 100, inclusive,<br><br>            Defendants. | Case No.  3:23-cv-03378-SI<br>(Removed from Santa Clara County Superior Court – Case No. 23CV414572)<br><br>District Judge: Susan Illston<br><br>**TESLA'S BRIEF REGARDING DECEMBER 18, 2024, DISCOVERY DISPUTE**<br><br>Complaint Filed: April 11, 2023<br>Trial Date:         July 21, 2025 |

Pursuant to the Court's December 23, 2024, Order requiring additional briefing addressing the parties' December 18, 2024, discovery dispute, Defendant Tesla respectfully submits this additional brief.

### I.   INTRODUCTION

Plaintiff's discovery at issue is so broad and vague, it seeks virtually every document created related to Tesla Model Y and Model 3 vehicles. Plaintiff's approach—for example in requesting vague swaths of "design" documents—is reflective of her failure to identify a specific defect that caused the

1 decedent's accident or death. Nonetheless, Tesla has produced extensive documents in response to Plaintiff's requests. And despite multiple meet and confers, Plaintiff has failed to narrow the scope of her requested discovery, or identify what more she is looking for with enough specificity to enable Tesla to respond. Even now, faced with proving her burden to demonstrate relevant and proportional discovery, Plaintiff merely offers conditional proposals and limitations as to time and scope.

"No longer is it good enough to hope that the information sought might lead to the discovery of admissible evidence. In fact, the old language to that effect is gone. Instead, a party seeking discovery of relevant, non-privileged information must show, before anything else, that the discovery sought is proportional to the needs of the case." *Gilead Scis., Inc. v. Merck & Co, Inc.*, No. 5:13-CV-04057-BLF, 2016 WL 146574, at *1 (N.D. Cal. Jan. 13, 2016). Plaintiff fails to do so. Thus, her motion to compel should be denied. As Tesla has told Plaintiff on multiple occasions, Tesla will continue work with Plaintiff to produce relevant documents that are proportional to the needs of the case.

## II.   LEGAL STANDARD

Under Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Discovery must be limited that is unreasonably cumulative or duplicative, that the party seeking discovery has had ample opportunity to obtain, or that is outside the scope of permissible discovery described in Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2). A party may serve requests for documents on any other party so long as the request is within the scope of permissible discovery as defined in Rule 26(b)(1). Fed. R. Civ. P. 34(a). The requests "must describe with reasonable particularity each item or category of items" to be produced. Fed. R. Civ. P. 34(b)(1)(A).

"When moving to compel discovery, the moving party has the burden of demonstrating relevance. Within the framework of the narrowed scope of discovery that is currently applicable in this

case, it should be noted that '[w]hile it is true that the standard for relevance is not very demanding (*see* Fed. R. Evid. 401 – evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action), the rule still requires that any evidence that is to be offered must logically advance a material aspect of the party's case.'" *Hegarty v. Transamerica Life Ins. Co*., No. 19-CV-06006-MMC (RMI), 2021 WL 4899482, at *2 (N.D. Cal. Oct. 21, 2021) (citations omitted).

"Additionally, in order to succeed on a motion to compel, a moving party bears the burden of not only demonstrating the above-described entitlement to the requested discovery, but also that it has satisfied proportionality and other requirements of Rule 26. In light of this, courts are required to limit discovery if its burden or expense outweighs its likely benefit; this is 'the essence of proportionality,' a frequently ignored or overlooked discovery principle." *Id*. (citing *Rodriguez v. Barrita, Inc.*, No. 09-04057 RS-PSG, 2011 WL 5854397 at *2 (N.D. Cal. Nov. 21, 2011); *In re Glumetza Antitrust Litig.*, No. 19-cv-05822-WHA (RMI), 2020 WL 3498067 at *7 (N.D. Cal. June 29, 2020).

### III.  ARGUMENT

#### A. Tesla already produced extensive responsive documents to Plaintiff.

Plaintiff's carefully worded description of the materials already produced by Tesla fails to disclose that Tesla produced almost 2,000 pages of documents regarding crash test reports, collision performance, computer-aided engineering, NHTSA documentation, documentation regarding the battery, restraint system, and drawings regarding seats, seat belts, vehicle structure, and battery. These documents were produced in response to RFPs 2, 3, 11-14, 20-26, 28-29, 31-33, 37-41, 58, and 59.[1]

Furthermore, Telsa will produce documents regarding battery-related testing in response to Plaintiff's multiple requests related to post-collision battery fires, RFPs 42-45, as well as design drawings for the front subframe assembly.[2] Aside from those documents, and aside from any

---

[1] Tesla notes that Plaintiff's Exhibit A rehashes the arguments in Plaintiff's brief. As a result, Tesla added a short reply column to the attached Exhibit A, and maintains its arguments and objections as set forth more fully herein.

