**NELSON MULLINS RILEY & SCARBOROUGH LLP**
Sandra G. Ezell (SBN: 325046)
sandra.ezell@nelsonmullins.com
Eden M. Darrell (SBN: 295659)
eden.darrell@nelsonmullins.com
1021 E. Cary Street, Suite 2120
Richmond, VA 23219
Telephone:    804.533.2900
Facsimile:    804.616.4129

Trevor C. Zeiler (SBN: 325543)
trevor.zeiler@nelsonmullins.com
19191 South Vermont Avenue, Suite 900
Torrance, CA 90502
Telephone:    424.221.7400
Facsimile:    424.221.7499

Dennis A. Hom (Pro Hac Vice)
dennis.hom@nelsonmullins.com
201 17th Street NW, Suite 1700
Atlanta, GA 30363
Telephone:    404.322.6000
Facsimile:    404.322.6381

**DYKEMA GOSSETT LLP**
James M. Golden (SBN: 281791)
jgolden@dykema.com
444 South Flower Street, Suite 2200
Los Angeles, California 90071
Telephone:    (213) 457-1800
Facsimile:    (213) 457-1850

Attorneys for Defendant,
TESLA, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DONNA LEACH, individually and on behalf of the Estate of Clyde Leach,<br><br>        Plaintiff,<br><br>    v.<br><br>TESLA, INC. and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No.  3:23-cv-03378-SI<br>(Removed from Santa Clara County Superior Court – Case No. 23CV414572)<br><br>District Judge: Susan Illston<br>Magistrate Judge: Sallie Kim<br><br>**DEFENDANT TESLA, INC.'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE**<br><br>Action Filed: April 11, 2023<br>Trial Date:   July 21, 2025 |

Pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72(a), and Local Rule 72-2, Defendant Tesla, Inc. objects Magistrate Judge Kim's February 20, 2025 Order Regarding Discovery Letter Briefs ("Order") (ECF 69).

**Portions of Order to which objection made:** Tesla objects to:

- The portion of the Order compelling Tesla to produce additional documents and to provide a privilege log in response to Plaintiff's Request for Production ("RFP") Nos. 13 and 14. (ECF 69 at 1:26-28.)
- The portion of the Order compelling Tesla to produce native simulation files and software in response to RFP Nos. 21, 22, 23, and 59. (*Id.* at 2:13-28, 4:27-5:2.)
- The portion of the Order compelling Tesla to produce additional documents and to provide a privilege log in response to RFP No. 27. (*Id.* at 3:13-19.)
- The portion of the Order compelling Tesla to produce additional documents and to provide a privilege log in response to RFP No. 34. (*Id.* at 4:2-5.)

**Statement of Court action requested:** Tesla requests that the Court sustain all of the above objections, and that it enter a new order denying Plaintiff's motion to compel a further production and privilege log in response to RFP Nos. 13, 14, 27, and 34, and modifying the Order on RFP Nos. 21, 22, 23, and 59 to provide that Tesla need not produce any native simulation files or software. In the alternative, Tesla requests that the Court appoint a discovery referee to further analyze these issues, to issue a recommendation and report on them, and to ensure the parties have a full and fair opportunity to be heard.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The "parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Adv. Com. Notes to 2015 Am. to Fed. R. Civ. P. 26. Unfortunately, the Order does not adhere to this principle because compliance would require Tesla to search for and produce a vast amount of additional documents and data at tremendous burden and expense, and for discovery requests Plaintiff did not show were proportional to the needs of this case.

This case arises out of fatal collision that occurred on April 17, 2021, in Ohio. That night, Clyde Leach was driving his 2021 Tesla Model Y when, as shown in surveillance video footage, the Model Y came to a complete stop at a red light, and then slowly proceeded through an intersection. Then, as seen in the video and documented in the vehicle's data, Mr. Leach pressed the accelerator pedal to 100% and the vehicle accelerated up to 70 miles an hour, jumped a curb, crashed into a pillar at a Speedway gas station, and caught on fire. (Hong Decl. ¶ 11) Tragically, Mr. Leach passed away due to blunt force trauma.

