Todd A. Walburg (SBN 213063)
taw@mccunewright.com
Scott B. Baez (SBN 330485)
sbb@mccunewright.com
**MCCUNE LAW GROUP, APC**
3281 E. Guasti Road, Suite 100
Ontario, CA 91761
Telephone: (909) 557-1250

***Attorneys for Plaintiff DONNA LEACH,***
***individually and on behalf of the Estate of Clyde Leach***

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA LEACH, individually and on behalf of the Estate of Clyde Leach,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC. and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 23-cv-03378-SI (SK)<br><br>Honorable Susan Illston<br>Honorable Sallie Kim<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT TESLA INC.'S MOTION FOR RELIEF FROM DISCOVERY ORDER OF MAGISTRATE JUDGE**<br><br>Action Filed:    April 11, 2023<br>Trial Date:      April 13, 2026 |

I.      **INTRODUCTION**

Defendant Tesla, Inc.'s ("Tesla") Motion objects to Magistrate Judge Sallie Kim's Order (Dkt. No. 69) compelling production of documents and a privilege log in response to Plaintiff's Requests for Production of Documents ("RPD") numbers 13, 14, 21, 22, 23, 27, 34, and 59. (Dkt. No. 74 at 2:1-13.) While certain parts of the Order are not challenged, Tesla has not produced any documents or further discovery responses since February 12, 2025. A privilege log has never been provided.

Tesla's assertions that Magistrate Judge Kim's discovery order is "clearly erroneous" or "contrary to law," and that further proceedings are necessary to provide "a full and fair opportunity to be heard" disregards both the procedural context in which the order was issued and the extensive record placed before the Court. The Magistrate Judge did not rule in a vacuum. She had the benefit of a

comprehensive joint letter brief submitted at her request (Dkt. No. 68-1), the parties' opening letter brief submitted to the District Court (Dkt. No. 55), supplemental briefing requested by the District Court (Dkt. Nos. 59 and 60), and the full text of the discovery requests and responses in dispute (Dkt. Nos. 55-1 to 55-6). These materials provided a thorough and balanced presentation of the contested issues, including both parties' arguments on relevance, burden, proportionality, and privilege. Against this backdrop, the Magistrate Judge issued a carefully considered ruling that granted some requests in full, narrowed others, and denied several entirely—exactly the type of measured, context-specific resolution Rule 26 contemplates and entrusts to judicial officers managing complex discovery. This Court should therefore overrule Tesla's objections to the Magistrate Judge's Order.

## II.     ARGUMENT

### a.     Plaintiff Is Entitled to Discovery of the Critically Probative Crash Simulation Files (RPD Nos. 21, 22, 23, and 59)

The Magistrate Judge correctly ordered Tesla to produce native simulation files[1] in response to Plaintiff's RPD Nos. 21, 22, 23, and 59 because the simulation files reflect the core method by which Tesla evaluates its vehicles' crashworthiness, which is at the heart of this case. Tesla's moving papers emphasize that the company relies heavily on advanced computer simulations—rather than industry-standard physical crash testing—to develop and evaluate its vehicles. These simulations are integral to Tesla's internal design decision-making and represent the most accurate window into how Tesla models crash dynamics, identifies risks, and selects specific structural configurations. As such, the native simulation files are not ancillary; they are the foundational evidence of Tesla's safety engineering process and risk assessments.

Tesla's limited reliance on physical crash testing underscores why native simulation files comprise essential evidence in this case. As its in-house counsel, Soo Hong, affirms in her declaration, Tesla performs fewer costly physical crash tests than its competitors and instead leverages collision

---

[1] Computer simulations of vehicle crashes — often called Computer-Aided Engineering (CAE), Finite Element Models (FEM), or Finite Element Analysis (FEA) — use computer-based models to predict vehicle and occupant responses in a crash. In this brief, Plaintiff uses the term "simulations" to refer to the software (including LS-DYNA and Meta Post-Processor) and the associated input and output files Tesla used to model and analyze center pole collisions in the Tesla Model Y.