[2] Near the outset of this case, Tesla also produced various plaintiff- and vehicle-specific documents, including the owner's manual, firmware information, customer account information, log data for

narrower, more reasonable requests that may follow this briefing, Tesla's document production in response to RPD2 is complete.

On December 6, Tesla further proposed providing witness(es) on the 30(b)(6) deposition topics that Plaintiff claimed were a priority. Those topics include (1) a witness to testify generally on the topic of crash testing and related evaluation of performance of front structures in crash testing with respect to the Tesla Model Y, (2) a witness to testify generally on the topic of the Pedal Misapplication Mitigation (PMM), Obstacle Aware Acceleration (OAA), and Automatic Emergency Braking (AEB) features, and (3) a witness to testify generally concerning: (a) the types of data that are typically transmitted over the air in commercially available Tesla Model Y vehicles, (b) data available with for the subject Model Y, and (c) the reasons why certain data may not have been available here.

### B. Plaintiff refused to define requests with reasonable particularity or limited scope.

Only now, after multiple conferrals and Plaintiff's December 18 discovery dispute brief, does Plaintiff make a cursory attempt to narrow her sweeping fishing expedition requesting virtually every document pertaining to every year of the Model Y and "similar vehicles." However, Plaintiff's requests still suffer from the fundamental problem of lacking reasonable particularity. For example, Plaintiff still seeks every document ever related to any sort of complaint or feedback regarding unintended acceleration, frontal collision crashworthiness, and post-collision battery fire for every Tesla vehicle for all time. (Doc. 59 at 5-7.) Similarly, Plaintiff insists Tesla produce every document or communication related to the design or assembly of the front of the Model Y for all time. (*Id*. at 12-13.)

Regarding the scope of the requests, even now, Plaintiff only offers conditional limitations, and only if the Court determines Plaintiff's requests are overbroad. (*Id*. at 8 ("Again, should the Court feel the temporal scope should be limited, Plaintiff proposes that Tesla produce all documents … since January 1, 2015.")) Plaintiff wholly fails to address proportionality.

These issues are precisely why, during the meet and confers, that Tesla requested Plaintiff

the Subject Vehicle, and other similar documents.

identify her theory of defect with some remote degree of specificity. When Plaintiff refused, Tesla proposed that the 30(b)(6) deposition be completed to assist in narrowing the discovery sought. Again, Plaintiff refused. Indeed, Plaintiff refused to narrow the scope of any discovery request and insisted on filing a discovery brief, initially demanding Tesla provide its portion of the brief within two business days. But it was not until *after* filing the brief on December 18 that Plaintiff finally confirmed the three topics proposed by Tesla were agreeable, and for the first time proposed two additional priority topics: processes for consumer complaints and reports about unintended/un-commanded acceleration, and processes for consumer complaints and reports about frontal collisions resulting in battery-involved fires. Plaintiff's patently overbroad approach to discovery has thus far made it difficult, if not impossible, to determine what Plaintiff's claims are, what she is actually requesting related to those claims, and to respond to Plaintiff's requests because they are not stated with reasonable particularity and make no consideration as to proportionality.

### C.  Categories of Documents Requested

#### 1.  **Dissimilar incidents.**

Plaintiff seeks every "customer comment[], feedback, correspondence, complaint[], and inquir[y]" regarding unintended acceleration, frontal collision crashworthiness, and post-collision battery fires, as well as all other documents related to those complaints, for the Model Y and "structurally similar [] other Tesla vehicles, including the Tesla Model 3," for all time. (Doc. 59 at 5-6. Plaintiff's "compromise," but only if the Court does not compel production in full, is to limit her requests to a ten-year time period.