Tesla has already produced substantial data and documents in discovery, and offered two corporate representatives to testify on several different topics. Tesla's document production includes more than 3,000 pages and native files for documents relating to investigation DP 20-001 performed by the National Highway Transportation Safety Administration ("NHTSA") into alleged "sudden unintended acceleration" by Tesla vehicles (an investigation that concluded with finding no defect); 3,600 pages/native files of design and testing documents for the 2021 Model Y—which includes design drawings, crash simulation testing, Euro NCAP frontal impact testing, frontal crash test reports, angular frontal crash testing, pole testing, IIHS Safety Crashworthiness Evaluations, native photographs from pole testing, FMVSS test reports for requested crashworthiness testing, among other things; 9000 pages/native files relating to battery design and testing documents, including documents reflecting analysis of resistance to thermal runaway and propagation related to the battery pack in the 2021 Model Y, documents relating to battery testing (including battery pack sled testing, pack drop, and other abuse type testing), and DFMEA documents related to the Model Y battery; and available data from the decedent's 2021 Tesla Model Y, among other things. Prior to the Magistrate's Order, and based on Plaintiff's particular requests during meet and confer discussions, Tesla also agreed to produce, its internal toolbox documents involving alleged uncommanded or unintended acceleration for incidents occurring on or before April 17, 2021, the frontal crash design documents for the first version of the Model Y that was manufactured using Gigacasting, design drawings for 13 different components on the 2021 Model Y, and legal complaints and prelitigation demand letters involving claims of frontal collision with a narrow rigid object between the main crash rails and post-collision battery fires for 2020-2025 Tesla Model Y vehicles, among other

things. Further, even though Tesla maintains that Plaintiff is not entitled to additional discovery, Tesla will comply with the Magistrate's Order—as Tesla understands it—on RFP Nos. 15, 16, 25, 26, 28, 42, 43, 44, 45, 46, 49, 50, 52, 53, 55, 56, and produce documents in response thereto.

Plaintiff has failed to explain why she needs anything more, or why anything else is proportional to the needs of the case. Plaintiff has also largely failed to state with any level of particularity, much less a reasonable one, what more she is looking for. And even where she provided some examples, she refused to limit her requests to those examples—or any other particular documents—in a clear effort to later play "gotcha" later by arguing Tesla failed to produce documents Plaintiff subjectively determines fell within her incredibly broad and vague requests. Nevertheless, Magistrate Judge Kim issued the order without giving Tesla an opportunity to further brief the issues or present oral argument. Had Tesla been given that opportunity, it would have supplied the information in the accompanying Declaration of Soo Hong, which details how compliance with the Order would require Tesla to spent thousands of hours to search for documents and ESI from scores of different custodians at a cost of at least hundreds of thousands if not millions of dollars.[1] Among other things, Tesla would have to:

- Search for and produce documents and communications related to "any investigations or evaluations" by any and all government entities (local, state, regional, or national) across the world "regarding any unintended sudden acceleration" (Hong Decl. ¶¶ 4-7);

- Produce native software files and data that would allow a competitor to replicate the Model Y and all of its components (*id.* ¶ 9);

- Search across multiple communication platforms and produce emails, text messages, and other communications "related to the design" of 13 different components of the Model Y (*id.* ¶ 8); and

- Search all of its documents and data for all crashes involving any Tesla vehicle for a

---

[1] Tesla requested permission to provide further briefing and a declaration (*see* ECF 67 at 3, 11, 29), but the magistrate issued the Order without giving Tesla this opportunity.

six-year time frame, and then analyze all such documents and data to determine if the crash potentially involved a collision between the front crash rails. (*Id.* ¶ 10).