PLAINTIFF'S OPPOSITION TO TESLA'S MTN. FOR RELIEF FROM DISCOVERY ORDER

1  simulations to "develop vehicles more efficiently." Hong. Decl., Dkt. No. 74-4 at ¶9. Tesla's FRCP Rule

2  30(b)(6) witness, Sean Haight, further testified to ███████████████

3  ████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████

5  ██████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████

7  ██████████████████████████████████████████████████

8  ██████████████████████████████████████████████████

9  ████████████████████████████████████████████████████

10 ████████████████████████████████████████████

11 █████████████████████████████

12      As outlined above, Tesla admits that collision simulations are fundamental components of its

13 vehicle development process generally, and its ████████████████████████████

14 ███████████  Yet the only materials Tesla has produced to show the results of the critical 30 mph center

15 pole simulation are a total of 5 video snippets, each less than 5 seconds long, that were embedded within

16 a handful of PowerPoint presentations prepared by Tesla's structures and analysis team. While Tesla

17 asserts that "Plaintiff is not entitled to additional discovery" (Mot. at 3, Dkt. No. 74 at 4:1-2), and that

18 "there is no reason to force Tesla to produce native software files" (Mot. at 8, Dkt. No. 74 at 9:16-18),

19 its Rule 30(b)(6) testimony makes clear that ██████████████████████████

20 ███████████████████████████████████████████

21 ████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████████

23 ██████████████████████████████████████████████████

24 ████████████████████

25 ██████████████████████████████████████████████

26 ██████████████████████████████████████████████

27 ██████████████████████████████████████████████

28 ██████████████████████████████████████████████



*Excerpt from Tesla structures and analysis team PowerPoint presentation. Exhibit 6 to the*
*Deposition of Sean Haight at Slide 1.*

PLAINTIFF'S OPPOSITION TO TESLA'S MTN. FOR RELIEF FROM DISCOVERY ORDER

1    Tesla's Rule 30(b)(6) witness on the topic of Model Y front structure "crash testing and related

2    evaluation" could not answer ████████████████████████████████

3    ████████████████████████████████████████████

4    ████████████████████████████████████████

5    ████████████████████████████████████████

6    ████████████████████████████████████████████

7    ██████████████████████████████████

8     ████████████████████████████████████████

9    ██████████████████████████████████████

10    ███████████████████████████████████████

11    ████████████████████████████████████████████

12    █████████████████████████████████████████████

13    ██████████████████████████████████████████████

14    █████████████████████████████████████████████

15    █████████████████████████████████████████████

16    ██████████████



*Screenshot from 30 mph center pole simulation video snippet. Exhibit 6*
*to the Deposition of Sean Haight at Slide 38.*

PLAINTIFF'S OPPOSITION TO TESLA'S MTN. FOR RELIEF FROM DISCOVERY ORDER

Accordingly, the center pole crash test reports, simulation videos, and PowerPoint presentations Tesla has produced thus far do not substitute for the detailed and dynamic insights contained in its simulation models. Critically, Tesla's limited physical tests cannot and do not adequately reflect the breadth of scenarios Tesla internally evaluated with computer simulations, including center pole impact collisions at speeds similar to the crash that killed Clyde Leach. Discovery of Tesla's physical crash testing therefore cannot reveal the parameters, tolerances, or failure modes considered during the Model Y's design evolution.

Moreover, Plaintiff's experts cannot meaningfully assess Tesla's design methodology or safety judgments without access to the native simulation files. These files are the only means by which Plaintiff can evaluate the assumptions, boundary conditions, material properties, and occupant injury criteria used in the Tesla Model Y. Without access to the native data, Plaintiff cannot test the validity of Tesla's internal conclusions or determine whether alternative design choices were feasible and considered. The Federal Rules of Civil Procedure entitle parties to obtain discovery necessary to probe the opposing party's decision-making and knowledge. Given that Tesla's engineering knowledge and occupant protection analysis are largely embedded in these native files, the Magistrate Judge properly ordered their production to allow Plaintiff a full and fair inquiry into Tesla's design process.

Tesla's trade secret objections are unavailing because a comprehensive Stipulated Protective Order is already in place that explicitly governs the handling of highly confidential materials like simulation files. That Order imposes strict access controls and audit requirements, prohibits disclosure outside a few narrow categories such as counsel and experts, and requires secure storage and eventual destruction of protected materials. (Dkt. No. 35.) Tesla offers no explanation—let alone a particularized showing—why the very safeguards it helped negotiate and agreed to are inadequate to protect its proprietary data in this case. Furthermore, although Tesla's motion claims the company has implemented general safeguards to protect its data (such as password-protected computer access), Tesla identifies no additional or enhanced security measures specific to its simulation files. Hong Decl., Dkt. No. 74-4 at ¶9. This omission undermines Tesla's argument that its simulation files require greater protection than the other highly confidential documents it has already produced in this litigation.