As a critical, initial matter, there is absolutely no evidence to support Plaintiff's allegation that the Subject Vehicle "suddenly accelerated without driver input." (*Id*. at 3.) To the contrary, as explained in Tesla's Supplemental Responses:

> According to the Event Data Recorder (EDR) data retrieved from the 2021 Tesla Model Y (5YJYGDEE2MF089331) on November 6, 2024, the driver caused this collision by pushing the accelerator pedal to 100% for more than 2 seconds before the crash and was travelling at about 70 mph at the time of impact. There is no evidence supporting a claim or allegation that the vehicle experienced a sudden uncommanded acceleration or acceleration contrary to driver input. The NHTSA concluded its investigation into "Sudden Unintended Acceleration" (DP 20-001) by stating it "has not identified evidence that would support opening a defect investigation into SUA" and that "[i]n

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AT LAW
LOS ANGELES

every instance in which event data was available for review by ODI, the evidence shows that SUA crashes…have been caused by pedal misapplication." Further, NHTSA found [t]here is no evidence of any fault in the accelerator pedal assemblies, motor control systems, or brake systems that has contributed to any of the cited incidents" and, likewise, "no evidence of a design factor contributing to increased likelihood of pedal misapplication."

Thus, in no circumstance can Plaintiff prove by a preponderance of the evidence that this case involves unintended acceleration without driver input as opposed to other causes. What appears most likely in this case, as supported by the EDR data and medical records, is that a medical event caused the driver to press the accelerator to 100% for over 2 seconds, drive off the roadway, and crash into a gas station. It has long been recognized that discovery is not relevant to a pending action if the "inquiry is only based on the requesting party's mere suspicion or speculation." *Micro Motion, Inc. v. Kane Steel Co., Inc*., 894 F.2d 1318, 1326 (Fed. Cir. 1990); (*citing Mahoney v. United States*, 233 Ct. Cl. 713, 717-19 (1980)).

Regarding Plaintiff's requests for every other incident for all time involving "frontal collision crashworthiness" or a "post-collision battery fire," Plaintiff's request is neither stated with reasonable particularity nor proportional to the needs of the case. Moreover, it is an invasion of the privacy of non-party Tesla customers. Plaintiff's request seeks information regarding all frontal collisions, regardless of vehicle, direction, speed, location, cause, or various other specific factual circumstances. Similarly, any post-collision battery fire is subject to a multitude of factual circumstances and causes. Even pre-proportionality, courts denied much narrower requests for other incidents. *See e.g*, *Doubt v. NCR Corp*., No. C 09-5917 SBA, 2011 WL 3740853, at *4 (N.D. Cal. Aug. 25, 2011) (denying, among others, a request for all documents regarding the amount of overtime being worked by engineers in 2008, because, "[w]hile Plaintiff's requests are limited in scope as to time, i.e., documents created in 2007 and 2008, they are not limited in scope as to sender or recipient or specific subject matters. As a result, Defendant would be required to search for almost all administrative documents concerning [] engineers to and from all employees throughout Defendant's company about the general topics detailed in the requests.").

Plaintiff makes no effort to explain how her overbroad requests seek relevant information, or how any potential production of such irrelevant information, particularly considering the invasion

of privacy upon other Tesla customers, is proportional to the needs of this case. Plaintiff's only argument that could be considered addressing proportionality is a conclusory and incorrect assertion that the use of various internal codes for customer reports makes production a "trivial matter." Plaintiff's reference to an unspecified and unsourced "report" regarding Tesla's supposed internal "codes" is without any factual basis and is plainly mistaken, misinformed and wrong. Tesla does not have a "code" applied to any/all Model Y (or Model 3) claims of unintended acceleration. As such, searching for such records would require a tremendous investment of time and resources—no "trivial matter." Not only is Plaintiff's assertion incorrect, it has no legal bearing on the relevance of the requested information. Plaintiff's request is not limited to a single code of customer reports in a database, but all documents, messages, correspondence, and internet forum posts in existence, and all other information flowing from any such customer report, or other customer comment, feedback, correspondence, or inquiry.

Moreover, "[a] showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect." *Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1105 (9th Cir. 1991). Plaintiff has the burden of proving substantial similarity. *Pau v. Yosemite Park & Curry Co.*, 928 F.2d 880, 889 (9th Cir. 1991). Courts exclude dissimilar evidence because of the potential for "substantial prejudice" created by such evidence, *Tran v. Toyota Motor Corp.*, 420 F.3d 1310, 1316 (11th Cir. 2005), and the likelihood the "jury could easily be confused or misled into imposing liability on the mere basis of what *could* have happened rather than what *did* happen." *Bauerlein v. Equity Residential Properties Mgmt. Corp.*, No. CIV 04-1904 PHX-SMM, 2007 WL 1546101, at *1 (D. Ariz. May 24, 2007).