Given this immense burden, Plaintiff should have made at least some effort to explain why her discovery requests were *both* "relevant to any party's claim or defense *and* proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphasis added). At a bare minimum, she should have explained "the importance of the discovery in resolving the issues" in this case. (*Id.*) Yet Plaintiff nowhere explained how any further discovery would have *any* likely benefit, much less why the requested discovery was warranted in light of the burden it would impose on Tesla. And the Order provides no discussion or analysis of proportionality or any other legal standards. Therefore, Tesla respectfully submits the Magistrate did not "actively manage discovery and to limit discovery that exceeds its proportional and proper bounds," *Helena Agri-Enterprises, LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 273 (6th Cir. 2021), as required by Rule 26. The result is that the Order is clearly erroneous and contrary to law, and the Court should grant relief from the Magistrate's Order on RFP Nos. 13, 14, 21, 22, 23, 27, 34, and 59.

## II.  LEGAL STANDARDS

### A.  Review of magistrate's order under Federal Rule of Civil Procedure 72(a)

This Court reviews a magistrate judge's order on a discovery dispute under Federal Rule of Civil Procedure 72(a), which provides that the Court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." The Order is *not* reviewed for abuse of discretion. *See Ingram v. Pac. Gas & Elec. Co.*, No. 12-cv-02777-JST, 2013 U.S. Dist. LEXIS 169026, at *7 (N.D. Cal. Nov. 22, 2013). Instead, the Court reviews a magistrate's factual determinations for "clear error," and her legal conclusions "de novo to determine whether they are contrary to law." *Silicon Storage Tech., Inc. v. Nat'l Union Fire Ins. Co.*, No. 13-CV-05658-LHK, 2015 U.S. Dist. LEXIS 118057, at *12 (N.D. Cal. Sep. 3, 2015). "A decision is 'contrary to law' if it applies an incorrect legal standard or fails to consider an element of the applicable standard," *Ingram v. Pac. Gas & Elec. Co.*, No. 12-cv-02777-JST, 2013 U.S. Dist. LEXIS 169026, at *7 (N.D. Cal. Nov. 22, 2013), or "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *United States. v. Cathcart*, No. C 07-4762 PJH, 2009 WL 1764642, at *2 (N.D. Cal. June 18, 2009).

### B. Scope of discovery under Federal Rule of Civil Procedure 26(b)

Federal Rule of Civil Procedure 26(b)(1), as amended in 2015, provides, in part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

"Instead of facilitating costly and delay-inducing efforts to look under every stone in an e-discovery world populated by many stones, the new rule 'crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'" *Helena Agri-Enterprises,* 988 F.3d at 273 (quoting John G. Roberts, Jr. 2015 Year-End Report on the Federal Judiciary 6 (2015). "[C]ourts are required to limit discovery if the burden or expense of the proposed discovery outweighs its likely benefit; such is 'the essence of proportionality,' an all-too-often ignored discovery principle." *In re Glumetza Antitrust Litig.*, No. 19-cv-05822-WHA (RMI), 2020 U.S. Dist. LEXIS 113361, at *24-34 (N.D. Cal. June 29, 2020).

## III. ARGUMENT

### A. The Court should grant relief from the Order on RFP Nos. 13 and 14.

The Order on RFP Nos. 13 and 14 is clearly erroneous and contrary to law because compliance would impose an immense burden on Tesla, and Plaintiff has yet to explain how or why she needs such a vast amount of additional discovery that is at best only marginally relevant.

As the party seeking to compel Tesla to produce additional discovery, Plaintiff had the burden of demonstrating her requests are both relevant and proportional. *See Hegarty v. Transamerica Life Ins. Co.*, No. 19-cv-06006-MMC (RMI), 2021 U.S. Dist. LEXIS 203386, at *5 (N.D. Cal. Oct. 21, 2021); *see also* Adv. Com. Notes to 2015 Am. to Fed. R. Civ. P. 26 ("A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them."). To date, there has been no recall, anywhere, of the Model Y or any Tesla vehicle relative to allegations of unintended or uncommanded acceleration; in fact, Tesla has produced documents showing that the NHTSA has concluded the opposite. (Hong Decl. ¶ 4; Golden Decl. Ex. A.) Further, the Model Y's EDR data