1    Finally, this is not a novel issue. Other auto manufacturers produce their native simulation files

2    in automotive product liability cases – sometimes voluntarily and sometimes pursuant to a court order.

3    See, for example, the following orders compelling automotive manufacturers to produce native

4    simulation files and software in similar product defect matters: *Gibson v. Ford Motor Co.*, Case No.

5    1:06-cv-01237-WSD (N.D. Ga.), attached hereto as <u>Exhibit 2</u>; *Greene v. Toyota Motor Corp.*, Case No.

6    3:11-cv-00207-N (N.D. Tex.), attached hereto as <u>Exhibit 3</u>; *Smith v. Toyota Motor Corp.*, Case No.

7    2:16-cv-00024-ERW (E.D. Mo.), *Loyal v. Ford*, Case No. 19 CVS 1486 (Orange Co., N.C.), attached

8    hereto as <u>Exhibit 4</u>; and *Covelli v. Toyota Motor Corp., et al*., Case No. 2021CV78 (Weld Co., Colo.),

9    attached hereto as <u>Exhibit 5</u>. A similar order compelling production of Tesla's software and files for

10   simulation of Model Y collisions with poles or other narrow rigid objection is needed here.

11          **b.  Plaintiff is Entitled to Documents and Internal Communications Concerning the**

12              **On-Point NHTSA, NTSB, and China MIIT Regulatory Investigations (RPD Nos. 13**

13              **and 14)**

14          The Magistrate Judge's Order correctly compels Tesla to produce further documents and internal

15   communications concerning regulatory investigations into sudden unintended acceleration ("SUA") in

16   response to Plaintiff's RPD Nos. 13 and 14. These materials are directly relevant to Tesla's knowledge

17   of the alleged defect, its internal analyses and deliberations, and its conduct in response to formal

18   governmental scrutiny. For these same reasons, plaintiffs in automotive products liability cases routinely

19   obtain similar discovery concerning defects investigations by regulatory agencies. Indeed, in the present

20   case, Tesla has at least partially complied with RPD No. 13 by producing some documents relating to

21   NHTSA investigation DP 20-001 into alleged SUA in Tesla vehicles. In its public filings in this case,

22   Tesla emphasizes the findings of that initial NHTSA investigation (DP 20-001), but now in discovery,

23   continues to withhold the materials related to NHTSA's reopening of that same investigation (DP 23-

24   002), and any subsequent NHTSA investigations.

25          Despite the foregoing, Tesla urges that the Magistrate Judge's Order is "clearly erroneous and

26   contrary to law" based on vague and unsupported assertions of burden invoking "thousands of hours"

27   and "hundreds of thousands if not millions of dollars" in costs. (Dkt No. 74 at 6:16-18; Dkt. No. 74-4 at

28   2: ¶¶3-4). Yet, Tesla fails to take even the most basic steps to mitigate that burden. Tesla has never

1   sought to meet and confer with Plaintiff to develop an agreeable list of search parameters or document

2   custodians in connection with RPD Nos. 13 and 14 (or any other discovery request still at issue in this

3   ongoing dispute). Tesla instead has elected to resist discovery of any regulatory investigation beyond

4   NHTSA's DP 20-001 and consume court resources by filing the instant motion. This failure to initiate

5   *any* informal negotiations concerning compliance with the Magistrate's Order undermines Tesla's

6   unsubstantiated claims of "tremendous burden and expense."

7       Plaintiff acknowledges that Rule 26(b)(2)(C) permits a court to limit discovery where "the

8   burden or expense of the proposed discovery outweighs the likely benefit." Here, however, the

9   discovery Plaintiff seeks goes to the heart of her claims, and Plaintiff disagrees with Tesla's

10  exaggeration that the requests could be construed to seek materials related to investigations by any and

11  all governmental entities around the world. That was never Plaintiff's intention. Indeed, Plaintiff's

12  filings and informal communications concerning these requests have only mentioned the NHTSA,

13  NTSB, and China's MIIT regulatory agencies, and not local law enforcement or authorities. Plaintiff

14  therefore believes that RPD Nos. 13 and 14 should be construed as seeking documents and internal

15  communications related to investigations by these three regulatory agencies.