To carry her burden, Plaintiff must establish concrete and detailed facts to prove substantial similarity; mere allegations of similarity are insufficient to prove substantial similarity. *See, e.g.*, *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1269 (7th Cir. 1988) ("[T]oo few *established facts* about the [prior] accident" to make comparison) (emphasis original); *Ponder v. Warren Tool Corp.*, 834 F.2d 1553, 1560 (10th Cir. 1987) (mere "superficial factual similarity between the two accidents" insufficient). Nor can Plaintiff "improperly shift the burden to the Court" to review

1 cursory evidence to find "any support for Plaintiff's claim of substantial similarity." *Steede v. Gen. Motors, LLC*, No. 11-2351-STA-DKV, 2013 WL 142484, at *9 (W.D. Tenn. Jan. 11, 2013).

Regarding incidents based on the Model 3, Plaintiff incorrectly claims "Tesla acknowledges the structural similarity of the Model 3 and Model Y in its supplemental response to SPROG No. 8." (Doc. 59 at 6.) To the contrary, Tesla explained in its interrogatory response that "[w]hile the Model 3 and Model Y share certain structural componentry, they are distinct vehicles with distinct crash performance and each is independently required to satisfy the requirements of the Federal Motor Vehicle Safety Standards." Plaintiff cannot misstate the facts to obtain irrelevant and disproportionate discovery regarding other vehicles not at issue in this lawsuit.

Finally, Plaintiff's demand for documents regarding foreign regulatory entities is irrelevant, overbroad, and disproportionate, particularly since Tesla has produced pertinent NHTSA documentation. *In re Bard IVC Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 566 (D. Ariz. 2016) ("[T]he discovery sought by Plaintiffs is only marginally relevant. With no foreign-based Plaintiffs, and mere conjecture that communications between foreign entities and foreign regulators might be inconsistent with Defendants' communications with American regulators, the discovery appears to be only potentially relevant—more hope than likelihood.").

### 2. **Testing Documents**

Plaintiff requests, among other collision testing, "all studies, reports, analyses, and/or testing results regarding FRONT CRASH STRUCTURES of TESLA MODEL Y vehicles." (RPD No. 28). Plaintiff defined FRONT CRASH STRUCTURES as "all components, structures, and/or systems that, as any part of their function, mitigate or absorb crash forces in frontal collisions, including but not limited to the vehicle frame, sub-frame, crumple zones, bumpers, beams, members, safety cages, powertrain, suspension, and/or other components which absorb or mitigate impact energy." In other words, contrary to Plaintiff's characterization of these requests as "collision testing" or "crash test documents," the plain language of Plaintiff's requests and definition cover ***all testing*** related to virtually the entire vehicle, for every Model Y year in existence. Even if Plaintiff limited her requests to collision testing, they would remain overbroad given the scope of Plaintiff's definition of "front crash structures."

Despite Tesla raising the issue multiple times during conferrals, Plaintiff has yet to identify what specific defect they're alleging in the front crash structures that made the Subject Vehicle lack crashworthiness. The Subject Vehicle has been in Plaintiff's possession since before this lawsuit was filed, and has also been jointly inspected by the parties. At this stage of the litigation, Plaintiff should be required to identify a theory of product defect narrower than the entire vehicle. *Higginbottom v. Dexcom, Inc.*, No. 24-CV-0195-WQH-BLM, 2024 WL 3823023, at *15 (S.D. Cal. Aug. 13, 2024), *motion to certify appeal denied*, 2024 WL 4547017 (S.D. Cal. Oct. 22, 2024) (granting motion to dismiss because "[i]n reviewing the allegations in the [amended complaint], Plaintiff fails to allege nonconclusory allegations identifying *what aspect* of the insulin pump's design made it defective or how any such defect resulted from Tandem's negligence.") (emphasis added); *Conley v. R.J. Reynolds Tobacco Co.*, 286 F. Supp. 2d 1097, 1109 (N.D. Cal. 2002) ("Plaintiffs, therefore, must put forward sufficient evidence to make out a prima facie case that some design feature of the decedent's cigarettes proximately caused her death. Plaintiffs, however, have identified no such allegedly defective design feature, and the Court discerns no evidence in the record that gives rise to an inference that *a specific design feature* of the cigarettes at issue proximately caused the decedent's death.") (emphasis added).