DYKEMA GOSSETT LLP
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

shows that Plaintiff pressed the accelerator pedal to 100%, and so there was no uncommanded acceleration in the Model Y—the vehicle did what the driver asked it to do; the driver's intent is not known, perhaps he was experiencing a medical event, or perhaps he mistakenly pressed the accelerator as has been happening in cars since cars were first manufactured. Yet the Order would force Tesla to search the emails, text messages, files, chats, and various other communication platforms for an unknown number of former and current Tesla employees. Just for the NHTSA investigations, there are approximately 30 employees over a five-year timeframe whose emails, text messages, chats, files, and other documents would need to be searched. (Hong Decl. ¶ 7.) Tesla also regularly receives communications from local, state and federal police agencies seeking data from crash events or other investigations. (Hong Decl. ¶ 5.) And that is without even getting into the obvious difficulties attendant to locating documents about potential incidents made in foreign languages and in jurisdictions outside the United States,

Plaintiff has yet to explain why Tesla should be required to undertake such an immense burden. Certainly her position as stated in the discovery chart (ECF 67 at 1-2) provides no explanation—not even speculation—as to how any additional documents would be "relevant to any party's claim or defense," much less how the requested discovery is proportional in light of the burden it would impose on Tesla. Instead, she improperly hopes to force Tesla to search for and produce "every scrap of paper or bit of electronically stored information" that was ever sent to or from any regulator, in or outside the United States, about any investigation or evaluation into any purported sudden unintended acceleration by any Tesla vehicle anywhere in the world. *See Wesolek v. Wesolek*, No. 2:19-CV-463-JES-MRM, 2021 WL 3576460, at *10 (M.D. Fla. Mar. 24, 2021). Plaintiff's request is facially overbroad, unreasonable, and disproportionate.

Plaintiff's arguments to the Magistrate focused on two specific governmental investigations: (1) NHTSA's ongoing investigation DP 23-002; and (2) a Chinese regulatory investigation into "one pedal driving." (ECF 67 at 1-2.) Even if Plaintiff could justify discovery into these two specific investigations, and she cannot, Plaintiff did not explain why Tesla should have to search for and produce any documents and ESI related to any other investigations. (*See id.*) Therefore, and at a bare minimum, the Court should rule that Tesla not be required to produce any additional documents

for any other governmental investigations into "sudden unintended acceleration."

As to DP 23-002, the Order does not address Tesla's arguments that discovery would unnecessarily interfere with an ongoing regulatory investigation. DP 23-002 was not opened until two years after the crash, and it remains ongoing. As Tesla explained, communications between the regulator and the regulated must be open and candid, yet Plaintiff unnecessarily seeks to insert herself into an ongoing investigation, with the express or implied threat her counsel would disclose such communications to the media. Plaintiff's counsel has already violated California mediation privilege by disclosing the parties' confidential mediation communications with the press. Tesla cannot leverage its preliminary and confidential communications with its regulator to its benefit, and Plaintiff should be in no different position. Further, Tesla understands that NHTSA itself would refuse to produce documents related to an ongoing investigation in response to a FOIA request, reinforcing the impropriety of discovery into an ongoing investigation. There is no need for the Court or the parties to open this can of worms when Plaintiff has failed show the discovery would do anything to further the resolution of this case on the merits.

The Chinese investigation concerns "Tesla's one-pedal driving system," which allows the driver of any electric vehicle (not just Tesla vehicles) to both start and stop the car using only the accelerator pedal. (Hong Decl. ¶ 6.) There has been no "recall" of one-pedal driving functionality. (*Id.*) Further, it is undisputed that Mr. Leach came to a complete stop *before* accelerating rapidly, in contrast with the concern in the Chinese investigation about drivers who accidentally press the accelerator in an attempt to brake. Moreover, communications with the Chinese government about the investigation, and all communications or documents about this investigation, are maintained by a separate Tesla entity in China, not Tesla, Inc. (*Id.* ¶ 6.) Even if Tesla, Inc. had access to these documents, the Chinese government has prohibited Tesla from sharing data regarding its citizens' vehicles outside China. (*Id.*) Principles of comity strongly counsel against requiring Tesla to violate Chinese law, particularly where the requested documents have nothing to do with Plaintiff's claims in this case. *See Hilton v. Guyot*, 159 U.S. 113, 164 (1895); *In re Rubber Chems. Antitrust Litig.*, 486 F. Supp. 2d 1078, 1081-82 (N.D. Cal. 2007). Accordingly, the Court should rule that Tesla not be required to search for or produce, or to provide a privilege log for, any additional documents or

ESI in response to RFP Nos. 13 and 14.