16      Documents related to the China MIIT regulatory investigation are clearly relevant because that

17  agency is considering banning one-pedal driving with hold mode – as implemented in Tesla vehicles –

18  as a way to prevent SUA.[2] Furthermore, Plaintiff believes that RPD Nos. 13 and 14 cannot and do not

19  seek documents possessed by foreign business entities like Tesla (Shanghai) Co., Ltd. or Tesla Motors

20  Hong Kong, Ltd., which have not appeared in this action and were not served with any discovery

21  requests.

22       Moreover, in the interests of time and efficiency, Plaintiff is agreeable to reasonable limits on

23  the scope of searches Tesla must perform in connection with RPD Nos. 13 and 14. Had Tesla presented

24  _____

25  [2] The MIIT regulatory investigation is reportedly made in connection with forthcoming
    updates to a Chinese automobile standard known as GB 21670. The relevant provision at

26  section 5.2.18 (f) would ban one pedal driving implementations from causing a vehicle to
    come to a complete stop merely by removal of the driver's foot from the accelerator,

27  thereby forcing the driver depress the brake pedal to come to a complete stop. This
    provision is reportedly intended to prevent pedal confusion, which occurs when a driver

28  depresses the accelerator instead of the brake while intending to stop the vehicle.

the issues raised in its Motion to Plaintiff prior to filing it, Plaintiff would have proposed that Tesla

perform custodial searches of the 30 employees that Tesla's Motion describes using search terms similar

to the following:

- "DP 20-001" OR "DP20001" OR "DP 20 001" OR "DP20 001";

- "DP 23-002" OR "DP23002" OR "DP 23 002" OR "DP23 002";

- ("National Highway Traffic Safety Administration" OR "NHTSA") AND ("sudden unintended acceleration" OR "SUA" OR "unintended acceleration" OR "uncommanded acceleration" OR "pedal misapplication");

- ("National Transportation Safety Board" OR "NTSB") AND ("sudden unintended acceleration" OR "SUA" OR "uncommanded acceleration" OR "pedal misapplication");

- ("Hold mode" OR "One pedal" OR "one-pedal") AND ("Ministry of Industry and Information Technology" OR "MIIT") AND ("ban" OR "prohibit" OR "restrict");

- ("Hold mode" OR "creep mode" OR "one pedal" OR "one-pedal") AND ("China" OR "Chinese") AND ("regulation" OR "compliance" OR "law");

- ("China" OR "Chinese") w/10 ("hold mode" OR "creep mode" OR "one-pedal" OR "one pedal") w/10 ("ban" OR "regulation");

- ("GB 21670" OR "GB21670" OR "GB21670") AND ("hold mode" OR "creep mode" OR "one-pedal" OR "one pedal")

Finally, Plaintiff is troubled by the new revelation that "Tesla's Legal Department has been

involved in or directed all internal communications and investigation in response to NHTSA's

investigation". (Hong. Decl., Dkt. No. 74-4 at ¶7.) The attorney-client privilege is "narrowly and strictly

construed, and the party asserting it bears the burden of proving that it applies." *Dolby Lab'ys Licensing

Corp. v. Adobe Inc.*, 402 F.Supp.3d 855, 863 (N.D. Cal. 2019). Moreover, courts recognize that

corporate in-house counsel "may be involved intimately in the corporation's day to day business

activities," and in-house counsel's business advice is not protected by attorney-client privilege. *U.S. v.

ChevronTexaco Corp.*, 241 F.Supp.2d 1065, 1076. Tesla's admission that in-house counsel are involved

in all internal communications and investigations relating to regulatory safety defect matters suggests

that many documents Tesla purports are privileged have little or nothing to do with the provision of

legal advice, and/or were not generated in anticipation of litigation. This concern is only compounded by

Tesla's refusal to produce any privilege log concerning any of the dozens of attorney-client privilege or

work product doctrine objections it has made in this case so far.[3]

---

[3] On December 23, 2024, this Court ordered Tesla to produce a privilege log in connection with its

1

  **c. Plaintiff is Entitled to Internal Communications Concerning the Design of the Tesla**

2

    **Model Y's Frontal Crash Structures (RPD No. 27)**

3

   The Magistrate Judge correctly ordered Tesla to produce internal communications relating to a

4

limited subset of vehicle components in response to RPD No. 27. Such materials are directly probative

5

of Plaintiff's core allegations—that the subject vehicle was defectively designed and failed to protect the

6

occupant from foreseeable crash forces. Internal communications are likely to reveal Tesla's knowledge

7

of performance limitations, engineering trade-offs, safety concerns, and post-sale evaluations of the

8

structural integrity of components such as the crash rails, cross members, subframe, and bumper beam.