Even if Plaintiff narrowed her theory of design defect, her discovery requests, as phrased and defined to seek virtually every document related to the entire vehicle for every model year, remain overbroad and disproportionate. *Life Alert Emergency Response, Inc. v. Connect America.com LLC*, No. CV 13-3455 JAK (SS), 2015 WL 12765465, at *7 (C.D. Cal. Jan. 23, 2015) ("Sweeping requests for 'all documents' that may encompass swaths of both relevant and irrelevant documents do not satisfy Rule 34's 'reasonable particularity' standard."). *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649–50 (10th Cir. 2008) ("[W]e agree with the district court that Document Request 6, seeking from Walgreen 'all documents ... that refer to, mention or relate in any way to Plaintiff, Whitlock, or the litigation or the allegations, facts and circumstances concerning the litigation,' is overly broad. Under our rules, parties to civil litigation are given broad discovery privileges. But with those privileges come certain modest obligations, one of which is the duty to state discovery requests with 'reasonable particularity.' All-encompassing demands of this kind take

little account of that responsibility.") (citations omitted).

### 3. Collision Simulation Documents

Plaintiff requested simulations regarding "frontal collisions" with "narrow rigid objects" and "front pole impact." In response, Tesla produced frontal crash test reports and video clips related to the 2021 Tesla Model Y which are reviewable by Plaintiff. Tesla also produced multiple PowerPoint files which further depict simulation information. Plaintiff's argument demanding additional documents only highlights the lack of reasonable particularity in her requests. Plaintiff cites a YouTube video, complaining that "Tesla did not produce this crash test or the simulation files that preceded it." (Doc. 59 at 10.) But that video depicts a side impact test where a pickup truck perpendicularly collides with the front driver side of a stationary Model Y the purpose of which was to demonstrate how real-world crash data was improving airbag deployment logic; it had nothing to do with crashworthiness, battery pack integrity or uncommanded acceleration. Plaintiff's reliance on a video that is nothing like the Model Y colliding head on into a stationary object like the Subject Vehicle, or responsive to the plain reading of Plaintiff's own requests, is misplaced.

Moreover, Plaintiff provides no legal basis that requires a company to provide a plaintiff *with software*. A party need not undertake extraordinary effort or burden to aid their opponent in analyzing or processing material, particularly where doing so would disclose confidential information. For example, in *Jones v. Goord*, No. 95-cv-8026, 2002 WL 1007614 (S.D.N.Y. May 16, 2022), the requesting party sought access to a prison administration's interactive, manipulable databases, arguing it was essential to statistical analysis for the prosecution of their case. The court denied the request, recognizing that access would expose confidential and sensitive information not within the scope of the litigation and would impose an undue security risk by disclosing the underlying code and programming techniques. Moreover, like here, there were only speculative benefits. *See also*, *Pertile v. Gen. Motors, LLC*, No. 1:15-cv-518, 2016 WL 1059450, at *1–2 (D.Colo. Mar. 17, 2016) (denying access to an automotive manufacturer's computer modeling technology due to the substantial burden that disclosure of the proprietary technology would impose despite the plaintiffs' purported "need" to have their experts use the technology to run simulations).

Regarding discovery related to the Model 3, Plaintiff again incorrectly claims "Tesla

acknowledges the structural similarity of the Model 3 and Model Y in its supplemental response to SPROG No. 8." (Doc. 59 at 11.) To the contrary, Tesla explained in its interrogatory response that "[w]hile the Model 3 and Model Y share certain structural componentry, they are distinct vehicles with distinct crash performance and each is independently required to satisfy the requirements of the Federal Motor Vehicle Safety Standards." Plaintiff cannot misstate the facts to obtain irrelevant and disproportionate discovery regarding other vehicles not at issue in this lawsuit.