### B. The Court should order that Tesla is not required to produce any native simulation files or software response to RFP Nos. 21, 22, 23, and 59.

The Court should grant relief from the Order on RFPs Nos. 21, 22, 23, and 59 because, to comply, Tesla would have to produce native simulation and software files that would allow a competitor to perfectly replicate the Model Y, including all of its components. (Hong Decl. ¶ 9.) These documents are protected by the California trade-secrets privilege, and Plaintiff has not shown either that "the information sought is relevant and *necessary* to the proof of, or defense against, a material element of one or more causes of action" or that the "information sought is *essential* to a fair resolution of the lawsuit." *Bridgestone/Firestone, Inc. v. Superior Court*, 7 Cal.App.4th 1384, 1393 (1992) (emphasis added); *see* Cal. Evid. Code § 1000; Cal. Civ. Code § 3426.1.[2]

The Magistrate erred in requiring Tesla to produce its native simulation and software files. Plaintiff demanded that Tesla "be compelled to produce the software files that Tesla used to model or simulate Tesla Model Y frontal collision into a narrow object (e.g., a pole, post, tree, etc.)," as well as "photos, videos, and simulations embedded in the five-previously produced PowerPoints" in "their native format." (ECF 67 at 9-10.) Tesla will produce the videos in native format in response to the Order. But there is no reason to force Tesla to produce native software files that would allow a competitor to perfectly replicate the Model Y. These files qualify as "trade secrets" because they contain information proprietary to Tesla. Tesla has undertaken more than reasonable efforts to safeguard their secrecy, and disclosure would work immense harm. (Hong Decl. ¶ 9.)

Plaintiff did not make any effort to show that these files are either "necessary" or "essential." Instead, she asserted without explanation that they are "needed for Plaintiff's experts." (ECF 67 at 7.) But discovery of trade secrets is not "necessary" or "essential" just because they are "potentially necessary" or helpful to an experts' analysis of the case. *See Bridgestone/Firestone,* Cal.App.4th at

---

[2] California law governs application of the trade-secrets privilege in this diversity case. Fed. R. Evid. 501; *Bonhams & Butterfields Auctioneers Corp. v. Yoon-Soo Chun, No.*, No. C14-00705 HRL, 2014 U.S. Dist. LEXIS 157515, at *3 (N.D. Cal. Nov. 6, 2014). Even under federal law, the "burden rests upon the party seeking disclosure to establish that the trade secret sought is relevant *and* necessary to the prosecution or defense of the case before a court is justified in ordering disclosure." *Hartley Pen Co. v. U.S. Dist. Ct.*, 287 F.2d 324, 330 (9th Cir. 1961) (emphasis added).

1395-97. Plaintiff also argued that she is entitled to Tesla's trade secrets because the Court has entered a protective order. Courts consider the sufficiency of a protective order, however, only *after* the party seeking discovery of trade secrets makes a "prima facie, particularized showing" that the information is both necessary and essential. *See id.* at 1395-97. Because Plaintiff did not even attempt to make this showing, she is not entitled to production of Tesla's trade secrets.