9

Moreover, Tesla significantly modified the design and materials of the main crash rails of its Model Y

10

vehicles after the sale of the subject vehicle. As such, the requested internal communications will

11

demonstrate what motivated those changes—whether based on safety concerns, regulatory feedback,

12

crash data, or other relevant considerations. Plaintiff has repeatedly explained to Tesla why she seeks

13

these internal communications, and even identified in the joint letter brief to the Magistrate Judge certain

14

Tesla databases believed to contain the documents sought. Yet as with RPD Nos. 13 and 14, Tesla

15

refused to propose any narrower scope or search parameter that could mitigate its present claims of

16

undue burden. The Court should not reward Tesla's refusal to cooperatively resolve this discovery

17

dispute by prohibiting discovery of internal communications that will provide critical insight into

18

vehicle design decision making.

19

    **d. Plaintiff is Entitled to Data Related to Other Similar Incidents (RPD No. 34)**

20

   Tesla's challenge to RPD No. 34—that it cannot feasibly search for frontal collision incidents

21

involving narrow objects between main crash rails—is overstated. Plaintiff's request for these

22

documents (often referred to as "OSIs" in product liability cases) is more narrowly tailored than in other

23

similar litigations. If the request is too specific, Tesla can produce a wider set of OSI documents and

24

Plaintiff can review them for applicability. Tesla does not deny it receives over-the-air data, videos, and

25

26

---

objections to 48 individual RPDs and 4 individual SPROGs, including RPD Nos. 13 and 14, no later

27

than January 3, 2025. Dkt. No. 56 at 2:16-24. Only direct communications with outside counsel (e.g., Nelson Mullins Riley & Scarborough LLP) regarding this lawsuit were excepted from the Court's

28

Order. *Id* (parenthetical added).

PLAINTIFF'S OPPOSITION TO TESLA'S MTN. FOR RELIEF FROM DISCOVERY ORDER

1   images for crash events. Nor does it deny it analyzes crash trends. To the contrary, senior engineer Sean

2   Haight, who has worked at Tesla for more than eight years, testified that ████████████████

3   ████████████████████████████████████████████████████████

4   ████████████████ Mr. Haight's testimony is consistent with publicly available statements by Tesla

5   engineers. For example, in one video titled "Data Driven Safety," Tesla engineers boast that "we know

6   exactly what our cars are being exposed to out there" because the company collects "riches of data"

7   from "a fleet of well over a million cars on the road, fully instrumented from a sensing perspective."[4]

8   Tesla's argument that its internal systems are not perfectly searchable does not immunize it from the

9   discovery obligations applying to all litigants. Where Tesla has the ability to review such data for

10  internal safety analysis, it can and must do so for litigation purposes.

11  **III.    CONCLUSION**

12  Tesla's motion seeks to relitigate a balanced discovery ruling through exaggerated claims of burden

13  and misplaced legal arguments. The requested materials go to the core issues of this litigation: whether

14  Tesla knew of risks associated with its vehicle design, how it responded to those risks, and what it

15  communicated internally and externally. The Magistrate Judge's Order was thoughtful, measured, and

16  well within the bounds of the law. Tesla's motion should therefore be denied.

18  Dated:  April 10, 2025                        MCCUNE LAW GROUP, APC

20                                       By:    */s/ Todd A. Walburg*
                                                TODD A. WALBURG
21                                              SCOTT B. BAEZ
                                                Attorneys for Plaintiff
22                                              DONNA LEACH, individually and
                                                on behalf of the Estate of Clyde Leach

---

[4] "Tesla Crash Lab | Data-Driven Safety," Tesla, Inc. Promotional Video, October 12, 2021. Accessed at https://www.youtube.com/watch?v=9KR2N_Q8ep8

PLAINTIFF'S OPPOSITION TO TESLA'S MTN. FOR RELIEF FROM DISCOVERY ORDER

1

## <u>CERTIFICATE OF SERVICE</u>

2

    I hereby certify that on the 10th day of April, 2025, I electronically filed the foregoing

3

document with the clerk of the court for the U.S. District Court, Northern District of California

4

using the electronic case filing system of the Court. The electronic case filing system sent a "Notice

5

of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice

6

as service of this document by electronic means.

7

Dated: April 10, 2025                    */s/ Todd A. Walburg*

8

                                     Todd A. Walburg

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO TESLA'S MTN. FOR RELIEF FROM DISCOVERY ORDER