### 4. **FMEA and DFMEA**

Again, Plaintiff mischaracterizes the scope of her requests. Although Plaintiff claims these requests sought FMEA and DFMEA documents, the requests demanded Tesla "[p]roduce all DOCUMENTS and ESI that comprise, discuss, refer, relate, or pertain to *engineering analyses*" regarding sudden unintended acceleration, the Model Y restraint system, frontal collisions, the battery pack, and post-collision battery fires, "*including but not limited to*" FMEA and DFMEA. It is not until the eleventh hour that Plaintiff appears to limit the scope of her overbroad and disproportionate request.

Finally, as discussed above, any analyses concerning sudden unintended acceleration should not be at issue in this case.

### 5. **Design Documents**

Tesla produced documents reflecting the design of the front structures of the 2021 Model Y as well as design documents for the battery pack in the 2021 Model Y. Beyond that, Plaintiff's requests are so overbroad as to be meaningless, demanding, among other things, that Tesla "[p]roduce all DOCUMENTS and ESI relating to the design of FRONT CRASH STRUCTURES in TESLA MODEL Y vehicles," (RPD 25), and "all DOCUMENTS and ESI that comprise, discuss, refer, relate, or pertain to YOUR internal communications regarding FRONT CRASH STRUCTURES of TESLA MODEL Y vehicles." (RPD 27.) Similarly, Plaintiff demands "all DOCUMENTS and ESI describing or depicting the manufacture, assembly, or construction of FRONT CRASH STRUCTURES of TESLA MODEL Y vehicles," (RPD 29), and "all DOCUMENTS and ESI that discuss, refer, relate, or pertain to any differences between the FRONT CRASH STRUCTURES of TESLA MODEL Y and TESLA Model 3 vehicles." (RPD 30.)

Plaintiff provides two justifications for these sweeping requests. First, Plaintiff wants to understand how the Model Y differs from the Model 3. However, the Model 3 has no bearing on whether the Model Y was defective because the Model Y is independently required to satisfy the requirements of the Federal Motor Vehicle Safety Standards. Second, Plaintiff provides a conclusory assertion that Tesla has not identified why these requests "subject it to undue burden." (Doc. 59 at 13.) But these requests are facially overbroad, and undue burden is but one of Tesla's objections. Plaintiff fails to explain how these requests, which demand every document and communication for all time pertaining to the design, manufacture, assembly, or construction of the Model Y and Model 3, are stated with reasonable particularity. *Thomas v. Saafir*, No. C 06-0184-MMC (PR), 2007 WL 1063474, at *2 (N.D. Cal. Apr. 9, 2007) ("In Request No. 1 to Ponder, plaintiff requested 'each and every document that supports' defendants' defenses to this action. Defendants objected on the grounds such request is too vague. A request for production of documents under Rule 34 must be made with 'reasonable particularity.' Plaintiff's request does not contain any particulars and, consequently, does not satisfy Rule 34(b).").

Plaintiff also fails to address how these requests seek relevant information proportional to the needs of the case because she cannot. Plaintiff's refusal to specify a theory of product defect combined with the breadth of these requests make it currently impossible to determine any meaningful scope of discovery in this case.

### 6. **Items Produced Or Confirmed to Not Exist**

Regarding Requests for Production Nos. 2 and 3, Tesla originally believed that there may have been additional diagnostic log data beyond what was previously produced. However, after a reasonable and diligent search, Tesla confirmed that all log data for the Subject Vehicle has already been produced to Plaintiff.

Regarding Request for Production No. 7, as stated, Tesla will search for and produce, if any, documents relating to conditions under which diagnostic log data, event data recorder (EDR) and camera clips are transmitted from the Model Y over-the-air to Tesla. Furthermore, Tesla is producing a 30(b)(6) witness to better address this discovery request.

Regarding Requests for Production Nos. 42-45, Tesla will produce responsive documents

consistent with its supplemental discovery responses.

## IV. CONCLUSION

Tesla respectfully requests that the Court deny Plaintiff's requested discovery.

Dated: January 7, 2025

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

BY: */s/ Trevor C. Zeiler*
Sandra G. Ezell
Eden M. Darrell
Trevor C. Zeiler
Dennis Hom (Pro Hac Vice)
Attorneys for Defendant
TESLA, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on January 7, 2025, I filed the foregoing document entitled **TESLA'S BRIEF REGARDING DECEMBER 18, 2024, DISCOVERY DISPUTE** with the clerk of court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in this action.

 */s/ Trevor C. Zeiler*
Trevor C. Zeiler