### C. The Court should provide relief from the Order on RFP 27.

Next, the Court should grant relief from the Order's requirement that Tesla produce all communications "regarding the design" of the following subset of front crash structures: the "bumper beam, ankle catcher, crush cans, cross-car or lateral beam, steering gear, thermal beam, shock tower, steering column, front-end module, subframe, subframe crush cans, sway bar, and crash fails." (ECF 69 at 2:25-3:3.) To comply with the Order, Tesla would have to engage in extensive searches of all current and former employes in Tesla's design and engineering departments (among others), for any time any one of these components was referenced and evaluate the communication to determine if it is with respect to the vague subject of "regarding the design." This would again require hundreds and hundreds of hours from Tesla's employees, at a significant cost, for limited or no benefit. (*See* Hong Decl. ¶ 8.)

Tesla has already produced design drawings for the front subframe of the Tesla Model Y, has agreed to produce those drawings for additional model years, and will produce design drawings for the 13 components at issue. Plaintiff has failed to explain what more she needs, much less "the importance of the discovery in resolving the issues." The Magistrate gave no consideration to the— at best—marginal benefit the disclosure of such voluminous communications would provide compared to the burden it imposes on Tesla. Rule 26 does not require the production of "every scrap of paper or bit of electronically stored information that exists" just because a plaintiff hopes—but cannot explain how or why—the production of additional hundreds of thousands of pages of documents might provide some as yet unidentified benefit. *See Wesolek*, 2021 WL 3576460, at *10.

### D. The Court should grant relief from the Magistrate's Order on RFP No. 34.

The Order requires Tesla to "produce documents for incidents involving a Tesla vehicle in a frontal collision with narrow objects between main crash rails that occurred between 2018-2024."

1  (Dkt. 76 at 4:2-5.) Tesla does not have a "database" of reports it can search to determine if a crash
2  was a "frontal collision with narrow objects between main crash rails," and it is not able to filter any
3  other crash data it receives "over the air" to narrow it to crashes involving a narrow rigid object.
4  (*Id*.) Therefore, to determine if any crash potentially involved such an object, Tesla employees
5  would have to manually review any crash videos or images that might be available for every crash
6  involving any Tesla vehicle for the last six years, and to then make a judgment as to whether the
7  collision was potentially responsive. (*Id*.) Doing so would require at least thousands of hours and
8  substantially disrupt Tesla's business operations. (*Id*.) Complying with the Order would thereby
9  impose an enormous burden on Tesla with little or no corresponding benefit to Plaintiff.

10  Plaintiff has yet to explain why she needs access to information about other crashes to prove
11 her claim that Mr. Leach's Model Y was insufficiently designed or not "crashworthy." Tesla has
12 already agreed to search for and produce "legal complaints and prelitigation demand letters
13 involving claims of frontal collision with a narrow rigid object between the main crash rails for 202-
14 2025 Tesla Model Y vehicles." Plaintiff did not explain how any additional discovery on this topic
15 would either relevant or proportional, and the Order likewise provides no explanation or analysis
16 for why or how this facially overbroad request nevertheless complied with Rule 26's proportionality
17 requirements. Further, contrary to Plaintiff's representations to the Magistrate, Tesla's 30(b)(6)
18 witness Sean Haight—who was *not* a corporate representative on this topic—did not testify that
19 Tesla has the ability to search "for responsive documents to particular types of collisions." Instead,
20 he testified: "I can't answer that for sure because I'm not the one doing it, but I assume that they can
21 filter/categorize different facts and data in different ways."  (Golden Decl. Ex. C.) Accordingly, the
22 Court should grant relief from the Magistrate's order on RFP No. 34, and it should order that Tesla
23 does not need to search for or produce any additional documents in response to this request.

24 **IV.   CONCLUSION**

25  For the foregoing reasons, Tesla respectfully request that the Court grant relief from the
26 Magistrate's order on RFP Nos. 13, 14, 21, 22, 23, 27, 34, and 59.

DATED: March 13, 2025          Respectfully submitted,

DYKEMA GOSSETT LLP


By:     */s/James M. Golden*
      JAMES M.GOLDEN
      Attorneys for Defendant,
      TESLA, INC.

**DYKEMA GOSSETT LLP**
444 SOUTH FLOWER STREET
SUITE 2200
LOS ANGELES, CALIFORNIA 90071

11     Case No. 3:23-cv-03378-SI
MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE